POMERANTZ LLP
Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor
Los Angeles, California 90024
Telephone: (310) 405-7190
Facsimile: (917) 463-1044
jpafiti@pomlaw.com

*Attorney for Plaintiff*

*[Additional Counsel on Signature Page]*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTHONY SANCHEZ, Individually and On Behalf of All Others Similarly Situated, | Case No. |
| | <u>CLASS ACTION</u> |
| Plaintiff, | COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS |
| v. | |
| DECISION DIAGNOSTICS CORP. and KEITH M. BERMAN, | <u>DEMAND FOR JURY TRIAL</u> |
| Defendants. | |

Plaintiff Anthony Sanchez ("Plaintiff"), individually and on behalf of all others similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants, alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States ("U.S.") Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Decision Diagnostics Corp. ("Decision Diagnostics" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet.  Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.      This is a federal securities class action on behalf of a class consisting of all persons and entities other than Defendants that purchased or otherwise acquired Decision Diagnostics securities between March 3, 2020 and December 17, 2020, both dates inclusive (the "Class Period"), seeking to recover damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange

1

Act") and Rule 10b-5 promulgated thereunder, against the Company and certain of its top officials.

2. Decision Diagnostics purportedly offers, among other products and services, prescription and non-prescription diagnostics and home testing products.

3. From March 2020 to at least June 2020, Defendants claimed that the Company had developed a finger-prick blood test that could detect COVID-19 in less than one minute. Defendants also made various representations regarding the Company's progress towards achieving U.S. Food and Drug Administration ("FDA") emergency use authorization ("EUA") for this purported COVID-19 finger-prick blood test.

4. Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operations, and compliance policies. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) Decision Diagnostics had not developed any viable COVID-19 test, much less a test that could detect COVID-19 in less than one minute; (ii) the Company could not meet the FDA's EUA testing requirements for its purported COVID-19 test; (iii) accordingly, Defendants had misrepresented the timeline within which it could realistically bring its COVID-19 test to market; (iv) all the foregoing subjected Defendants to an increased risk of regulatory oversight and enforcement; and (v) as a result, Defendants' public statements were materially false and misleading at all relevant times.

2

5.     On December 17, 2020, the SEC filed a complaint in federal court against Defendants, alleging that they had issued a series of press releases that falsely claimed that Decision Diagnostics had developed a finger-prick blood test that could detect COVID-19 in less than one minute (the "SEC Complaint").  According to the SEC Complaint, from March 2020 to at least June 2020, Defendants made false and misleading statements about the existence of Decision Diagnostics' COVID-19 device and progress towards achieving FDA EUA for that device.  As alleged, at the time of these claims, Decision Diagnostics lacked a proven method for detecting the virus and had no physical testing device.  The SEC Complaint further alleged that the statements created the misleading impression that Decision Diagnostics would soon introduce the COVID-19 test to the market, which led to surges in the price and trading volume of the Company's stock.

6.     Following the filing of the SEC Complaint, Decision Diagnostics' common share price fell $0.06 per share, or 60%, to close at $0.04 per share on December 18, 2020.

7.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

8.     The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

9.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act.

10.     Venue is proper in this Judicial District pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1391(b).  Decision Diagnostics' headquarters are in this Judicial District, Defendants conduct business in this Judicial District, and a significant portion of Defendants' actions took place within this Judicial District.

11.     In connection with the acts alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications, and the facilities of the national securities markets.

## PARTIES

12.     Plaintiff, as set forth in the attached Certification, acquired Decision Diagnostics securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosures.

13.     Defendant Decision Diagnostics is a Nevada corporation with principal executive offices located at 2660 Townsgate Road, Suite 300, Westlake Village,

4

California.  The Company's common shares trade in an efficient market on the OTC Pink market ("OTC") under the ticker symbol "DECN."

14.    Defendant Keith M. Berman ("Berman") has served as the Company's Chief Executive Officer, Chief Financial Officer, Secretary, and sole Director at all relevant times.

15.    Defendant Berman possessed the power and authority to control the contents of Decision Diagnostics' SEC filings, press releases, and other market communications.    Defendant Berman was provided with copies of Decision Diagnostics' SEC filings and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or to cause them to be corrected.  Because of his position with Decision Diagnostics, and his access to material information available to him but not to the public, Defendant Berman knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public, and that the positive representations being made were then materially false and misleading.  Defendant Berman is liable for the false statements and omissions pleaded herein.

16.    Decision Diagnostics and Berman are sometimes collectively referred to herein as "Defendants."

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

## SUBSTANTIVE ALLEGATIONS

### Background

17.     Decision Diagnostics purportedly offers, among other products and services, prescription and non-prescription diagnostics and home testing products.

### Materially False and Misleading Statements Issued During the Class Period

18.     The Class Period begins on March 3, 2020, when, during pre-market hours, Decision Diagnostics issued a press release touting that "in a break-through discussed for the first time, [the Company] announces . . . the introduction of [its] new screening methodology for the Coronavirus (Covid19)," which "is timely, simple to use, cost effective and will be commercial ready in the summer of 2020."

19.     The same press release quoted Defendant Berman, who touted, *inter alia*, that Defendants "have developed a Coronavirus screening method" that "should allow for 80% of the suspected carriers of Coronavirus to exit the quarantine systems in the places where Coronavirus is rampant," and that Defendants "have the technology perfected which will take months off of the development schedule."

20.     Additionally, Decision Diagnostics issued the following eight press releases in March 2020, which, as evidenced by their titles, continued to tout information regarding, and progress towards making available, Decision Diagnostics' purported COVID-19 test:

6

- March 4, 2020 – "DECN [*i.e.*, Decision Diagnostics] Fills in the Gaps, Adds to Knowledge Base for its GenViro(TM) Coronavirus (Covid19) Multi-Dimensional Diagnostic Methodology Announced March 2";

- March 11, 2020 – "DECN Provides First Looks At Its GenViro(TM) Corona Virus Screening Kit & First Year Product Forecast of 420 Million Kits, with Sales Beginning Late 3Q 2020";

- March 16, 2020 – "DECN Updates on Its Corona Virus Testing Product Genviro!(TM), With 200,000 Kits to Be Provided in USA & EU Prior to the Summer, 12 Month Forecast Updated to 480mm";

- March 17, 2020 – "DECN'S GenViro!(TM) Corona Virus 'Swift' Kit, Now to Be Additionally Offered to Commercial Labs and Religious Groups as 12 Month Forecast is Raised to 525MM";

- March 18, 2020 – "DECN's GenViro!(TM) COVID-19 'Rapid' Kit to Reap Huge Boost from 3/16 FDA Guidance Allowing for Near Immediate Distribution of Kits Prior to Emergency Waiver Grant";

- March 20, 2020 – "DECN to Finance 2Q 2020 Roll Out of its GenViro! Covid-19 'Rapid' Kits Using Non-Dilutive Debt Financing Totaling $13 Million Acquired in Near 0% Rate Environment";

- March 23, 2020 – "DECN Finalizes FDA Pre-EUA Version of Its Genviro! Screening Covid-19 Swift Kit, Providing Results in 15 Seconds Using Only 1.0-2.0 Microliters Whole Blood"; and

7

- March 25, 2020 – "DECN to Add 2nd Covid-19 Test Kit Using Antibody/Antigen Methodology as a Determination Test for Patients Who Previously Tested Positive for Covid-19".

21.     On April 6, 2020, Decision Diagnostics issued a press release touting, *inter alia*, that the Company had "filed its formal and finalized Emergency Authorization for its Professional Use Covid-19 screening kit with the Emergency Authorization review group at the U.S. FDA," which was "acknowledged less than three hours later, and assigned for EUA review on Saturday 4/4/2020."

22.     The same press release also quoted Defendant Berman, who touted, *inter alia*, that "[o]ur Swift kit [COVID-19 test] will take a small amount of time to administer to a patient by a professional, such as poking a patient's finger-tip to achieve a drop of blood" and "[r]esults will be available in about 15 seconds."

23.     Additionally, Decision Diagnostics issued the following four press releases in April 2020, which, as evidenced by their titles, continued to tout information regarding, and progress towards making available, Decision Diagnostics' purported COVID-19 test:

- April 7, 2020 – "DECN Receives Pre-EUA Acknowledgement Letter And Product Serial Number From U.S. FDA For GenViro!(TM) Covid-19 Screening Kit For Professional Use";

- April 21, 2020 – "DECN to Provide Updates on the Progress of Our GenViro! Covid-19 Test Kits on Thursday April 23";

8

- April 23, 2020 – "DECN To Submit Second EUA Application For Covid-19 :15 Home Testing GenViro! Swift Kit, Reports Huge Response From Fortune 500 Companies"; and

- April 27, 2020 – "DECN Strongly Questions SEC's Unilateral Imposition Of 10-Day Trading Suspension -- Company Is Undaunted And Still Seeks Expedited FDA EUA Approval For Genviro! Swift :15 Virus Test Kit".

24.    On May 12, 2020, Decision Diagnostics issued a press release touting, *inter alia*, that the Company's "PharmaTech Solutions 'Swift Kit' [COVID-19] testing kit is designed to provide the answers individuals and employers need" and is "engineered to provide accurate results on the spot with no delay."

25.    The same press release also quoted Defendant Berman, who touted, in relevant part, that Defendants "continue to wait for the FDA to APPROVE [the] last issue in [their] testing protocol," and that, "even as [Defendants] have begun the testing, it is important the public know through respected, independent third-parties in the media that true assistance in combatting the virus that has virtually paralyzed our country is being sought as quickly as possible TO answer the needs of individuals and businesses alike."

26.    On May 21, 2020, Decision Diagnostics issued a press release touting that "the company will update [its] Decision Diagnostics and Pharma Tech Solutions web sites with some of the most recent testing data related to [its] GenViro! Covid-19 :15 Swiftkit Test kits."

9

27.     That press release also quoted Defendant Berman, who touted, *inter alia*, that Defendants "plan to post . . . testing data for [their] GenViro! Covid-19 :15 Swift kit test kits in the next few days," but that "[i]nterested parties will be required to call the company . . . to receive a password(s) to view the files" and "answer a short list of questions" because Defendants' websites "were recently hacked by Cybercriminals in an attempt to discredit the company."

28.     On June 4, 2020, Decision Diagnostics issued a press release touting that Defendant Berman had appeared on one of Vancouver's top-rated news and talk radio stations and on a live talk show to discuss the Company's "GenViro! Covid-19 :15 Swift Kit testing kit."  Defendant Berman, quoted in that press release, touted, *inter alia*, that "[m]edia interest such as this demonstrated by a well-respected news/talk station such as CKNW as well as WCBS-TV helps support [Defendants'] contention that [they] have developed a unique testing kit."

29.     Additionally, Decision Diagnostics issued the following two press releases in June 2020, which, as evidenced by their titles, continued to tout information regarding, and progress towards making available, Decision Diagnostics' purported COVID-19 test:

- June 12, 2020 – "DECN Readies Its 2nd EUA Amendment With The FDA For Its GenViro! Swift Professional COVID-19 :15 Test Kit, And Also Announces Its Further Support For More And Continued Worldwide COVID-19 Testing"; and

- June 17, 2020 – "DECN Files Provisional Patent For GenViro! Professional COVID-19 :15 Swift Kit, Adds Enhanced Technology To Allow For Even Swifter Results".

30.    The statements referenced in ¶¶ 18-29 were materially false and misleading because Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operational and compliance policies.  Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) Decision Diagnostics had not developed any viable COVID-19 test, much less a test that could detect COVID-19 in less than one minute; (ii) the Company could not meet the FDA's EUA testing requirements for its purported COVID-19 test; (iii) accordingly, Defendants had misrepresented the timeline within which it could realistically bring its COVID-19 test to market; (iv) all the foregoing subjected Defendants to an increased risk of regulatory oversight and enforcement; and (v) as a result, Defendants' public statements were materially false and misleading at all relevant times.

**The Truth Emerges**

31.    On December 17, 2020, the SEC filed a complaint in federal court against Defendants, alleging that they had issued a series of press releases that falsely claimed that Decision Diagnostics had developed a finger-prick blood test that could detect COVID-19 in less than one minute.  Specifically, the SEC Complaint summarized its allegations against Defendants as follows:

11

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

In the spring of 2020, Berman, the president and CEO of DECN . . . went on a publicity blitz to portray the Company as having created a working, breakthrough technology that could accurately test for [COVID-19] using just a finger-prick of blood and provide results in less than a minute. DECN's share price and trading volume surged as investors piled into the stock. While Berman and DECN portrayed DECN's product as something that would change the landscape of the Covid-19 pandemic paralyzing the world, the truth was the Company did not have a test, only an idea that had not materialized into a product.

From March 2020 to at least June 2020 . . . Berman made materially false and misleading public statements through DECN press releases and other statements about what he claimed was DECN's blood testing kit that could accurately detect Covid-19 and provide results in less than a minute. Berman also made materially false and misleading statements concerning DECN's efforts to obtain [EUA] from the [FDA], the key regulatory approval DECN needed before it could sell a testing product in the United States.

In stark contrast to these representations, all DECN actually had at the time of Berman's statements was a theoretical concept that had not yet materialized into a product, and without a product Berman knew that DECN could not meet the FDA's [EUA] testing requirements. These misstatements led to surges in the price and trading volume of DECN.

DECN and Berman have directly or indirectly violated, and unless restrained and enjoined, will continue to violate, Section 10(b) and Rule 10b-5 of the [Exchange Act] [15 U.S.C. § 78j(b) & 17 C.F.R. § 240.10b-5].

32.     Following the filing of the SEC Complaint, Decision Diagnostics' common share price fell $0.06 per share, or 60%, to close at $0.04 per share on December 18, 2020.

33.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## **PLAINTIFF'S CLASS ACTION ALLEGATIONS**

34.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired Decision Diagnostics securities during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures.  Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

35.     The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Decision Diagnostics securities were actively traded on the OTC.  While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class.  Record owners and other members of the Class may be identified from records maintained by Decision Diagnostics or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

36.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

37.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.  Plaintiff has no interests antagonistic to or in conflict with those of the Class.

38.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Decision Diagnostics;

- whether Defendant Berman caused Decision Diagnostics to issue false and misleading financial statements during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of Decision Diagnostics securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

14

39.   A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

40.   Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- Decision Diagnostics securities are traded in an efficient market;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the OTC and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiff and members of the Class purchased, acquired and/or sold Decision Diagnostics securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

15

41.     Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

42.     Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## <u>COUNT I</u>

### (Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against All Defendants)

43.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

44.     This Count is asserted against Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

45.     During the Class Period, Defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities.  Such scheme was intended to, and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Decision Diagnostics securities; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire Decision Diagnostics securities and options at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

46.    Pursuant to the above plan, scheme, conspiracy, and course of conduct, each of the Defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and/or other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for Decision Diagnostics securities.   Such reports, filings, releases, and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about Decision Diagnostics' finances and business prospects.

47.    By virtue of his positions at Decision Diagnostics, Defendant Berman had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other

members of the Class, or, in the alternative, Defendant Berman acted with reckless disregard for the truth in that he failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to Defendant Berman.  Said acts and omissions of Defendant Berman were committed willfully or with reckless disregard for the truth.  In addition, each Defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

48.     Information showing that Defendants acted knowingly or with reckless disregard for the truth is particularly within Defendants' knowledge and control.  As the senior manager and/or director of Decision Diagnostics, Defendant Berman had knowledge of the details of Decision Diagnostics' internal affairs.

49.     Defendant Berman is liable both directly and indirectly for the wrongs complained of herein.  Because of his positions of control and authority, Defendant Berman was able to and did, directly or indirectly, control the content of the statements of Decision Diagnostics.  As officer and/or director of a publicly-held company, Defendant Berman had a duty to disseminate timely, accurate, and truthful information with respect to Decision Diagnostics' businesses, operations, future financial condition, and future prospects.  As a result of the dissemination of the aforementioned false and misleading reports, releases, and public statements, the market price of Decision Diagnostics securities was artificially inflated throughout the Class Period.  In ignorance of the adverse facts concerning Decision Diagnostics'

business and financial condition which were concealed by Defendants, Plaintiff and the other members of the Class purchased or otherwise acquired Decision Diagnostics securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities, and/or upon statements disseminated by Defendants, and were damaged thereby.

50.     During the Class Period, Decision Diagnostics securities were traded on an active and efficient market. Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the Defendants made, issued, or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of Decision Diagnostics securities at prices artificially inflated by Defendants' wrongful conduct. Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid. At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of Decision Diagnostics securities was substantially lower than the prices paid by Plaintiff and the other members of the Class. The market price of Decision Diagnostics securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

51.   By reason of the conduct alleged herein, Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder by the SEC.

52.   As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions, and/or sales of the Company's securities during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

## COUNT II

**(Violations of Section 20(a) of the Exchange Act Against Defendant Berman)**

53.   Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

54.   During the Class Period, Defendant Berman participated in the operation and management of Decision Diagnostics, and conducted and participated, directly and indirectly, in the conduct of Decision Diagnostics' business affairs. Because of his senior positions with the Company, he knew the adverse non-public information about Decision Diagnostics' misstatement of income and expenses and false financial statements.

55.   As an officer and/or director of a publicly owned company, Defendant Berman had a duty to disseminate accurate and truthful information with respect to Decision Diagnostics' financial condition and results of operations, and to correct

promptly any public statements issued by Decision Diagnostics which had become materially false or misleading.

56.     Because of his positions of control and authority as a senior officer, Defendant Berman was able to, and did, control the contents of the various reports, press releases, and public filings which Decision Diagnostics disseminated in the marketplace during the Class Period concerning Decision Diagnostics' results of operations.  Throughout the Class Period, Defendant Berman exercised his power and authority to cause Decision Diagnostics to engage in the wrongful acts complained of herein.  Defendant Berman, therefore, was a "controlling person" of Decision Diagnostics within the meaning of Section 20(a) of the Exchange Act.  In this capacity, he participated in the unlawful conduct alleged which artificially inflated the market price of Decision Diagnostics securities.

57.     Defendant Berman, therefore, acted as a controlling person of Decision Diagnostics.  By reason of his senior management positions and/or being a director of Decision Diagnostics, Defendant Berman had the power to direct the actions of, and exercised the same to cause, Decision Diagnostics to engage in the unlawful acts and conduct complained of herein.  Defendant Berman exercised control over the general operations of Decision Diagnostics and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

58.     By reason of the above conduct, Defendant Berman is liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Decision Diagnostics.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

A.     Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.     Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.     Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees, and other costs; and

D.     Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated:  January 15, 2021                    Respectfully submitted,

POMERANTZ LLP

*/s/ Jennifer Pafiti*
Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor
Los Angeles, California 90024

22

Telephone: (310) 405-7190
Facsimile: (917) 463-1044
jpafiti@pomlaw.com

BRONSTEIN, GEWIRTZ &
GROSSMAN, LLC
Peretz Bronstein
(*pro hac vice* application forthcoming)
60 East 42nd Street, Suite 4600
New York, New York 10165
Telephone: (212) 697-6484
Facsimile: (212) 697-7296
peretz@bgandg.com

*Attorneys for Plaintiff*

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

Monday, December 28, 2020

## Decision (DECN)

# CERTIFICATION PURSUANT TO FEDERAL SECURITIES LAWS

1.  I make this declaration pursuant to Section 27(a)(2) of the Securities Act of 1933 ("Securities Act") and/or Section 21D(a)(2) of the Securities Exchange Act of 1934 ("Exchange Act") as amended by the Private Securities Litigation Reform Act of 1995.

2. I have reviewed a Complaint against Decision Diagnostics Corp. ("Decision" or the "Company") and authorize the filing of a comparable complaint on my behalf.

3.  I did not purchase or acquire Decision securities at the direction of plaintiffs counsel, or in order to participate in any private action arising under the Securities Act or Exchange Act.

4.   I am willing to serve as a representative party on behalf of a Class of investors who purchased or acquired Decision securities during the class period, including providing testimony at deposition and trial, if necessary.  I understand that the Court has the authority to select the most adequate lead plaintiff in this action.

5.  To the best of my current knowledge, the attached sheet lists all of my transactions in Decision securities during the Class Period as specified in the Complaint.

6.   During the three-year period preceding the date on which this Certification is signed, I have not sought to serve as a representative party on behalf of a class under the federal securities laws.

7.   I agree not to accept any payment for serving as a representative party on behalf of the class as set forth in the Complaint, beyond my pro rata share of any recovery, except such reasonable costs and expenses directly relating to the representation of the class as ordered or approved by the Court.

8.   I declare under penalty of perjury that the foregoing is true and correct.

**Name**

**Print Name**
Anthony Sanchez

**Signature**

1

**Decision Diagnostics Corp. (DECN)**                                                    **Sanchez, Anthony**

### List of Purchases and Sales

| Transaction Type | Date | Number of Shares/Unit | Price Per Share/Unit |
|---|---|---|---|
| Purchase | 3/18/2020 | 30,000 | $0.1759 |
| Purchase | 3/18/2020 | 14,500 | $0.1736 |
| Purchase | 3/18/2020 | 10,000 | $0.1570 |
| Purchase | 3/18/2020 | 10,000 | $0.1571 |
| Purchase | 3/18/2020 | 10,000 | $0.1577 |
| Purchase | 3/18/2020 | 10,000 | $0.1586 |
| Purchase | 3/18/2020 | 6,500 | $0.1560 |
| Purchase | 3/18/2020 | 5,500 | $0.1787 |
| Purchase | 3/18/2020 | 5,000 | $0.1741 |
| Purchase | 3/18/2020 | 5,000 | $0.1785 |
| Purchase | 3/18/2020 | 3,500 | $0.1573 |
| Purchase | 3/24/2020 | 5,000 | $0.1251 |
| Purchase | 3/24/2020 | 5,000 | $0.1261 |
| Purchase | 3/24/2020 | 3,000 | $0.1260 |
| Purchase | 3/24/2020 | 2,000 | $0.1252 |
| Purchase | 3/25/2020 | 48,771 | $0.0900 |
| Purchase | 3/25/2020 | 25,000 | $0.1120 |
| Purchase | 3/25/2020 | 24,500 | $0.1070 |
| Purchase | 3/25/2020 | 20,000 | $0.1165 |
| Purchase | 3/25/2020 | 16,825 | $0.1180 |
| Purchase | 3/25/2020 | 15,000 | $0.1170 |
| Purchase | 3/25/2020 | 10,000 | $0.1170 |
| Purchase | 3/25/2020 | 10,000 | $0.1171 |
| Purchase | 3/25/2020 | 3,175 | $0.1180 |
| Purchase | 3/25/2020 | 1,229 | $0.0880 |
| Purchase | 3/25/2020 | 500 | $0.1030 |
| Purchase | 3/30/2020 | 50,000 | $0.1025 |
| Purchase | 3/30/2020 | 50,000 | $0.1028 |
| Purchase | 3/30/2020 | 50,000 | $0.1035 |
| Purchase | 3/30/2020 | 49,970 | $0.1025 |
| Purchase | 3/30/2020 | 30 | $0.1075 |
| Purchase | 3/31/2020 | 10,000 | $0.0825 |
| Purchase | 3/31/2020 | 10,000 | $0.0825 |
| Purchase | 4/17/2020 | 10,000 | $0.2118 |
| Purchase | 4/17/2020 | 10,000 | $0.2120 |
| Purchase | 4/17/2020 | 10,000 | $0.2130 |
| Purchase | 4/20/2020 | 30,000 | $0.1900 |
| Purchase | 4/20/2020 | 10,000 | $0.1950 |
| Purchase | 4/20/2020 | 5,000 | $0.1910 |
| Purchase | 4/20/2020 | 5,000 | $0.1910 |
| Purchase | 4/20/2020 | 5,000 | $0.1910 |
| Purchase | 4/20/2020 | 5,000 | $0.1930 |
| Purchase | 5/11/2020 | 1,496 | $0.1180 |
| Purchase | 5/11/2020 | 1,004 | $0.1160 |
| Purchase | 5/20/2020 | 12,500 | $0.1350 |
| Purchase | 5/21/2020 | 1,000 | $0.1750 |
| Purchase | 5/26/2020 | 54,000 | $0.2400 |
| Purchase | 5/26/2020 | 25,000 | $0.2400 |
| Purchase | 5/26/2020 | 15,000 | $0.2050 |
| Purchase | 5/26/2020 | 3,100 | $0.1700 |

**Decision Diagnostics Corp. (DECN)**                                      **Sanchez, Anthony**

### List of Purchases and Sales

| Transaction Type | Date | Number of Shares/Unit | Price Per Share/Unit |
|---|---|---|---|
| Purchase | 7/9/2020 | 167,653 | $0.2900 |
| Purchase | 7/9/2020 | 100,000 | $0.2950 |
| Purchase | 7/9/2020 | 50,000 | $0.2900 |
| Purchase | 7/9/2020 | 50,000 | $0.2900 |
| Purchase | 7/9/2020 | 50,000 | $0.2900 |
| Purchase | 7/9/2020 | 50,000 | $0.2900 |
| Purchase | 7/9/2020 | 50,000 | $0.2950 |
| Purchase | 7/9/2020 | 50,000 | $0.2950 |
| Purchase | 7/9/2020 | 50,000 | $0.2950 |
| Purchase | 7/9/2020 | 49,400 | $0.2900 |
| Purchase | 7/9/2020 | 46,497 | $0.2900 |
| Purchase | 7/9/2020 | 24,850 | $0.2900 |
| Purchase | 7/9/2020 | 11,000 | $0.2900 |
| Purchase | 7/9/2020 | 600 | $0.2800 |
| Purchase | 10/2/2020 | 50,000 | $0.2440 |
| Sale | 5/27/2020 | (800) | $0.1750 |
| Sale | 5/27/2020 | (1,750) | $0.1600 |
| Sale | 5/27/2020 | (1,930) | $0.1700 |
| Sale | 5/27/2020 | (2,000) | $0.1550 |
| Sale | 5/27/2020 | (5,000) | $0.1610 |
| Sale | 5/27/2020 | (9,000) | $0.1600 |
| Sale | 5/27/2020 | (10,000) | $0.1550 |
| Sale | 5/27/2020 | (19,675) | $0.1500 |
| Sale | 5/27/2020 | (20,710) | $0.1525 |
| Sale | 5/27/2020 | (25,000) | $0.1650 |
| Sale | 5/27/2020 | (28,325) | $0.1501 |
| Sale | 5/27/2020 | (29,290) | $0.1550 |
| Sale | 5/27/2020 | (38,250) | $0.1525 |
| Sale | 5/27/2020 | (41,000) | $0.1550 |
| Sale | 5/27/2020 | (45,000) | $0.1600 |
| Sale | 5/27/2020 | (48,070) | $0.1600 |
| Sale | 5/27/2020 | (48,100) | $0.1550 |
| Sale | 5/27/2020 | (49,200) | $0.1510 |
| Sale | 5/27/2020 | (50,000) | $0.1505 |
| Sale | 5/27/2020 | (50,000) | $0.1550 |
| Sale | 5/27/2020 | (50,000) | $0.1550 |
| Sale | 5/27/2020 | (50,000) | $0.1550 |
| Sale | 5/27/2020 | (50,000) | $0.1600 |
| Sale | 5/27/2020 | (50,000) | $0.1600 |