POMERANTZ LLP
Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor
Los Angeles, California 90024
Telephone: (310) 405-7190
Facsimile: (917) 463-1044
jpafiti@pomlaw.com

*Counsel for Plaintiffs*

*[Additional Counsel on Signature Page]*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTHONY SANCHEZ and THOMAS TOSSAVAINEN,<br><br>Plaintiffs,<br><br>v.<br><br>DECISION DIAGNOSTICS CORP. and KEITH M. BERMAN,<br><br>Defendants. | Case No. 2:21-cv-00418-FWS-JPR<br><br>PLAINTIFFS MEMORANDUM IN SUPPORT OF MOTION FOR DEFAULT JUDGMENT AGAINST DEFENDANTS DECISION DIAGNOSTICS CORP. AND KEITH M. BERMAN<br><br>Hon. Fred W. Slaughter<br>Date: June 23, 2022<br>Time:  10:00 a.m.<br>Courtroom:  10D, Ronald Reagan Federal Building and Courthouse (Santa Ana) |

PLAINTIFFS MEMORANDUM IN SUPPORT OF MOTION FOR DEFAULT JUDGMENT AGAINST
DEFENDANTS DECISION DIAGNOSTICS CORP. AND KEITH M. BERMAN

# **TABLE OF CONTENTS**

Page

I.     INTRODUCTION ...................................................................................... 1

II.    STATEMENT OF FACTS ......................................................................... 3

       A. Defendants Made False and/or Misleading Statements
       about the Company's Purported COVID-19 test ................................... 3

       B. The Truth Emerges ............................................................................. 4

III.   ARGUMENT............................................................................................. 7

       A. Plaintiffs have Complied with Fed. R. Civ. P. 55(a) and 54(c) and
           L.R. 55-1 .......................................................................................... 9

       B. The *Eitel* Factors Support Entry of Default Judgment..................... 10

            1. Possibility of Prejudice to Plaintiffs ......................................... 10

            2. Substantive merits and sufficiency of the Amended
               Complaint .............................................................................. 11

                 a.  Antifraud violations – Section 10(b) ............................... 11

                 b.  Control Person Violation (Berman)................................. 16

            3. Amount at Stake and Seriousness of Defendants' Conduct ....... 17

            4. Possibility of disputed facts ...................................................... 18

            5. Possibility of excusable neglect ................................................. 18

            6. Policy for deciding on the merits ............................................... 19

       C. The Plaintiffs Are Entitled to the Relief They Seek ........................ 19

IV.    CONCLUSION........................................................................................ 20

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Affiliated Ute Citizens of the State of Utah v. United States*,
   406 U.S. 128, 92 S. Ct. 2430 (1972)................................................................. 15

*Aldabe v. Aldabe*,
   616 F.2d 1089 (9th Cir. 1980) ............................................................................ 9

*Basic v. Levinson*,
   485 U.S. 224 (1988)........................................................................................... 12

*Benny v. Pipes,*
   799 F.2d 489 (9th Cir. 1986) *amended* 807 F.2d 1514 (9th Cir. 1987) .......... 11

*Davis v. Fendler*, 650 F.2d 1154 (9th Cir. 1981)..................................................... 8

*Donell v. Kelly,*
   No. 10CV2416 L(POR), 2011 WL 13356085 (S.D. Cal. Nov. 1, 2011) ...... 8, 9

*Eitel v. McCool*,
   782 F.2d 1470 (9th Cir. 1986) .................................................................*passim*

*Elektra Entertainment Group Inc. v. Bryant,*
   No. CV 03–6381 GAF (JTLx),
    2004 WL 783123 (C.D. Cal. Feb. 13, 2004) .................................................. 10

*Erica P. John Fund, Inc. v. Halliburton Co.,*
   563 U.S. 804 (2011)........................................................................................... 15

*Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*,
   973 F.2d 155 (2d Cir. 1992) ............................................................................... 8

*Hollinger v. Titan Capital Corp*.,
   914 F.2d 1564 (9th Cir. 1990) .......................................................................... 13

*HsingChing Hsu v. Puma Biotechnology, Inc.*,
   No. SACV1500865AGSHKX,
    2019 WL 4295285 (C.D. Cal. Sept. 9, 2019) ........................................... 19, 20

*In re Gilead Scis. Sec. Litig.*,

ii

536 F.3d 1049 (9th Cir. 2008) ........................................................................ 16

*In re J.P. Jeanneret Assocs., Inc.*,
    769 F. Supp. 2d 3240 (S.D.N.Y. 2011) .......................................................... 15

*Khoja v. Orexigen Therapeutics, Inc.*,
    899 F.3d 988 (9th Cir. 2018) ......................................................................... 11

*Kim v. Allakos Inc.*,
    No. 20-CV-01720-JSW, 2022 WL 976974 (N.D. Cal. Mar. 31, 2022) .......... 16

*Landstar Ranger, Inc. v. Parth Enterprises, Inc.*,
    725 F. Supp. 2d 916 (C.D. Cal. 2010) ............................................................ 10

*Mao v. Merrill Lynch Pierce, Fenner & Smith, Inc.*, No. 17-cv-409-L(MDD),
    2020 U.S. Dist. LEXIS 257637 (S.D. Cal. Feb. 26, 2020)............................. 17

*Mineworkers' Pension Scheme v. First Solar Inc.*,
    881 F.3d 750 (9th Cir. 2018) ......................................................................... 15

*Pepsico, Inc. v. Cal. Sec. Cans*,
    238 F. Supp. 2d 1172 (C.D. Cal. 2002) .....................................................*passim*

*Pepsico, Inc. v. Triunfo-Mex. Inc.*,
    189 F.R.D. 431 (C.D. Cal. 1999)...................................................................... 8

*Philip Morris USA, Inc. v. Castworld Prods.*,
    219 F.R.D. 494 (C.D. Cal. 2003)................................................................. 8, 19

*Schueneman v. Arena Pharms., Inc.*,
    840 F.3d 698 (9th Cir. 2016) ......................................................................... 12

*SEC v. Baccam*,
    No. ED CV 17-0172 SJO (SPx), 2017 WL 5952168 (C.D. Cal. June 14,
    2017) ......................................................................................................... 18, 19

*SEC v. Constantin,*
    939 F. Supp. 2d 288 (S.D.N.Y. 2013) ............................................................ 15

*SEC v. Moran*,
    944 F. Supp. 286, 295 (S.D.N.Y. 1996) ........................................................ 19

*SEC v. Zandford,*

iii

535 U.S. 813, 822 (2002)..................................................................................... 14

*Shareholders Janus Cap. Grp., Inc. v. First Derivative Traders*, 564 U.S. 135
    (2011) ............................................................................................................... 12

*TeleVideo Sys., Inc. v. Heidenthal,*
    826 F.2d 915 (9th Cir. 1987) ....................................................................... 8, 18

*TSC Indus., Inc. v. Northway, Inc.,*
    426 U.S. 438 (1976)........................................................................................ 12

*Vernazza v. S.E.C.,* 327 F.3d 851 (9th Cir. 2003), *amended,*
    335 F.3d 1096 (9th Cir. 2003) ....................................................................... 13

*Warshaw v. Xoma Corp.,*
    74 F.3d 955 (9th Cir. 1996) ........................................................................... 12

**Rules**

15 U.S.C. §§ 1343 ...................................................................................................7

15 U.S.C. § 78j(b) ................................................................................................. 11

15 U.S.C. § 78c(10) .............................................................................................. 15

15 U.S.C. § 78t(a) ................................................................................................. 16

18 U.S.C. § 1505 .....................................................................................................7

28 U.S.C. § 1961(a) .............................................................................................. 20

Fed. R. Civ. P. 4(h)(1)(A) ........................................................................................ 1

Fed. R. Civ. P 5(b) .................................................................................................. 2

Fed. R. Civ. P. 54(c)................................................................................. 8, 9, 10, 19

Fed. R. Civ. P. 55(a)....................................................................................... 2, 7, 9

Fed. R. Civ. P 55(b) .............................................................................. 2, 7, 8, 19

L.R 7-3 .................................................................................................................... 2

L.R 55-1 .......................................................................................................... 7, 8, 9

iv

PLAINTIFFS MEMORANDUM IN SUPPORT OF MOTION FOR DEFAULT JUDGMENT AGAINST
DEFENDANTS DECISION DIAGNOSTICS CORP. AND KEITH M. BERMAN

L.R 55-2 ................................................................................................................ 8

Servicemembers Civil Relief Act ......................................................................... 8

California Code of Civil Procedure § 416.10 ....................................................... 1

v

## I.   **INTRODUCTION**

This litigation involves a serious securities fraud in which neither the corporate defendant nor the individual defendant has appeared or responded to any pleading, despite a stipulated order requiring them to do so by December 6, 2021. *See* ECF No. 32.   Plaintiffs Anthony Sanchez and Thomas Tossavainen ("Plaintiffs") therefore move for entry of default judgment against Defendants, Decision Diagnostics Corp.[1] and Keith M. Berman (collectively, "Defendants"), whose defaults for failure to respond to the Amended Complaint were entered on February 11, 2022.  ECF No. 42.

Plaintiffs first filed this action on January 15, 2021. ECF No. 1 ("Initial Complaint").  The Initial Complaint alleges that, from March 2020 to at least December 2020 ("Relevant Period"), Defendants artificially increased and/or maintained an artificial price of Decision Diagnostics' stock (ticker symbol: DECN) by: (1) making false, fraudulent, and/or misleading public statements related to the Company's purported COVID-19 test; (2) concealing the truth about the Company's purported COVID-19 test; and (3) concealing from regulators, law enforcement, and thus, the investing public and shareholders that they lacked a viable product.   On March 18, 2021, Plaintiffs served Defendant Decision Diagnostics Corp, pursuant to Federal Rule of Civil Procedure 4(h)(1)(A), by personally delivering the Summons and Initial Complaint to Keith M. Berman, an officer of Defendant Decision Diagnostics Corp., authorized to accept service under California Code of Civil Procedure § 416.10.   The Affidavit of Service upon Defendant Decision Diagnostics was previously filed with the Court on May 12, 2021, in ECF No. 22-2.

---

[1] Sometimes referred to herein as "the Company."

1

Plaintiffs' counsel reached out to Berman's counsel and on August 25, 2021 negotiated a briefing schedule for Defendants' response to the Amended Complaint, which was reduced to a stipulation signed by that counsel on behalf of Berman and Decision Diagnostics, and so ordered by Judge Kronstadt on September 7, 2021. *See* ECF No. 33.  The stipulation required that Defendants "Answer or otherwise respond to the Amended Complaint" by December 6, 2021. *Id*.

On October 14, 2021, Plaintiffs filed the Amended Complaint, alleging more factual details.  *See* ECF No. 35.  On October 14, 2021, Plaintiffs served the Amended Complaint upon both Defendants via first-class mail, pursuant to Federal Rule of Civil Procedure 5(b) and Local Rule 5-3.  On February 9, 2022, Plaintiffs filed a corrected proof of service of the Summons, Initial Complaint, and Amended Complaint.  *See* ECF Nos. 39 and 40. Neither Decision Diagnostics Corp. nor Keith M. Berman responded to the Amended Complaint, and on February 9, 2022, Plaintiffs filed a corrected request for default under Fed. R. Civ. P. 55(a).  ECF No. 41.  On February 11, 2022, the Clerk entered a default against both Defendants. ECF No. 42. On February 14, 2022, the Court ordered Plaintiffs to file their motion for Default Judgment by May 9, 2022.  ECF No. 43.

Because Defendants, with full notice and extensive opportunity to engage in this litigation, have determined that they will not participate[2] or respond to the Amended Complaint, Plaintiffs now move under Fed. R. Civ. P. 55(b)(2) for entry of default judgment, requiring Defendants to pay damages sustained by Plaintiffs, and awarding prejudgment and postjudgment interest.

---

[2] Because Defendants have not appeared in this action, and Berman's criminal attorneys, who also have not appeared in this matter, have indicated to Plaintiffs' counsel that they do not intend to participate in this action, L.R. 7-3, which requires conferral of counsel when contemplating the filing of a motion, does not apply.

2

PLAINTIFFS MEMORANDUM IN SUPPORT OF MOTION FOR DEFAULT JUDGMENT AGAINST
DEFENDANTS DECISION DIAGNOSTICS CORP. AND KEITH M. BERMAN

## II.   STATEMENT OF FACTS

The Amended Complaint alleges that Defendant Decision Diagnostics is a Nevada corporation with principal executive offices located at 2660 Townsgate Road, Suite 300, Westlake Village, California. ¶ 17.[3]  During the Relevant Period, the Company's common shares traded actively under the ticker symbol "DECN," and Company-specific information was rapidly provided to investors who traded on such information via press releases, news coverage and investor discussions on internet investment-focused message boards.  ¶ 17.

Defendant Berman, as the sole C-level executive and sole Director of Decision Diagnostics, exercised dominant authority over the day-to-day operations of the Company. ¶ 19.  He possessed the power and authority to control the contents of Decision Diagnostics' press releases, and other market communications. Because of his position with Decision Diagnostics, and his access to material information available to him but not to the public, Defendant Berman knew that the positive representations being made about the testing kit were materially false and/or misleading.  ¶ 19.

### A. Defendants Made False and/or Misleading Statements about the Company's Purported COVID-19 test

Defendants Berman and Decision Diagnostics repeatedly made statements throughout the Relevant Period that falsely and/or misleadingly conveyed to the market that the Company had a functioning COVID-19 testing kit, which Berman branded "GenViro!". ¶ 26.  At the time Defendants made these statements, Berman and the Company knew but omitted from investors that they had not manufactured a single testing kit or even a prototype device capable of detecting COVID-19.  ¶ 26.  Defendants Berman and Decision Diagnostics also doubled down on their

---

[3] All references to "¶" or "¶¶" herein are to the Amended Complaint, ECF No. 35, unless indicated otherwise.

3

misrepresentations by claiming progress with the FDA towards obtaining Emergency Use Authorization ("EUA"), even though the Company had not built a COVID-19 testing kit.  ¶ 27.

During the Relevant Period, Decision Diagnostics issued 18 false and/or misleading press releases in which it touted its ability to bring the GenViro! COVID-19 test to market, when it had not in fact developed a viable product or even a prototype. ¶¶ 28-34, 41-56, 62-63, 66-69, 81-87.  As alleged in the Amended Complaint, Defendant Berman was quoted as making 12 false and/or misleading statements in these press releases.  ¶¶ 29, 31 33, 41, 43, 45, 47, 49, 53, 55, 68, 81.

Exacerbating the press release misrepresentations, during the Relevant Period, Berman also posted over 1000 messages to the Investors Hub ("iHUB") and Investors Hangout message boards using false aliases purporting to be independent shareholders of DECN and an industry insider in medical device manufacturing, to promote DECN and inflate the stock price.  ¶¶ 35-37.  Berman also used investor message boards to push back against investors that expressed doubts about the veracity of the Company's statements about the purported COVID-19 blood test.  ¶ 38.  Berman also made false and/or misleading statements in an April 2020 interview with a New York affiliate of CBS that aired on television and was posted on the station's website on May 5, 2020, in which Berman described the Company's testing kit as a "game changer" because "it works and it works fast."  ¶ 57.

**B. The Truth Emerges**

On April 23, 2020, the SEC issued an order suspending trading in DECN stock because of questions raised regarding the accuracy and adequacy of information in the marketplace about DECN.  ¶ 64.  As set forth in the Department of Justice Superseding Indictment ("Superseding Indictment"), Berman admitted in a private email on June 2, 2020 to a South Korean vendor that "my company cannot

PLAINTIFFS MEMORANDUM IN SUPPORT OF MOTION FOR DEFAULT JUDGMENT AGAINST DEFENDANTS DECISION DIAGNOSTICS CORP. AND KEITH M. BERMAN

raise money based on GenViro news as long a[s] the SEC is investigating us." ¶ 65.

Defendants made false and/or misleading statements to interfere with the SEC's investigation. While posting as his alias on the Investors Hangout message board, using the name "Matthew Steinmann," Berman coaxed a shareholder ("Cooperating Shareholder") into drafting a purported "Shareholder Letter" to the SEC to gather signatures in order to interfere with the SEC's investigation into Decision Diagnostics stock. ¶¶ 65, 70. During this time, Berman played a significant role in drafting and editing the Shareholder Letter. On June 2, 2020, Defendants caused the Cooperating Shareholder to send the 19-page letter they had helped draft and revise to the SEC, falsely accusing the agency of unethical and inappropriate conduct against the Defendants in order to cover-up their own misdeeds. ¶ 73. Berman subsequently posted false and/or misleading statements on the iHUB message board, accusing the SEC of criminal liability, and falsely claiming that Berman had nothing to do with the Shareholder Letter. ¶¶ 72-76.

On December 15, 2020, the DOJ issued an indictment ("Indictment") against Keith Berman in federal Court, which was unsealed on December 18, 2020. ¶ 90. The Indictment charged Berman with making false statements to the Department of Justice and alleged that Berman compromised the Company's financial standing through his misuse of company funds, misrepresented the viability of the test strip technology in detecting COVID-19 through a series of false and/or misleading press releases issued over the course of 2020 that were aimed at DECN shareholders and potential shareholders, and alleged that Berman used an alias on an online investment message board to promote the Company's COVID-19 blood test to shareholders and potential shareholders, and attempted to threaten and intimidate individuals who approached the SEC and other regulators regarding the Company

5

and Berman's actions.  ¶ 90.  The DOJ alleged that such press releases contained false and/or misleading statements regarding the FDA's approval of the Company's COVID-19 blood "test."  ¶ 90.

On December 17, 2020, the SEC filed a Complaint in federal court against Defendants Berman and Decision Diagnostics Corp. ("SEC Complaint"), alleging that they had issued a series of press releases that falsely claimed that Decision Diagnostics had developed a finger-prick blood test that could detect COVID-19 in less than one minute.  ¶ 91.  As alleged in the SEC Complaint, Berman admitted in a sworn affidavit that no prototype existed before April 7, 2020.  ¶ 89.   The SEC issued a press release on December 18, 2020, announcing that it had issued the charges.  ¶ 91

As a result of the disclosure of the fraud in the SEC Complaint and the unsealed DOJ Indictment, Decision Diagnostics' common share price fell $0.0735 per share, or 65.3%, from $0.1125 per share on December 17, to close at $0.039 on December 18, 2020, and continued to drop on heavy volume the following several trading days.  ¶ 92.

6

PLAINTIFFS MEMORANDUM IN SUPPORT OF MOTION FOR DEFAULT JUDGMENT AGAINST
DEFENDANTS DECISION DIAGNOSTICS CORP. AND KEITH M. BERMAN



On May 11, 2021, the DOJ issued the Superseding Indictment against Keith Berman, which included additional allegations regarding his use of an alias on an additional message board to pump up the value of DECN stock and to obstruct SEC's investigation into Defendants. ¶ 93.  The indictment included the charges of securities fraud and making false statements, as well as added a count for wire fraud (15 U.S.C. §§ 1343 & 2), and a count for Obstruction of the SEC investigation (18 U.S.C. §§ 1505 & 2). ¶ 93.

## III.   Argument

Federal Rule of Civil Procedure 55(b) provides for entry of a default judgment by the Court following entry of a default by the court clerk under Rule 55(a). Local Rule 55-1 requires that motions for a default judgment be accompanied with a declaration that sets forth the following information: (1) when and against which party default was entered; (2) the identification of the pleadings to which default was entered; (3) whether the defaulting party is a minor or incompetent person and, if so, whether that person is adequately represented; (4) that the

7

Servicemembers Civil Relief Act does not apply; and (5) that notice of the motion has been served on the defaulting party, if required. Fed. R. Civ. P. 55(b)(2) and Local Rule 55-1. A party seeking a default judgment must state a claim upon which it may recover. *Pepsico, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1175 (C.D. Cal. 2002). After a default has been entered by the court clerk, the well-pleaded factual allegations of the complaint are taken as true, except for those allegations relating to damages. *Id*. at 1177 (citing *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917 (9th Cir. 1987)). Thus, the plaintiff is required to provide proof of damages sought in the complaint. *Id*.; Fed. R. Civ. P. 54(c).

The "Plaintiffs burden in 'proving up' damages [on a motion for default] is relatively lenient. If proximate cause is properly alleged in the complaint, it is admitted upon default. Injury is established and plaintiff need prove only that the compensation sought relates to the damages that naturally flowed from the injuries pled." *Philip Morris USA, Inc. v. Castworld Prods*., 219 F.R.D. 494, 498 (C.D. Cal. 2003) (citing *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp*., 973 F.2d 155, 159 (2d Cir. 1992)).

Proof of damages is readily established here. Damages may be proved by declaration. L.R. 55-2. The transactional information has already been provided to the Court, confirmed under threat of perjury, and the losses mechanically calculated by customary measures. *See* Section B.3 below. "Where the amount of damages claimed is … capable of mathematical calculation, the court may enter a default judgment without a hearing." *Donell v. Kelly*, No. 10CV2416 L(POR), 2011 WL 13356085, at *2 (S.D. Cal. Nov. 1, 2011) (citing *Davis v. Fendler*, 650 F.2d 1154, 1161 (9th Cir. 1981). When a plaintiff is proving unliquidated damages, "the court may require the plaintiff to file declarations or affidavits providing

8

evidence for damages in lieu of a full evidentiary hearing." *Donell*, 2011 WL 13356085, at \*2.

Entry of a default judgment under Rule 55 is left to the Court's sound discretion, *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980), but in applying this standard, "default judgments are more often granted than denied." *See Pepsico, Inc. v. Triunfo-Mex. Inc.*, 189 F.R.D. 431, 432 (C.D. Cal. 1999).

### A. Plaintiffs have Complied with Fed. R. Civ. P. 55(a) and 54(c) and L.R. 55-1

The Plaintiffs have satisfied the procedural requirements for a default judgment against the defaulting Defendants under Fed. R. Civ. P. 55(a) and Local Rule 55-1. Plaintiffs have (1) served the defaulting Defendants with the summons and complaint, (ECF No. 41-1, (February 9, 2022 Decl. of Brian P. O'Connell), ECF No. 39 (Corrected Proof of Service of Summons and Initial Complaint Upon Decision Diagnostics Corp. and Keith M. Berman), ECF No. 40, (Corrected Proof of Service of Amended Complaint)), (2) caused the clerk to enter a default against each Defendants Berman and Decision Diagnostics Corp. for failure to answer (ECF No. 42, February 11, 2022); and (3) demonstrated that Berman is not a minor or incompetent, and is not an active duty service member of the United States military, reservists, or a member of the National Guard, thus making the Servicemembers Civil Relief Act (50 U.S.C. App. § 521) inapplicable. *See also* May 9, 2022 Declaration of Brian P. O'Connell in Support of Plaintiffs Motion for Default Judgment ("O'Connell Decl.").

Consistent with the Court's order dated February 14, 2022 (ECF No. 43), the Plaintiffs have provided notice of this motion to the Defendants' attorneys who have not appeared in this action (Proof of Service attached hereto). Additionally, because Plaintiffs do not request relief that differs from or exceeds that prayed for in the

9

Amended Complaint, the application for default judgment complies with Fed. R. Civ. P. 54(c).

### B.    The *Eitel* Factors Support Entry of Default Judgment

The Ninth Circuit has directed that courts consider the following factors (*Eitel* Factors) in deciding whether to enter default judgment: (1) the possibility of prejudice to plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning the material facts; (6) whether defendant's default was the product of excusable neglect, and (7) the strong public policy favoring decisions on the merits.  *Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986); *see also Landstar Ranger, Inc. v. Parth Enterprises, Inc*., 725 F. Supp. 2d 916, 919 (C.D. Cal. 2010);  *Elektra Entertainment Group Inc. v. Bryant,* No. CV 03–6381 GAF (JTLx), 2004 WL 783123, *2 (C.D. Cal. Feb. 13, 2004).    As explained below, the *Eitel* factors favor granting Plaintiffs an order of default judgment.

### 1.  Possibility of Prejudice to Plaintiffs

The possibility of prejudice exists "[i]f Plaintiffs' motion for default judgment is not granted, Plaintiffs will likely be without other recourse for recovery." *PepsiCo*, 238 F. Supp. 2d at 1177; *see also Landstar Ranger, Inc. v. Parth Enterprises, Inc*., 725 F. Supp. 2d 916, 920 (C.D. Cal. 2010).  The Plaintiffs are two individual investors who were defrauded by Defendants' harmful acts.  Because Mr. Berman is facing criminal charges and the company has ceased reporting, any delay in default judgment is likely to prevent Plaintiffs' ability to recover.  Nor can Plaintiffs rely on the SEC investigation.  The SEC has not created a Fair Fund for victims.  But for this judgment, Plaintiffs will not be compensated for their damages.

PLAINTIFFS MEMORANDUM IN SUPPORT OF MOTION FOR DEFAULT JUDGMENT AGAINST DEFENDANTS DECISION DIAGNOSTICS CORP. AND KEITH M. BERMAN

## 2. Substantive merits and sufficiency of the Amended Complaint

Together, the second and third *Eitel* factors "require that a plaintiff state a claim on which [plaintiff] may recover." *PepsiCo*, 238 F. Supp. 2d at 1175 (citation omitted). Well-pleaded allegations are taken as admitted on a default judgment. *Benny v. Pipes,* 799 F.2d 489, 495 (9th Cir. 1986), *amended*, 807 F.2d 1514 (9th Cir. 1987). Here, Plaintiffs' well-pled allegations establish that Berman and Decision Diagnostics Corp. violated Section 10(b) of the Exchange Act and Rule 10b-5 thereunder and that Defendant Berman violated Section 20(a) of the Exchange Act.

### a. Antifraud violations – Section 10(b)

To plead a primary violation of Section 10(b) and SEC Rule 10b-5, a complaint must allege "1) a material misrepresentation or omission by the defendant [falsity]; 2) scienter; 3) a connection between the misrepresentation or omission and the purchase or sale of a security; 4) reliance upon the misrepresentation or omission; 5) economic loss; and 6) loss causation." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1008 (9th Cir. 2018).

**False and/or Misleading Statements**: Section 10(b) of the Exchange Act and Rule 10b-5 make it unlawful, in connection with the purchase or sale of a security by the use of interstate commerce, to make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading. 15 U.S.C. § 78j(b); 17 C.F.R. 240.10b-5.

As set forth in the Amended Complaint, Defendants made several types of misleading statements to investors, including, but not limited to: that the company would be "commercial ready in the summer of 2020" (¶ 28), that the Company had a functional test or prototype that could either reliably provide a COVID-19 test result or project probabilities of false positives or false negatives, (¶¶ 29, 57), that

11

PLAINTIFFS MEMORANDUM IN SUPPORT OF MOTION FOR DEFAULT JUDGMENT AGAINST DEFENDANTS DECISION DIAGNOSTICS CORP. AND KEITH M. BERMAN

it would sell hundreds of millions of kits within the first year of production, and that sales would begin "Late 3Q 2020" (¶ 33), that the company had "developed a Coronavirus screening method" that allowed "80% of the suspected carriers of Coronavirus to exist the quarantine system in places where Coronavirus is rampant," (¶ 33), and disseminated the image of purported COVID-19 testing kits when a viable prototype did not exist, and that it had developed a new "15 seconds and faster than Rapid" test. ¶ 49.

Berman and the Company "made" the statements at issue because Berman, acting on behalf of himself and the Company, exercised ultimate and total authority over the content and publication of each statement alleged. ¶ 49. *See Shareholders Janus Cap. Grp., Inc. v. First Derivative Traders*, 564 U.S. 135, 142 (2011) (maker of false or misleading statement is one with "ultimate authority over the statement, including its content and whether and how to communicate it.").

**Materiality**: The antifraud provisions of the Exchange Act require that the misrepresentations concern a material fact. *Basic v. Levinson*, 485 U.S. 224, 231-232 (1988). A fact is material if there is a substantial likelihood that a reasonable investor would consider the information important in making an investment decision. *Id.* (citing *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 449 (1976)). Statements about the likelihood of approval by failing to disclose the FDA's known concerns about underlying clinical data have been held as material. *See e.g.*, *Schueneman v. Arena Pharms., Inc.*, 840 F.3d 698, 707-09 (9th Cir. 2016); *see also Warshaw v. Xoma Corp.*, 74 F.3d 955, 958-60 (9th Cir. 1996) (reversing dismissal where defendants stated that everything was "going fine" even though they knew that approval was unlikely). The false and/or misleading statements to investors about the viability of the purported COVID-19 test, the likelihood of FDA authorization, and that millions of testing kits would be delivered were crucially

12

PLAINTIFFS MEMORANDUM IN SUPPORT OF MOTION FOR DEFAULT JUDGMENT AGAINST DEFENDANTS DECISION DIAGNOSTICS CORP. AND KEITH M. BERMAN

important to investors, and were made for the purposes of generating investor interest and artificially inflating the DECN share price, as explained in the Amended Complaint. *See* ¶¶ 30, 32, 34, 39, 42, 44, 46, 48, 50, 52, 54, 56, 58, 63, 67, 69, 76, 82, 85, and 87.

**Scienter**: Scienter embraces "'knowing or reckless conduct,' without a showing of 'willful intent to defraud.'" *Vernazza v. S.E.C.,* 327 F.3d 851, 860 (9th Cir. 2003), *amended*, 335 F.3d 1096 (9th Cir. 2003); *Hollinger v. Titan Capital Corp.*, 914 F.2d 1564, 1568-69 (9th Cir. 1990). "Reckless conduct may be defined as a highly unreasonable omission, involving not merely simple, or even inexcusable negligence, but an extreme departure from the standards of ordinary care, and which presents a danger of misleading buyers … that is either known to the defendant or is so obvious that the actor must have been aware of it." *Hollinger*, 914 F.2d at 1569.

The Amended Complaint alleges facts demonstrating that Defendants had actual knowledge of the truth at the time they made their misrepresentations to investors. Berman was the person who made the false representations, and also engaged in the communications with investors. ¶¶ 19, 29, 31 33, 41, 43, 45, 47, 49, 53, 55, 68, 81. He had sole power over the day-to-day operations of the Company, and had access to all the material information available to him but not to the public. ¶ 19. Defendants knew when issuing materially false statements about the commercial viability of the purported testing kit and the likelihood of securing EUA during the Relevant Period, that they could not complete the required testing to secure approval. ¶ 40. Indeed, on February 29, 2020, before Berman began issuing false statements, the Company's South Korean-based vendor informed Berman that it did not know of a way to use Company technology to test for COVID-19 in blood or saliva, yet, Berman emailed a technical advisor on March 2, 2020 stating that the

South Korean vendor had informed him that the Company could use its technology to detect COVID-19 in blood.  ¶¶ 24-25.  Defendants also falsely claimed that the company was close to completing required EUA testing when Defendants knew they had in fact not yet begun testing and lacked a product to test.  ¶¶ 26, 27, 40-42.

Berman, knowing he did not have a viable product to secure EUA approval, launched a "political plan" in lieu of actually developing a working prototype and providing evidence to the FDA, including hiring consultants to assist him in pressuring the FDA to approve the Company's EUA application.  ¶¶ 60-61. Defendants' attempted cover-up, as indicated by Berman's email to the South Korean vendor that "my company cannot raise money based on GenViro news as long as the SEC is investigating us" shows that he acted with knowledge in interfering with the SEC's investigation.  ¶ 65.  Berman's use of a fictitious name "Matthew Steinmann" on message boards to secure cooperation with unsuspecting shareholders in drafting the Shareholder Letter demonstrates Defendants' knowledge of the illegality of their actions.  ¶ 65.  In addition, Berman's references to supposed communications with Berman, while using his alias and pretending to be somebody else, while also claiming that "Berman had nothing to do with the [Shareholder] letter," as well as his accusations that the SEC was subject to criminal liability, raise an inference that he was knowingly interfering with the investigation. ¶¶ 71, 74, 75.

**In connection with the purchase of securities:** Section 10(b) of the Exchange Act and Rule 10b-5 thereunder make it unlawful, "in connection with the purchase or sale of a security," to engage in any fraudulent conduct.  The Supreme Court in *SEC v. Zandford* held that where a scheme to defraud "coincide[s]" with the securities transaction at issue, it satisfies the "in connection with" requirement of Section 10(b) and Rule 10b-5.  535 U.S. 813, 822 (2002).

14

There can be no question that the publicly-traded shares in DECN are "securities" within the meaning of the Securities Exchange Act, and that they were sold during the Relevant Period.  ¶¶ 1, 95, 106; *see* 15 U.S.C. § 78c(10) (defining "security" to include, among other things, "any stock").  *See, e.g., SEC v. Constantin,* 939 F. Supp. 2d 288, 304 (S.D.N.Y. 2013) ("purported buying and selling of securities is itself sufficient to satisfy the 'in connection with' requirement") (quoting *In re J.P. Jeanneret Assocs., Inc.*, 769 F. Supp. 2d 3240, 361-63 (S.D.N.Y. 2011)).

**Reliance**: Plaintiffs allege and did in fact rely upon the misrepresentations made by Defendants and purchased without knowledge of the truth concealed by Defendants.  ¶ 111.  Plaintiffs are also entitled to a presumption of reliance based on the "fraud-on-the-market" theory.  ¶ 101.  *See Erica P. John Fund, Inc. v. Halliburton Co.,* 563 U.S. 804, 810 (2011).  "Because the market transmits information to the investor in the processed form of a market price, we can assume, the Court explained, that an investor relies on public misstatements whenever he buys or sells stock at the price set by the market." *Id.* at 811 (internal quotations omitted).  Additionally, Plaintiffs are entitled to a presumption of reliance under *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 153-154 (1972), as Defendants omitted material information in their statements to investors in violation of a duty to disclose such information. ¶ 103.  Accordingly, Plaintiffs satisfy reliance.

**Economic Loss and Loss Causation**: To prove loss causation, plaintiffs need only show a "causal connection" between the fraud and the loss. *Mineworkers' Pension Scheme v. First Solar Inc.*, 881 F.3d 750, 753 (9th Cir. 2018).  "Because loss causation is simply a variant of proximate cause, the ultimate issue is whether the defendant's misstatement, as opposed to some other fact,

15

foreseeably caused the plaintiff's loss." *Id.* A disclosure is deemed corrective for purposes of establishing loss causation, even if some information was previously public if it brings to light new implications of the previously disclosed information that investors were not aware of. *See In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1058 (9th Cir. 2008).

As alleged in the Amended Complaint, Plaintiffs suffered significant losses as a result of Defendants' fraudulent statements and their revelation in December, 2020. On April 23, 2020, the SEC issued an order suspending trading in DECN stock from April 24, 2020 to May 7, 2020, because of questions about the accuracy and adequacy of information in the marketplace about DECN. ¶ 64. On this news, adverse information began leaking to the market, and was fully disclosed with the release of the DOJ Indictment and the SEC Complaint on December 17, 2020. As a result of this disclosure, Decision Diagnostics' common share price fell $0.0735 per share, or 65.3%, from $0.1125 per share on December 17, to close at $0.039 on December 18, 2020. ¶ 10. Had Plaintiffs known the truth, they would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid. ¶ 111. At the time of the purchases and/or acquisitions by Plaintiffs, the true value of Decision Diagnostics stock was substantially lower than the prices paid by Plaintiffs. *Id.*

### b. Control Person Violation (Berman)

Section 20(a) of the Exchange Act creates joint and several liability for a "control person" who "'directly or indirectly, controls any person liable under any provision of [the Exchange Act] or any rule or regulation thereunder ... to the same extent as such controlled person to any person to whom such controlled person[] is liable[.]'" *Kim v. Allakos Inc*., No. 20-CV-01720-JSW, 2022 WL 976974, at *9 (N.D. Cal. Mar. 31, 2022) (quoting 15 U.S.C. § 78t(a)).

PLAINTIFFS MEMORANDUM IN SUPPORT OF MOTION FOR DEFAULT JUDGMENT AGAINST
DEFENDANTS DECISION DIAGNOSTICS CORP. AND KEITH M. BERMAN

Berman possessed the power and authority to control the contents of Decision Diagnostics' press releases, and other market communications. ¶ 19. Because of his dominance over all aspects of Decision Diagnostics' operations and his access to the truth concealed from the public, Defendant Berman participated in the misrepresentations of Decision Diagnostics. ¶ 19. Thus, the Amended Complaint adequately pleads Defendant Berman is secondarily liable for the primary violations of Decision Diagnostics.

### 3. Amount at Stake and Seriousness of Defendants' Conduct

Turning to the fourth *Eitel* factor, "the court must consider the amount of money at stake in relation to the seriousness of Defendant's conduct." *PepsiCo*, 238 F. Supp. 2d at 1176. This factor favors entering the requested default judgment. Berman and Decision Diagnostics brazenly exploited the nationwide concern over the COVID-19 pandemic for personal gain, luring investors to buy DECN stock based on false statements of a fast, reliable and effective COVID-19 test that they knew they did not have.

The amount of money Plaintiffs are requesting is reasonable and is calculated mechanically and consistent with the statute and the Amended Complaint from each of their individual transactional losses. *See* O'Connell Decl. "The usual measure of damages for securities fraud claims under Rule 10b-5 is out-of-pocket loss." *Mao v. Merrill Lynch Pierce, Fenner & Smith, Inc.*, No. 17-cv-409-L(MDD), 2020 U.S. Dist. LEXIS 257637, at *10 (S.D. Cal. Feb. 26, 2020) (citation and quotation omitted). The method of calculations of Plaintiffs' losses are already in the record and was already accepted by the Court at the lead plaintiff stage as valid measures of the financial interest each had in this litigation. *See* ECF Nos. 16, 16-1, 16-3, and 25. Plaintiffs accordingly request Defendants to pay damages sustained by Plaintiffs by reason of the acts and transactions alleged and award Plaintiffs prejudgment and postjudgment interest.

17

#### 4.  Possibility of disputed facts

The fifth *Eitel* factor considers the possibility of a dispute as to any material facts in the case.  Upon entry of default, all well-pleaded facts in a complaint are taken as true, except those relating to damages.  *TeleVideo*, 826 F.2d at 917-18 (citations and quotations omitted).  As explained above, the allegations in the Amended Complaint establish that Defendants violated the federal securities laws, and if litigated, those allegations would be supported by substantial evidence.  *See, e.g., SEC v. Baccam*, No. ED CV 17-0172 SJO (SPx), 2017 WL 5952168, at *7 (C.D. Cal. June 14, 2017) (granting default judgment, where "the SEC filed a well-pleaded Complaint alleging facts sufficient to prevail on its claims" and it and the default motion were "unopposed.").  At any rate, Defendants have had extensive opportunities to dispute any facts alleged but have declined to do so.  Thus, this *Eitel* factor favors granting default judgment.

#### 5.  Possibility of excusable neglect

There is no possibility of excusable neglect here. Plaintiffs served Defendants with both the Initial and Amended Complaints.  *See* ECF No. 39, (Proof of Service of Summons and Initial Complaint); ECF No. 40 (Proof of Service of Amended Complaint).  They ensured that Defendants had actual knowledge of the action and negotiated with the counsel that claimed to represent Defendants, Stephen C. Mazzara and Ronald S. Herzog, who stipulated to a schedule to respond to the Amended Complaint.  *See* ECF No. 32.  Plaintiffs also served Defendants' counsel with copies of the Clerk's Default.  *See* ECF No. 44.  The defaulting Defendants nonetheless made no attempts and showed no interest in curing their default, which was entered nearly two months ago.  *See* ECF No. 42.  Because their actions preclude the defaulting Defendants from showing any possibility of excusable neglect, the sixth *Eitel* factor favors granting a default judgment.  *See*

PLAINTIFFS MEMORANDUM IN SUPPORT OF MOTION FOR DEFAULT JUDGMENT AGAINST
DEFENDANTS DECISION DIAGNOSTICS CORP. AND KEITH M. BERMAN

*Baccam*, 2017 WL 5952168, at \*8 ("The possibility of excusable neglect is remote where the defendant is provided proper notice of the pending suit, but does not contact the court or the plaintiff in any manner") (citing *Philip Morris USA, Inc.* 219 F.R.D. at 501).

### 6. Policy for deciding on the merits

While courts prefer to decide matters on the merits, the mere existence of Fed. R. Civ. P. 55(b) demonstrates that preference is not dispositive. *PepsiCo*, 238 F. Supp. 2d at 1177. Here, the "Defendant's failure to answer [the] Complaint makes a decision on the merits impractical, if not impossible." *Id*. Therefore, policy concerns do not preclude the entry of default judgment.

### C. Plaintiffs Are Entitled to the Relief They Seek

Fed. R. Civ. P. 54(c) allows only the amount prayed for in the complaint to be awarded to the plaintiff in a default judgment. In their Amended Complaint, the Plaintiffs seek an order requiring Defendants to pay damages sustained by Plaintiffs and prejudgment and postjudgment interest. Because the Plaintiffs have shown that default judgment against the defaulting Defendants is warranted, the Court should order the relief requested as set forth in the O'Connell Declaration.

Defendants should also be ordered to pay prejudgment and postjudgment interest. Prejudgment interest serves a "compensatory function, designed to make the injured party whole." *HsingChing Hsu v. Puma Biotechnology, Inc.*, No. SACV1500865AGSHKX, 2019 WL 4295285, at \*1 (C.D. Cal. Sept. 9, 2019). Prejudgment interest is designed to deprive the wrongdoer of the benefit of "what amounts to an interest free loan procured as a result of illegal activity." *SEC v. Moran*, 944 F. Supp. 286, 295 (S.D.N.Y. 1996). The factors the court uses in determining whether to award prejudgment interest include: (1) whether prejudgment interest is necessary to compensate the plaintiff fully for his or her

19

PLAINTIFFS MEMORANDUM IN SUPPORT OF MOTION FOR DEFAULT JUDGMENT AGAINST
DEFENDANTS DECISION DIAGNOSTICS CORP. AND KEITH M. BERMAN

injuries; (2) the degree of personal wrongdoing by the defendant; and (3) other fundamental considerations of fairness. *HsingChing Hsu,* 2019 WL 4295285, at *2.

Here, prejudgment interest is needed to fully compensate Plaintiffs for the injury as a result of Defendants' fraud—they have been deprived of their money since 2020 as they were damaged by the fraud; therefore the award of prejudgment interest will "right that wrong." *HsingChing Hsu,* 2019 WL 4295285, at *2. The degree of wrongdoing likewise supports an award of prejudgment interest: Defendants made over twenty false statements about the purported COVID-19 testing kit, and exploited investors during the pandemic by inducing them into investing in their non-viable, and non-existent product. Likewise, awarding prejudgment interest is "fundamentally fair" as, the "result is to make the victims of Defendants' fraud whole." *Id.* Accordingly, Plaintiffs request interest at the rate of the postjudgment interest rate, calculated from the date after the final corrective disclosure of the SEC and DOJ investigations, December 18, 2020 to the date of judgment. *See id.*

Plaintiffs are also statutorily entitled to postjudgment interest at the rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment. Plaintiffs request that the Court apply the rate sent by the Director of the Administrative Offices of the United States Courts to this Court pursuant to 28 U.S.C. § 1961(a).

## IV.   CONCLUSION

For the foregoing reasons, the Plaintiffs respectfully request that the Court grant their motion in its entirety.

Dated:  May 9, 2022                          Respectfully submitted,

20

POMERANTZ LLP

*/s/ Brian P. O'Connell*
Joshua B. Silverman (*pro hac vice*)
Brian P. O'Connell (SBN 314318)
Ten South La Salle Street, Suite 3505
Chicago, Illinois 60603
Telephone: (312) 881-4859
Facsimile: (312) 229-8811
E-mail: jbsilverman@pomlaw.com
boconnell@pomlaw.com

Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor
Los Angeles, California 90024
Telephone: (310) 405-7190
Facsimile: (917) 463-1044
jpafiti@pomlaw.com

BRONSTEIN, GEWIRTZ &
GROSSMAN, LLC
Peretz Bronstein
(*pro hac vice* application forthcoming)
60 East 42nd Street, Suite 4600
New York, New York 10165
Telephone: (212) 697-6484
Facsimile: (212) 697-7296
peretz@bgandg.com

*Attorneys for Plaintiffs*

21

PLAINTIFFS MEMORANDUM IN SUPPORT OF MOTION FOR DEFAULT JUDGMENT AGAINST
DEFENDANTS DECISION DIAGNOSTICS CORP. AND KEITH M. BERMAN

## CERTIFICATE OF SERVICE

I, Brian P. O'Connell, hereby declare under penalty of perjury as follows:

I am an associate attorney at Pomerantz LLP, counsel for Plaintiffs Anthony Sanchez and Thomas Tossavainen. My business address is Pomerantz LLP, Ten South La Salle Street, Suite 3505, Chicago, Illinois 60603.  I am over the age of eighteen, a citizen of the United States, and duly admitted to practice law in the State of California and before this Court.

On May 9, 2022, I filed the forgoing **PLAINTIFFS MEMORANDUM IN SUPPORT OF MOTION FOR DEFAULT JUDGMENT AGAINST DEFENDANTS DECISION DIAGNOSTICS CORP. AND KEITH M. BERMAN** for receipt electronically using the CM/ECF system, which sent notification of such filing to the following counsel of record:

| | |
|---|---|
| Jennifer Pafiti: | jpafiti@pomlaw.com |
| Joshua B. Silverman: | jbsilverman@pomlaw.com |
| Laurence M. Rosen: | lrosen@rosenlegal.com |

I also served this document on the following attorneys, Stephen C. Mazzara and Ronald S. Herzog, who have indicated to Plaintiffs that they represent Defendants Keith M. Berman and Decision Diagnostics Corp., and confirmed their representation by entering into a scheduling stipulation on behalf of Defendants on September 3, 2021.  *See* ECF No. 32.  Because Mr. Mazzara and Mr. Herzog are not listed as receiving ECF notifications of filings, on May 9, 2022, I served this document, via first-class mail, pursuant to Federal Rule of Civil Procedure 5(b) and Local Rule 5-3, upon these attorneys at their addresses below:

Stephen C. Mazzara:     PO Box 17220

22

PLAINTIFFS MEMORANDUM IN SUPPORT OF MOTION FOR DEFAULT JUDGMENT AGAINST
DEFENDANTS DECISION DIAGNOSTICS CORP. AND KEITH M. BERMAN

Los Angeles, CA 90017

smazzara@goldbergsegalla.com

Ronald S. Herzog:   PO Box 1020,
Buffalo, NY 14201

and

50 Main Street, Suite 425
White Plains, New York 10606-1901
rherzog@goldbergsegalla.com

Executed on May 9, 2022 in Chicago, Illinois:

*/s/ Brian P. O'Connell*

Brian P. O'Connell

23

PLAINTIFFS MEMORANDUM IN SUPPORT OF MOTION FOR DEFAULT JUDGMENT AGAINST
DEFENDANTS DECISION DIAGNOSTICS CORP. AND KEITH M. BERMAN