STEPHEN C. MAZZARA (SBN 251849)
    smazzara@goldbergsegalla.com
Goldberg Segalla LLP
777 S. Figueroa Street, Suite 2000
Los Angeles, CA 90017-5818
**Mailing Address:**
P.O. Box 17220
Los Angeles, CA 90017
Telephone:  213-415-7200
Facsimile:   213-415-7299

Attorneys for Defendants
DECISION DIAGNOSTICS CORP. and
KEITH M. BERMAN

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION – LOS ANGELES

| | |
|---|---|
| ANTHONY SANCHEZ, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>DECISION DIAGNOSTICS CORP.; and KEITH M. BERMAN;<br><br>Defendants. | Case No. 2:21-cv-00418-FWS-JPR<br>Judge:   Hon. Fred W. Slaughter<br><br>**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO MOTION FOR DEFAULT JUDGMENT** |

Defendants DECISION DIAGNOSTICS CORP. and KEITH M. BERMAN (collectively, the "Defendants") respectfully submit this Memorandum of Law in opposition to Plaintiffs' Motion for a default judgment and a monetary award in favor of plaintiffs Anthony Sanchez and Thomas Tossavainen in their individual capacities now that Plaintiffs have determined not to proceed as a class action. For the reasons set forth here and in the accompanying affirmation of Ronald S. Herzog, dated June 21, 2022 Plaintiffs' motion should be denied.  In the alternative, any judgment in Plaintiffs' favor should be limited, and their legally insufficient damages claims should be denied.

**PRELIMINARY STATEMENT**

The First Amended Complaint for Violations of the Federal Securities Laws purports to confer subject matter jurisdiction under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §78(j)(b) and 78 t(a)) and Rule 10-b5 promulgated thereunder. (First Amended Complaint ¶ 12). This is confirmed by Plaintiffs' Memorandum of Law in Support of Motion for Default Judgment (at page 8). As the description of what was originally filed as a putative class action makes clear, this action alleges violations of the Federal Securities Laws. No state law claims of any type have been asserted.

As Plaintiffs' own summary of their respective trading history in the common stock of Decision Diagnostics demonstrates, all of plaintiff Tossavainen's alleged damages, as well as a significant portion of plaintiff Sanchez's claimed damages, are so-called "holder" claims; i.e., legally deficient damages that Plaintiffs are seeking based on their decision not to sell their holdings in Decision Diagnostics over a period of several months, despite sufficient trading volume that easily would have permitted them to do so. Plaintiffs have not alleged any specific misrepresentation that caused them to retain their holdings. Since no such allegations were contained in either the SEC complaint against the Defendants or the DOJ superseding indictment against Mr. Berman which form the basis of this action, it hardly comes as a surprise that they are absent from the First Amended Complaint.

Finally to the extent Sanchez is not pursuing a "holder" claim, his remaining claim is based on securities he purchased after the SEC had publicly warned investors that they could not rely on the very information disseminated by Decision Diagnostics through press releases that forms the gravamen of this action. This clearly negates the requirement of reasonable reliance by Mr. Sanchez.

**I. PLAINTIFFS' CLAIMS BASED ON SECURITIES PURCHASED AFTER THE SEC HAD HALTED TRADING SHOULD BE DENIED**

Contrary to Plaintiffs' assertion, their alleged damages are not "readily

established" (Plaintiffs' Memo of Law, page 8) nor "mechanically calculable." *Id.* Plaintiffs have simply taken the gross purchase price for the tens of thousands of shares of Decision Diagnostics' common stock purchased in 2020, regardless of date, and deducted the proceeds of those shares they chose to sell in order to come up with their "damages".

For obvious reasons Plaintiffs have lumped together all their purchases, including the repeated purchases made after the SEC's explicit April 23, 2020 warning to public investors and others not to rely on any historic or future information provided by Decision Diagnostics. (Herzog Aff. **Exhibit E**). <u>All</u> of Mr. Tossavainen's and 60% of Mr. Sanchez's purchases were made <u>after</u> the announcement, and preclude any claim of reasonable reliance on alleged misinformation being disseminated by the Defendants.

"Investors can recover damages in a private securities fraud action only if they prove that they relied on the defendants' misrepresentation in deciding to buy or sell a company's stock." *Halliburton Co. v. Erica P. John Fund, Inc.,* 573 U.S. 258, 263 (2014). Such reliance must, of course, be reasonable. Plaintiffs' conclusory reliance on the "fraud-on-the-market" theory or the presumptions associated with omissions enunciated in *Affiliated Ute Citizens of the State of Utah v. United States,* 406 U.S. 128 (1972) is both legally and factually insufficient.

The SEC trading suspension and warning against any reliance on any statements that had been issued by or which would in the future be issued by Decision Diagnostics rebutted any perspective fraud on the market presumption as a matter of law. *Semeranko v. Cendant Corp.,* 223 F.3d 165, 181 (3rd Cir. 2000) (holding on motion to dismiss that the company's announcement warning investors to not rely on prior financial statements and auditor's report together with the immediate decline in stock price made any future reliance on prior financial statements or audit reports unreasonable as a matter of law). Here, of course, the stark warning came not from the company, but from the regulator of financial markets, the SEC. It was, if

anything, therefore entitled to even greater deference. *Alaska Electrical Pension Fund v. Pharmacia Corp.,* 2007 U.S. Dist. LEXIS 5410, *3-4 (D.N.J. Jan. 25, 2007) (class period ended on date FDA released negative report). This "curative" information "retracts or dispels the alleged misinformation, or puts the investor on inquiry notice of the alleged fraud, making further reliance. . . unreasonable." *Id.*

Predictably, the market reacted dramatically and immediately to the SEC's trading suspension and blunt warnings. Decision Diagnostics stock sustained a statistically significant decrease of over $0.10 per share to close at 0.172 when trading resumed on May 8, 2020 (Herzog Aff., **Exhibit F**), after having traded as low as 0.05 that day. The May 8, 2020 closing price represented a 37.5% decline from the closing price of 0.275 on April 23, 2020, the last trading day prior to the suspension. Despite this clear regulatory warning, and substantial market reaction, in the following weeks and months Mr. Tossavainen commenced and Mr. Sanchez resumed their speculative purchases. Their transparent attempt to claim "victim status" for litigative purposes should be denied, particularly given that the "market reacted immediately" (with a more than 1/3 decrease) in the stock price. *Hayes v. MagnaChip Semiconductor Corp.,* 2016 U.S. Dist. LEXIS 177787 at *26 (Dec. 22, 2016).

## II. PLAINTIFFS' CLAIMS BASED ON SECURITIES NOT SOLD DURING THE CLASS PERIOD SHOULD BE REJECTED

As demonstrated in Plaintiffs' purported loss reports, on select dates between July 8 and September 23, 2020 Mr. Tossavainen sold 225,000 shares of Decision Diagnostics he had purchased starting on May 21, 2020. On the shares he elected to sell, he generated a profit of approximately $10,775, acts, or roughly 18% (Herzog Aff., ¶ 12). Plaintiffs' own document demonstrates that his purported "damages" of $156,138 are based on the nearly 80% of his Decision Diagnostics' stock Mr. Tossavainen chose not to sell at any time, despite ample opportunity to do so. Instead, after his final sale on September 23, 2020 of a modest percentage of his holdings,

Mr. Tossavainen elected to purchase 440,000 additional shares. This included 200,000 shares he purchased on November 9, 2020, months after the last of the allegedly false press releases were issued. The fact that Decision Diagnostics' shares declined during the period Mr. Tossavainen elected to hold them does not provide a basis for a claim for damages under the Federal Securities Laws.

The Supreme Court has repeatedly recognized that there is no "holder" claim under the Federal Securities Laws. *See, Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 731-732 (1975) (holding that only purchasers or sellers have standing to bring a 10-(b)5 claim, and barring claims of those who hold and fail to sell shares in reliance on misrepresentations or omissions). As stated in *Cartica Mgmt., LLC v. Corp. Banca, S.A.,* 50 F.Supp. 3d 477, 485 (S.D.N.Y. 2014):

> "The Court [in *Blue Chip Stamps]* recognized that the 'purchase and sale' requirement barred three classes of potential plaintiffs from bringing claims under section 10(b) or Rule 10b-5, including 'actual shareholders in the issuer who allege that they decided not to sell their shares because of an unduly rosy representation or a failure to disclose unfavorable material." (quoting *Blue Chip Stamps,* at 737-38).

More recently the Supreme Court specifically indicated that it was not revisiting the limitation of standing to purchasers and sellers of Securities previously announced in Blue Chip Stamps. *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit,* 541 U.S. 71, 88 n.13 (2006) ("W"]e do not here revisit the *Blue Chip Stamps* Court's understanding of the equities involved in limiting the availability of private remedies under federal law"). As a result of this bedrock principal, circuit courts have repeatedly held that there simply is no "holder" claim under the Federal Securities Laws. *See e.g. Amorosa v. AOL Time Warner, Inc.* 409 Fed. Appx. 412, 417 (2d Cir. 2011); ("[T]here is no "holder" claim under the Federal Securities Laws"); *United States v. Reifles,* 446 F.3d 65, 135 (2d Cir. 2006); Cf. *Podany v. Robertson Stephens, Inc.*, 318 F. Supp. 2d 146, 156 (S.D.N.Y. 2004) ("The securities laws are not intended as investor insurance every time an investment strategy turns out to have been mistaken.") (Citation omitted))."

Mr. Sanchez is in a somewhat different position than Mr. Tossavainen, because the former did in fact sell at a profit a portion of his Decision Diagnostics shares during the class period, thereby satisfying the Blue Chip's standing requirement for those shares. Like Mr. Tossavainen, the shares Mr. Sanchez elected to sell generated a profit. (Herzog Aff., ¶19). However, the damages Mr. Sanchez is seeking are also improper. Since he failed to sell during the class period, which Plaintiffs acknowledge ended on December 17, 2020, he is also seeking impermissible "holder" damages.

### III. DEFENDANT BERMAN'S LIABILITY AS A PURPORTED CONTROL PERSON

Berman's alleged control person liability is purely vicarious. To the extent Decision Diagnostics does not incur any primary liability, Berman cannot incur any control person liability. *ATSI Cummins, Inc. v. Shaar Funds, Ltd.,* 493 F.3d 87, 108 (2d Cir. 2007).

### IV. THE EITEL FACTORS

The relevant Eitel factors support Defendants' request. In addition to the strong public policy of adjudicating matters on the merits whenever possible, the Defendants had no realistic option but to prioritize their efforts against the DOJ, rather than get immersed in civil litigation based on exactly the same allegations. In this context it should be noted that the SEC action, which is also based on the same events, was immediately stayed (and remains stayed) in favor of the DOJ criminal proceedings.

It is also apparent that Defendants have a valid defense to the individual damage claims that have now been asserted. As noted, Mr. Tossavainen only started purchasing Decision Diagnostics stock after the trading suspension imposed by the SEC had terminated. Thereafter, despite the full opportunity to do so, he chose to sell only a small portion of his holdings. His "holder" claims are legally deficient, as the Supreme Court has repeatedly recognized. While Mr. Sanchez made some initial

purchases of Decision Diagnostics stock prior to the trading suspension, he also elected to sell only a modest part of his holdings, (for a profit) while significantly increasing the number of shares he owned in the months after the trading suspension had expired. Plaintiffs' damages and reasonable reliance claims, however asserted, are legally deficient.

Plaintiffs' claim of possible financial prejudice due to Mr. Berman's pending criminal charges, a fact Plaintiffs obviously knew before this matter was commenced, is unavailing. Plaintiffs also knew before filing suit that the SEC had not created a fund for alleged victims. Plaintiffs are not entitled to unwarranted damages because a prior filed related criminal proceeding has restricted Mr. Berman's ability to present a proper defense.

To the extent Plaintiffs are now really complaining about the lack of Officers and Directors' liability insurance this information was provided to counsel at the outset of this matter. (Herzog Aff., ¶ 4).

## V. **CONCLUSION**

For the foregoing reasons, Defendants should be permitted to file an Answer in the form annexed to the Herzog Affidavit as **Exhibit C.** Alternatively the court should limit any damages

Plaintiffs may recover to legally recognizable damages, which clearly do not include the "holder" claims that have been asserted by both individual plaintiffs.

Dated: June 21, 2022　　　　　　　　　　GOLDBERG SEGALLA LLP

By:　*/S/ Stephen C. Mazzara*
　　　STEPHEN C. MAZZARA

Attorneys for Defendants
DECISION DIAGNOSTICS
CORP. and KEITH M. BERMAN

GOLDBERG SEGALLA LLP
P.O. Box 17220
Los Angeles, CA 90017
213-415-7200

Case No. 2:21-cv-00418-FWS-JPR

ANTHONY SANCHEZ; et al. v. DECISION DIAGNOSTICS CORP.; et al.

### CERTIFICATE OF SERVICE

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am employed in the County of Los Angeles, State of California. I am over the age of eighteen years and not a party to the within action; my business address is 777 S. Figueroa Street, Suite 2000, Los Angeles, CA 90017.

On June 21, 2022, I served the following document(s) described as **DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO MOTION FOR DEFAULT JUDGMENT** on the interested parties in this action by placing true copies thereof enclosed in sealed envelopes addressed as follows:

### SEE ATTACHED SERVICE LIST

**[ X ]  BY COURT'S CM/ECF SYSTEM:** Pursuant to Local Rule, I electronically filed the document with the Clerk of the Court using the CM/ECF system, which sent notification of that filing to the persons listed above.

I declare under penalty of perjury under the United States of America and the State of California that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court whose direction the service was made.

Executed on June 21, 2022, at Los Angeles, California.

*/S/ Tom Cochran*

Tom Cochran

| | | |
|---|---|---|
| 1 | Brian O'Connell<br>POMERANTZ LLP<br>10 South LaSalle Street, Suite 3505<br>Chicago, IL 60603<br>Tel: 312-881-4859 / Fax: 312-229-8811<br>boconnell@pomlaw.com | *Attorneys for Plaintiff*<br>*ANTHONY SANCHEZ and*<br>*Movant THOMAS*<br>*TOSSAVAINEN* |
| 2 | Jennifer Pafiti<br>POMERANTZ LLP<br>1100 Glendon Avenue, 15th Floor<br>Los Angeles, CA 90024<br>Tel: 310-405-7190 / Fax: 917-463-1044<br>jpafiti@pomlaw.com | *Attorneys for Plaintiff*<br>*ANTHONY SANCHEZ and*<br>*Movant THOMAS*<br>*TOSSAVAINEN* |
| 3 | Joshua B. Silverman<br>POMERANTZ LLP<br>10 South LaSalle Street Suite 3505<br>Chicago, IL 60603<br>Tel: 312-377-1181 / Fax: 312-377-1184<br>jbsilverman@pomlaw.com | *Attorneys for Plaintiff*<br>*ANTHONY SANCHEZ and*<br>*Movant THOMAS*<br>*TOSSAVAINEN* |
| 4 | Laurence M Rosen<br>ROSEN LAW FIRM PA<br>355 South Grand Avenue Suite 2450<br>Los Angeles, CA 90071<br>Tel: 213-785-2610 / Fax: 213-226-4684<br>lrosen@rosenlegal.com | *Attorneys for Movant*<br>*EPHRAIM MASHKABOV* |