STEPHEN C. MAZZARA (SBN 251849)
    smazzara@goldbergsegalla.com
Goldberg Segalla LLP
777 S. Figueroa Street, Suite 2000
Los Angeles, CA 90017-5818
**Mailing Address:**
P.O. Box 17220
Los Angeles, CA 90017
Telephone:  213-415-7200
Facsimile:   213-415-7299

Attorneys for Defendants
DECISION DIAGNOSTICS CORP. and
KEITH M. BERMAN

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION – LOS ANGELES

| | |
|---|---|
| ANTHONY SANCHEZ, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>DECISION DIAGNOSTICS CORP.; and KEITH M. BERMAN;<br><br>Defendants. | Case No. 2:21-cv-00418-FWS-JPR<br>Judge:    Hon. Fred W. Slaughter<br><br>**AFFIRMATION IN SUPPORT OF MOTION TO VACATE DEFAULT JUDGMENT OR, IN THE ALTERNATIVE, TO DENY PLAINTIFFS' LEGALLY DEFICIENT DAMAGE CLAIMS** |

**RONALD S. HERZOG**, hereby affirms under penalties of perjury:

1.    I am an attorney duly licensed to practice in the State of New York and have represented Defendants Decision Diagnostics Corp. and Keith M. Berman (collectively, the "Defendants") throughout the various government proceedings which give rise to the instant action. I submit this affidavit in support of the Defendants' motion to vacate the default judgment previously entered by the Clerk of the Court and in opposition to the individual damage claims now being asserted by plaintiffs Anthony Sanchez and Thomas Tossavainen. In the alternative, Defendants respectfully request that Plaintiffs' legal deficient claims for damages be

GOLDBERG SEGALLA LLP
P.O. Box 17220
Los Angeles, CA  90017
213-415-7200

denied.

2.      This action was filed after actions arising out of the same transactions and occurrences were brought against the Defendants by the United States Securities and Exchange Commission in the United States District Court for the Southern District of New York in the matter styled *Securities and Exchange Commission v. Berman et al.*, 1:20-cv-10658 (LAP) and against Keith Berman by the United States Department of Justice in the United States District Court for the District of Columbia in the matter styled *United States of America v. Keith M. Berman, 1:20-cr-00278 (TNM).* A copy of the SEC's complaint and the superseding indictment filed by the Department of Justice are annexed hereto as (**Exhibits A and B**,) respectively.

3.      Following the all too familiar pattern in private litigation of this type, the allegations originally brought as a class action rely almost exclusively on Government lawsuits. This action, which as of recently is being pursued on an individual basis, as well as the two Government lawsuits identified in paragraph 2, are predicated on allegedly false and misleading statements made by the Defendants concerning a test product being developed by Decision Diagnostics to detect COVID-19. This is confirmed by the introductory paragraph of the First Amended Complaint, which acknowledges that the allegations of Defendants' actions, all made on information and belief, were based on filings and press releases issued by the SEC and DOJ. Significant portions of the purported factual assertions in the First Amended Complaint are the Defendants' press releases cited by the government, or quotations simply lifted from or purporting to summarize the SEC action or the DOJ's superseding indictment. (*See*, First Amended Complaint, ¶¶ 23, 24, 25, 59, 60, 65, 70, 71, 72, 73, 77, 80, 89, 90, and 91).

4.      Shortly after this action was commenced I communicated with plaintiffs' counsel to advise them of, among other things the Defendants' lack of meaningful financial resources and the absence of any Directors & Officers' liability insurance to respond to these allegations. After a significant delay, plaintiffs' counsel

2

AFFIRMATION IN SUPPORT OF MOTION TO VACATE DEFAULT JUDGMENT OR, IN THE ALTERNATIVE, TO DENY PLAINTIFFS' LEGALLY DEFICIENT DAMAGE CLAIMS

33721143.v1

GOLDBERG SEGALLA LLP
P.O. Box 17220
Los Angeles, CA  90017
213-415-7200

nevertheless decided to proceed with this action. At that time of my initial discussion, the trial of the DOJ criminal action was approaching (the SEC civil action having been stayed in favor of the DOJ case).  In view of the significant Fifth Amendment issues if Mr. Berman was required to proceed with this matter, or the legal consequences of invoking his Fifth Amendment rights, as well as the potential collateral estoppel effect of the DOJ action, which given speedy Trial Act requirements was expected to be resolved well before this matter, the decision was made not to prioritize the defense of this action.

5.      The trial of the DOJ action has been subject to numerous adjournments for a variety of factors, including the filing of the superseding indictment, COVID, individual health problems and scheduling issues. The trial is now scheduled to commence on December 9, 2022, in Washington, D.C.

6.      In view of the latest adjournment of the trial, and the Plaintiffs' recent determination to proceed with their individual claims, and particularly in view of their application for a substantial award of legally impermissible damages, the Defendants respectfully request that their default be vacated pursuant to Rule 55 of the Federal Rules of Civil Procedure, and that they be allowed to interpose an answer in the form attached hereto as (**Exhibit C**)**.** Alternatively, Defendants respectfully request that Plaintiffs' legally deficient damage claims be rejected.

7.      Plaintiffs have viable defenses to the individual damage claims that are now being asserted. Specifically, according to the schedule of purchases made, it is clear that both Plaintiffs made numerous purchases <u>after</u> the SEC's April 23, 2020 announcement concerning the interim suspension of trading in Decision Diagnostics Securities to take effect the following day. The SEC's April 23, 2020 Order of Suspension of Trading (**Exhibit D**) stated in pertinent part:

> It appears to the Securities and Exchange Commission that the public interest and the protection of investors require a suspension in the trading of the securities of Decision Diagnostics Corp. ("DECN" or "the Company") (CIK No. 0001133225) because of questions regarding the accuracy

GOLDBERG SEGALLA LLP
P.O. Box 17220
Los Angeles, CA  90017
213-415-7200

AFFIRMATION IN SUPPORT OF MOTION TO VACATE DEFAULT JUDGMENT OR, IN THE ALTERNATIVE, TO DENY PLAINTIFFS' LEGALLY DEFICIENT DAMAGE CLAIMS

33721143.v1

and adequacy of information in the marketplace since at least March 3, 2020.  Those questions relate to DECN's press releases, among other things, (i) claiming to have "technology perfected" to allow it to manufacture and sell a COVID-19 test kit that would provide results "in 15 seconds, based on a small finger prick blood sample," and (ii) issuing sales forecasts that up to 525 million COVID 19 test kits would be sold in the first year of production

8.    An accompanying press release was issued by the SEC on April 23, 2020 (**Exhibit E**). The press release cautioned prospective purchasers to carefully consider all current and any information that may subsequently be issued by Decision Diagnostics.

9.    As a result of the SEC Order and Press Release, no investor could be deemed to have reasonably relied on any information purportedly being misrepresented or omitted by the Defendants through press releases or otherwise prior to that date or thereafter.  However, the First Amended Complaint contains the standard presumption of reliance allegations on such information. (See FAC, ¶¶ 101-103).

10.    The analysis of the individual Plaintiffs' trading establishes submitted in support of their motion establishes that despite clear warning from the SEC about information disclosed and which may in the future be disclosed by Decision Diagnostics, both Plaintiffs nevertheless purchased DECN stock on a regular basis after the SEC's suspension of trading became effective on April 24, 2020.  As described below, all of plaintiff Tossavainen's purchases occurred months after the SEC had advised investors to carefully consider all prior and any information subsequently issued by Decision Diagnostics. Plaintiff Sanchez purchased a majority of his shares after the trading suspension.

### (i)    Thomas Tossavainen Transactions

11.    According to Plaintiffs' documents submitted in support of their motion for a default judgment, Plaintiff Tossavainen initially purchased 85,000 shares of Decision Diagnostics common stock on May 21, 2020, two weeks after the SEC's

GOLDBERG SEGALLA LLP
P.O. Box 17220
Los Angeles, CA  90017
213-415-7200

4

Order of Suspension of Trading had expired by its terms.  He sold the bulk of these shares on July 8, 2020 for a profit of over 50%.

12.     Mr. Tossavainen made frequent subsequent purchases of Decision Diagnostic's stock.  He sold shares on four separate dates in July and September, and by September 23, 2022 had sold 225,000 shares.  Mr. Tossavainen received $58,120 on the share he sold.  Utilizing the first in/first out method Plaintiffs have acknowledged, the shares he sold cost him $47,346, resulting in realized a net gain on the shares he elected to sell of approximately $10,775, or roughly an18% profit.  Mr. Tossavainen's last sale took place on September 23, 2020, when Decision Diagnostic's stock trading at approximately $0.2600. **(Exhibit F).**

13.     After Mr. Tossavainen's September 23rd sale, he decided to forego selling any additional shares.  Rather, starting on September 30, 2020 he resumed purchasing shares, and purchased an additional 440,000 shares, including 200,000 shares on November 9, 2020 at $0.12 per share, indicating he was averaging down.

14.     All the losses Mr. Tossavainen is now claiming are for the so-called end of the class shares he elected <u>not</u> to sell during what was previously described as the class period.  Given the trading volume of Decision Diagnostic, these shares could easily have been sold during this period. (**Exhibit F**). *See* First Amended Complaint, ¶ 96 ("Throughout the class period, Decision Diagnostic shares were actively traded on the OTC Pink Exchange <u>on heavy volume</u>. . . .") (emphasis added). Mr. Tossavainen cannot properly assert a "holder" claim for damages under the Federal Securities Laws.

### (ii)     <u>Anthony Sanchez Transactions</u>

15.     According to Plaintiffs' trading records, Plaintiff Sanchez began purchasing shares of Decision Diagnostics on March 18, 2020.  Between March 18th and March 31, 2020, he purchased a total of 519,940 shares over five separate dates.

16.     On April 17th and 20th, 2020, Sanchez purchased an additional 90,000 shares of Decision Diagnostics, bringing to 609,940 the number of shares he

GOLDBERG SEGALLA LLP
P.O. Box 17220
Los Angeles, CA  90017
213-415-7200

5

33721143.v1

purchased prior to the SEC trading suspension effective April 24, 2020.

17.     On May 11, 2020, four days <u>after</u> the Order of Suspension of Trading expired by its term, Sanchez resumed purchasing Decision Diagnostics stock.  In May, Mr. Sanchez purchased an additional 113,100 shares, before acquiring an additional 750,000 shares on July 9, 2020 and finally 50,000 more shares on October 2, 2020. In total, 913,100 of the 1,523,100 shares of Decision Diagnostics stock Mr. Sanchez purchased, or almost exactly 60%, were purchased after the trading suspension had ended.

18.     On May 27, 2020, approximately three weeks after the trading suspension had expired, Mr. Sanchez sold 723,700 shares of stock, including the 609,940 shares he had purchased prior to the trading suspension. Mr. Sanchez did not sell any additional shares during the purported class period covering the alleged fraud, March 3, 2020 through December 17, 2020 (First Amended Complaint, ¶1).

19.     Based on the information obtained from Plaintiffs' trading records, the 609,940 shares of Decision Diagnostics Mr. Sanchez purchased prior to the trading suspension were acquired at an aggregate cost of $79,340.  They were sold for approximately $107,500, a profit of $28,000, or nearly thirty-five (35%) percent.

20.     On December 18, 2020, a day after the expiration of the class period, and four months after the last allegedly false press release (First Amended Complaint, ¶83), Mr. Sanchez sold 505,383 shares of Decision Diagnostics.  Later in December he sold his remaining 294,617 shares, although his actual sales price has not been provided – but instead what has been represented as the average closing price from the day after the Class Period to the date of sale.

21.     Mr. Sanchez realized a profit on the only shares he elected to sell.  Like Mr. Tossavainen, Mr. Sanchez cannot properly assert a "holder claim" for damages under the Federal Securities Laws for shares he elected to retain throughout the Class Period.

/ / /

GOLDBERG SEGALLA LLP
P.O. Box 17220
Los Angeles, CA  90017
213-415-7200

6

AFFIRMATION IN SUPPORT OF MOTION TO VACATE DEFAULT JUDGMENT OR, IN THE ALTERNATIVE, TO DENY PLAINTIFFS' LEGALLY DEFICIENT DAMAGE CLAIMS

33721143.v1

**WHEREFORE**, it is respectfully requested that the Defendants' default be vacated and that they be permitted to interpose the answer in the form annexed hereto as (**Exhibit C**,) in order to contest further Plaintiffs' claims for damages, or alternatively, that each Plaintiffs' legal deficient claim for damages be denied, together with such other and further relief as the Court deems proper.

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct.

Executed on June 21, 2022, at White Plains, New York.

___*/S/  Ronald S. Herzog*_____
RONALD S. HERZOG

GOLDBERG SEGALLA LLP
P.O. Box 17220
Los Angeles, CA  90017
213-415-7200

AFFIRMATION IN SUPPORT OF MOTION TO VACATE DEFAULT JUDGMENT OR, IN THE ALTERNATIVE, TO DENY PLAINTIFFS' LEGALLY DEFICIENT DAMAGE CLAIMS

33721143.v1

# EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, <br><br> Plaintiff, <br><br> -against- <br><br> KEITH BERMAN and DECISION DIAGNOSTICS CORP., <br><br> Defendants. | <u>COMPLAINT</u> <br><br> 20 Civ. 10658 (     ) <br><br> ECF CASE <br> JURY TRIAL DEMANDED |

Plaintiff Securities and Exchange Commission (the "Commission"), for its Complaint against Keith Berman ("Berman") and Decision Diagnostics Corp. ("DECN" or the "Company" and collectively, the "Defendants"), alleges as follows:

## SUMMARY OF THE ALLEGATIONS

1.      In the spring of 2020, Berman, the president and CEO of DECN, a biotechnology company, went on a publicity blitz to portray the Company as having created a working, break-through technology that could accurately test for Coronavirus disease 2019 ("Covid-19") using just a finger-prick of blood and provide results in less than a minute. DECN's share price and trading volume surged as investors piled into the stock. While Berman and DECN portrayed DECN's product as something that would change the landscape of the Covid-19 pandemic paralyzing the world, the truth was the Company did not have a test, only an idea that had not materialized into a product.

2.      From March 2020 to at least June 2020 (the "Relevant Period"), Berman made materially false and misleading public statements through DECN press releases and other statements about what he claimed was DECN's blood-testing kit that could accurately detect

-1-

Covid-19 and provide results in less than a minute. Berman also made materially false and misleading statements concerning DECN's efforts to obtain emergency use authorization ("EUA") from the U.S. Food and Drug Administration ("FDA"), the key regulatory approval DECN needed before it could sell a testing product in the United States.

3. In stark contrast to these representations, all DECN actually had at the time of Berman's statements was a theoretical concept that had not yet materialized into a product, and without a product Berman knew that DECN could not meet the FDA's emergency use authorization testing requirements. These misstatements led to surges in the price and trading volume of DECN.

4. DECN and Berman have directly or indirectly violated, and unless restrained and enjoined, will continue to violate, Section 10(b) and Rule 10b-5 of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78j(b) & 17 C.F.R. § 240.10b-5].

### DEFENDANTS

5. DECN is a Nevada corporation incorporated in 2001 and headquartered in California. DECN describes itself as a "prescription and non-prescription diagnostics and home testing products distributor" and the manufacturer of "glucose test strips" for diabetes testing.

6. Berman, age 67, is a resident of Westlake Village, California. Berman is DECN's sole director and has served as DECN's President since 2006 and its Chief Executive Officer since September 2017. From August 2006 through September 2017, Berman was DECN's Principal Executive Officer. Berman is not a medical doctor, does not have any formal training in medicine or virology, and prior to February 2020, had never conducted any research into using electrochemical impedance spectroscopy, the technology at issue in this case, to detect viruses. Berman previously stated: "I am responsible for [DECN's] Covid-19 products. I am also the

products Program Manager. I am responsible for communicating its design and function as well as managing its upcoming commerce. The scientists in Pennsylvania,...the engineers and clinical chemists in Korea, all take their direction from me."

<u>**JURISDICTION AND VENUE**</u>

7.      This Court has jurisdiction over this action pursuant to Sections 21(d), 21(e), and 27 of the Exchange Act. [15 U.S.C. §§ 78u(d), 78u(e), and 78aa].

8.      The Court has personal jurisdiction over the Defendants and venue is proper in the Southern District of New York because many of the acts and transactions constituting the violations alleged in this complaint occurred in the Southern District of New York. In particular, during the Relevant Period, Berman gave interviews regarding DECN's purported Covid-19 test, which were disseminated throughout the District, including an interview with a correspondent for a New York City television station that aired in this District. These interviews contained many of the same false and misleading statements that were made in DECN's press releases.

9.      Further, many stock purchases during the Relevant Period originated in the District. For example, in March 2020, nine of the market makers for DECN's stock were located in this District and at various points either actively quoted bids and asks for DECN stock, facilitated trading in DECN stock, or both. Finally, DECN's stock was at all relevant times quoted on the Manhattan-based OTC Link ATS whose parent company is OTC Markets Group Inc. ("OTC Markets"), and for each trade in DECN stock, necessary clearing services were processed through the Depository Trust Clearing Corporation's ("DTC") data center located in Manhattan, which thus was used to facilitate the actual exchange of stock for money between purchasers of DECN shares.

10.      The Defendants, directly and indirectly, have made use, in the United States, of the

means or instrumentalities of interstate commerce, the means or instruments of transportation or communication in interstate commerce, and/or the mails, in connection with the acts, practices, and courses of business set forth in this complaint.

## FACTS

**I.      DECN's Filing History with the SEC and Its Faltering Financial Situation**

11.     DECN has a class of securities in the form of common stock that trades on the over-the-counter ("OTC") market.  DECN's common stock is not registered with the Commission.

12.     In 2016, DECN filed a Form 15 suspending its duty to make filings with the Commission.  DECN submits financial statements to OTC Markets, but the financial statements are unaudited.

13.     At all times relevant to this Complaint, DECN's stock was a "penny stock" as defined by the Exchange Act.  DECN's stock traded at less than $5.00 per share and did not meet any of the exceptions to penny stock classification under Section 3(a)(51) and Rule 3a51-1 of the Exchange Act.

14.     As of April 21, 2020, DECN had approximately 13 market makers, and its common stock was eligible for the "piggy back" exception of the Exchange Act, Rule 15c2-11(f)(3).

15.     On April 23, 2020, the Commission issued an order suspending trading in DECN's stock from April 24, 2020 to May 7, 2020, because of questions regarding the accuracy and adequacy of information in the marketplace about DECN.

16.     DECN common shares are no longer continuously quoted on an interdealer quotation system.  Instead, unsolicited quotations are being published by brokers (on behalf of their customers) on OTC Link ATS.

17.     According to DECN's most recent annual financial statements for the fiscal year ended December 31, 2019, submitted to OTC Markets on March 30, 2020, DECN reported cash of approximately $50,000, total assets of approximately $5.1 million (the majority of which is the reported value of certain intellectual property), and revenues of approximately $528,000.

18.     Additionally, DECN reported total liabilities of approximately $2.9 million and an accumulated deficit of approximately $47.6 million since its inception.

19.     DECN's annual report for 2019, as well as prior quarterly reports, includes a going concern statement questioning whether it could continue as a financially solvent company.

## II.     DECN Seized Upon the Covid-19 Global Pandemic

20.     In early 2020, Covid-19 was tearing through Asia and Europe. By February, the virus started to spread rapidly throughout the United States. On March 11, 2020, the World Health Organization declared the Covid-19 outbreak a global pandemic.

21.     Berman has previously stated that in mid-February 2020, "I learned from a CNN news report of the outbreak of COVID-19 in Daegu, Korea (a/k/a Ground Zero), the location of DECN's diabetic test strip factory and research and development arm." Thereafter, Berman decided to have DECN attempt to develop a Covid-19 blood test. This was the first time DECN ever pursued a test to detect a virus. Until this point, DECN's primary business related to glucose testing for diabetes.

## III.     Berman Issued Multiple False and Misleading DECN Press Releases

22.     During the Relevant Period, Berman disseminated DECN's press releases to the public through an account he alone controlled with Accesswire, a global press release and newswire service. Berman was the primary, if not sole, drafter of DECN's press releases during the Relevant Period. Furthermore, Berman had final editorial control over the content of the press

releases and made the sole and ultimate decision to issue DECN's press releases. For each of the DECN press releases discussed below, Berman disseminated them by uploading them to Accesswire from his account with the understanding that, under the Service Agreement Berman signed as DECN's CEO, Accesswire would distribute the press releases to its North American lists and, more generally, make the press releases publicly accessible through Google, Yahoo, and other electronic services. In addition, all of these DECN press releases were posted to the OTC Markets website, *available at*: https://www.otcmarkets.com/stock/DECN/news, where financial information and disclosures related to the Company were also posted.

23.     Overall, DECN and Berman's press releases and other public statements falsely and misleadingly conveyed to the market that DECN had a Covid-19 testing kit, which Berman branded and marketed as "GenViro!." In truth, at the time these statements were made, Berman and DECN knew that DECN's manufacturer had not manufactured a single testing kit or prototype device capable of testing for the presence of Covid-19 in a blood sample. The Commission uses "testing kit" to describe DECN's alleged product, which did not actually exist in any form, and which Berman alternatively referred to as, among other things, the "screening test," "screening method," "test kit," "product," "Swift kit," "GenViro!," "device," and "professional use device."

24.     At the time of the Defendants' statements, DECN had an unproven and theoretical concept, but not a proven method for detecting Covid-19, let alone a physical Covid-19 testing kit. Accordingly, the Defendants' statements were false and misleading.

25.     Similarly, even though DECN had not built a Covid-19 testing kit, Berman made false and misleading statements about DECN's progress with the FDA towards obtaining EUA in press releases. Berman repeatedly claimed that DECN was close to completing the FDA's testing

-6-

requirements and planned to complete them. However, Berman knew that DECN was unlikely to meet the FDA's testing requirements.

26.     The Defendants also omitted material facts in the DECN press releases and other statements, thereby rendering such statements false and misleading.  For example, the Defendants touted the time it would take to obtain test results, the accuracy of the results, and, more generally, that DECN's Covid-19 testing kit worked.  The Defendants also repeatedly used images that purported to show DECN's Covid-19 testing kit.  However, the Defendants knew and failed to disclose that the Company had not made a physical product or prototype.  In addition, the images they used were not of an actual Covid-19 testing kit, but of an existing DECN blood-glucose meter and a mock-up of packaging for GenViro!.

27.     Taken together or separately, Defendants' statements misled the market because they created the false and misleading impression that the Company had a tangible and working Covid-19 testing kit, when it did not.

### A.     False and Misleading Statements Concerning the Existence of a Covid-19 Testing Kit

28.     On March 3, 2020, Berman issued a press release on behalf of DECN.  In the press release, Berman and DECN "in a break-through" "announce[d]" "the introduction of our new screening methodology for the Coronavirus," and declared "[o]ur product is timely, simple to use, cost effective and will be commercial ready in the summer of 2020."  DECN's press release also quoted Berman: "I want to say straight on that we have developed a Coronavirus screening method, not a cure or a vaccine for this virus..."

29.     These statements created the false and misleading impression that DECN had developed a Covid-19 testing kit when, in fact, the Company had not developed anything at that point.  As of March 3, 2020, the Company had not even chosen a design for its testing kit; and,

Case 1:20-cv-10658   Document 1   Filed 12/17/20   Page 8 of 21

just one day prior, a paid scientist for DECN, whom Berman described as his "primary consultant" (the "Science Consultant"), emailed Berman and expressed doubt about DECN's ability to test for Covid-19 using the technology Berman discussed in the March 3 press release.

30. Over the next several weeks, Berman continued to issue DECN press releases, each of which falsely and misleadingly conveyed that the Company had developed a tangible Covid-19 testing kit. In truth, during the entirety of the period in which Berman disseminated the materially false and misleading press releases containing the statements below, he knew that the Company had not manufactured a prototype or any tangible testing kit that could identify Covid-19 using a blood sample, and he did not know if DECN's testing concept would work:

| Press Release Date | Statements |
|---|---|
| March 4, 2020 | Mr. Berman concluded, "I again want to reiterate that the development of our Coronavirus screening method is not a cure or a vaccine for this virus." |
| March 11, 2020 | Today, in the third discussion of our break-through test for the coronavirus (COVID19), we present the Coronavirus test kit and the Phase 1 unit forecast. The introduction of our new screening methodology for the Coronavirus (Covid19) will provide a timely, simple to use and cost effective solution for the screening of the frightening COVID19 virus. |
| March 16, 2020 | Today, DECN announces in this first of four releases expected in the next 14 days, further details of our revolutionary Coronavirus (Covid19) screening test GenViro!™. |
| March 16, 2020 | Keith Berman, CEO of DECN commented, "We plan a total of three additional releases in the coming days, the first new release discussing the product itself and why it is so special, the second release will discuss a roll-out plan, and the third release will summarize everything we have discussed to date, and talk about a second product we are working on, making use of the same technology, that is uber precise and destined to find its way into hospitals."<br><br>…<br><br>Mr. Berman concluded, "I will say again, that we have developed a Coronavirus screening method, not a cure or a vaccine for this virus." |

| | |
|---|---|
| March 17, 2020 | Today, in this second of four updates about our GenViro™ "Swift" kit for the testing of COVID-19, we will focus on our expected roll-out. We are happy to inform interested parties that we have raised our 12-month forecast to 525 million kits.<br><br>…<br><br>Mr. Berman concluded, "As you might imagine with a product announcement of such importance, we have been contacted by a number of potential partners for our kit. To date we have discussed our GenViro™ product with a big box pharmacy chain, a master medical products distribution company, a large commercial lab, and a home health organization. All of these entities want the kits and we intend to write their business." |
| March 25, 2020 | Keith Berman, CEO of DECN commented, "When we began exploring available testing methods for the Covid-19 virus, our goals were straight forward. Provide an easy to use, reliable, inexpensive test kit, designed for immediate use at the point of care, and eventually for at-home use. We accomplished these goals with our GenViro! Swift kit." |
| April 6, 2020 | Keith Berman, CEO of Decision Diagnostics commented, "…I have always believed that our impedance based core technology, first used as a critical part of our GenUltimate TBG product in the fall of 2019, was an adjustable crescent wrench type tool with many and varied possible applications. The first result of our hard work is the Covid-19 Swift kit that will be administered by professional health responders. |

31.   On April 7, 2020, Berman issued another DECN press release, quoting Berman: "Mr. Berman continued, '…Today our partners began ordering these components to begin build, assembly and bench testing for the post-prototype version of GenViro!™, Point of Care kit.'" Berman's statement was once again false and misleading because he claimed that DECN was ordering components to build a "post-prototype" version of GenViro!, thereby creating the false impression that DECN had built a prototype of its Covid-19 testing kit, which it had not. In fact, Berman subsequently admitted in a sworn affidavit: "The fact that DECN did not have any test kits (or prototypes) available [on or before April 7, 2020] is hardly remarkable; in fact, any assertion to the contrary would correctly be deemed to lack credibility."

**B.** **False and Misleading Statements Concerning Efficacy and Features of DECN's Covid-19 Testing Kit**

32. Relatedly, the Defendants created a materially false and misleading impression about the existence of a Covid-19 testing kit through claims about the efficacy and features of a testing kit they had not yet made or tested. For example, on March 4, 2020, Berman issued a DECN press release describing DECN's Covid-19 testing kit: "This innovative, precise and cost effective product is timely, simple to use, and most importantly will be commercial ready in the late summer of 2020." Berman, through a quote in the DECN press release, went on to describe a purported feature of DECN's Covid-19 testing kit: "...That is not to infer that unexpected clever and useful features are not built into our Coronavirus screening solution. For example, not only will the screening device provide the expected NEGATIVE or POSITIVE result (answer), but with each result provided, the answer will be accompanied by a probability statistic that will allow the user to determine the probability that the POSITIVE or NEGATIVE reported by the system may be a false rendering -- a false POSITIVE or a false NEGATIVE."

33. However, the Defendants failed to disclose that, at the time of the statements, DECN had not made a prototype or other physical device and therefore had not confirmed—and could not have confirmed—the testing kit's ability to identify COVID-19 at all, let alone its accuracy, timeliness, or other device features. DECN still lacked a prototype or other physical Covid-19 testing kit when Berman disseminated additional false and misleading DECN press releases containing the statements below:

-10-

| Press Release Date | Statements |
|---|---|
| March 18, 2020 | Today, DECN announces that the company is revising strategies (and forecasts) for its GenViro!™ Covid-19 test kit, a test kit that provides a coronavirus result in less than a minute, at the point of case. |
| March 23, 2020 | Keith Berman, CEO of DECN commented, "…GenViro! provides results in 15 seconds, based on a small finger prick blood sample. The method is safe, effective, and its biggest benefit to the healthcare system is that the device can be used to screen out the 97% or 98% of those tested that are negative for COVID-19. Our method is quicker, provides the desired result, is much cheaper, and effective." |
| April 6, 2020 | Keith Berman, CEO of Decision Diagnostics commented, …<br><br>"Our Swift kit will take a small amount of time to administer to a patient by a professional, such as poking a patient's finger-tip to achieve a drop of blood. Results will be available in about 15 seconds."<br><br>…<br><br>Mr. Berman continued, "…If April 3 is the date where we drove our product stake into the ground, then the new product was conceived, designed and readied for FDA EUA review in approximately 45 days. Our method is unique, minimally invasive, doesn't require a painful nose swab, and true to its trade name – Swift." |
| April 21, 2020 | The DECN GenViro! kit does not employ a nose swab, rather it receives its small blood sample through a finger prick, is self-contained and disposable, does not require a hospital or clinical lab based instrument for analysis, and it only takes 15 seconds, a minute fraction of the nose swab tests. |

34.     DECN not only had failed to produce a prototype, or any COVID-19 testing kit at the time Berman made the above statements, but Berman also was repeatedly advised that the Company's concept for a COVID-19 testing kit, which relied upon a blood sample, would not work as described in DECN's press releases. Berman also knew that the statements were false and misleading because he had not determined whether his Covid-19 testing concept would work at all. For example, on March 21, 2020, Berman received an email from an advisor and former officer of DECN warning that Berman's proposed method for detecting Covid-19 in small blood

-11-

Case 1:20-cv-10658   Document 1   Filed 12/17/20   Page 12 of 21

samples was "theoretical" and not a "proven, commercial method for detecting specific viruses" like Covid-19.

35. On March 22, 2020, staff for DECN's South Korean manufacturer informed Berman that: (1) the sample used for testing must be from nasal and/or throat swabs and not blood; and (2) even if a nasal and/or throat swab is used, DECN's proposed testing method may not be able to provide a positive result for Covid-19.

36. On April 2, 2020, staff of DECN's South Korean manufacturer emailed Berman and again expressed skepticism that Covid-19 could be detected in blood. Berman forwarded this email to his Science Consultant, who replied and warned Berman that he too had "not seen any data to support that Covid or Influenza virus can be detected in blood."

37. And, on April 5, 2020, the Science Consultant emailed Berman: "[The South Korean manufacturer] and I seem to be looking at this project with different glasses. They are ready to implement something that is manufacturable. For me it is more important to demonstrate that the product is viable."

38. Other examples of Berman's false and misleading statements come from a mid-April 2020 interview with a New York affiliate of CBS that aired on television and then was posted on the station's website on May 5, 2020. In the interview, Berman falsely and misleadingly described DECN's Covid-19 testing kit as a "game changer" because "it works" and "it works fast." At the time, DECN still had not manufactured a prototype or other device that could detect Covid-19 in a blood sample nor had DECN conducted any testing on Covid-19-infected blood samples to confirm that it "works."

-12-

### C.      False and Misleading Statements Concerning DECN's Testing, Validation, and Progress Towards FDA Emergency Use Authorization

39.      In other press releases, Berman and DECN made materially false and misleading statements about the existence of DECN's Covid-19 testing kit through claims about testing, validation, and progress towards FDA emergency use authorization.   Under the EUA mechanism, the FDA may allow the use of unapproved medical products like testing kits in an emergency to diagnose serious diseases, when certain statutory criteria have been met.  Statements Berman and DECN made about FDA emergency use authorization were material to the market, including to investors and potential distributors and customers, because they falsely and misleadingly conveyed that DECN had a Covid-19 testing kit that could receive FDA emergency use authorization for DECN to sell it in the United States and that DECN management had a reasonable basis in fact for expecting authorization.

40.      For example, on March 16, 2020, Berman issued a DECN press release in which the Defendants claimed:

> We are awaiting release of blood samples from previously infected people in Daegu, Korea, so that we can complete testing and make a final report to the U.S. FDA so that we may secure our Emergency Waiver.  In the meantime, all other requests made by the FDA will be met this week and next.

41.      This statement was materially false and misleading  for several reasons.  First, Berman knew that DECN and its South Korean manufacturer were not in a position to "complete testing" or make a final report to the FDA because the Science Consultant had not even finalized a design for the testing kit.  Second, Berman's statement created a false and misleading impression that at least some testing had been conducted on DECN's testing kit, when it had not.  Third, DECN did not have a testing kit and, therefore, could not have conducted testing prior to the statement and was not in a position to complete testing upon the release of infected blood samples.

-13-

42.     On March 18, 2020, Berman issued a DECN press release stating that "[the] company expects that it will receive a major boost from the most recent and thus far most optimistic FDA guidance for Coronavirus test kits" and that "[a] significant change to this [FDA] policy is that once validation testing for a product has been completed, the test can be distributed to customers, entities and users, with certain labeling and a summary of test results provided on the company website (and/or the packaging)." Berman then went on to claim:

> GenViro!™ has been validated at the company's R&D center in Daegu, Korea for the H5N1 virus and most recently the methodologically similar corona virus.

Berman also provided a quote that provided, in part: "While the company will still need to provide ample data and a full discussion of its unique technology in the coming days, the new FDA policy will provide a channel that will allow the company to manufacture test kits and put these kits into distribution almost immediately."

43.     The Defendants' March 18 statements were materially false and misleading because Berman knew that DECN's "R&D" center in Daegu, Korea did not validate GenViro! on H5N1 or Covid-19 because no testing kit existed on which it could have conducted any validation testing. At the time, DECN still had not completed its designs for component parts for its Covid-19 testing kit; its South Korean manufacturer had not conducted any tests using infected blood samples containing H5N1 or Covid-19; and, neither DECN nor its South Korean manufacturer had access to Covid-19-infected blood samples. For the same reasons, DECN was also not in a position to "almost immediately" distribute any testing kits.

44.     DECN filed an application with the FDA for emergency use authorization for a Covid-19 testing kit (the "EUA Application") on April 3, 2020. On April 6, 2020, Berman issued a DECN press release announcing DECN's filing of its EUA application.

-14-

45.     On April 7, 2020, Berman issued a DECN press release about its EUA Application. Berman, in describing DECN's receipt of an acknowledgment and device serial number from the FDA, referenced exchanges DECN's counsel had with the FDA and wrote "In one of those exchanges, the FDA provided Guidance for our final product testing." Berman then provided a quote for the press release:

> As early as Saturday April 4, it was clear that the FDA review staff was aware that our methodology was different than those slower and older methods that had received FDA EUAs, or were in review. Although the testing requested will be rigorous, it appears that testing will require 30 known Covid-19 positive samples and 30 known Covid-19 negative samples, all samples based on venous blood. The company is now looking to contract with a hospital or commercial laboratory to complete this testing.

46.     Subsequently, on April 23, 2020, Berman issued an additional DECN press release with an update on the "FDA Emergency Waiver (EUA) Progress." Berman referenced "two long conversations with FDA staff and management" noting that the second conversation occurred on April 14, 2020 "between our FDA counsel, DECN management and DECN technical and product development professionals." Berman continued: "We believe we have completed discussions and have come to an understanding with the FDA on all of the testing required to receive the EUA. We plan to engage a specialty reference laboratory to complete this testing in the next 10 days. Testing should take about a week."

47.     Berman's April 7 and April 23 statements concerning the DECN's EUA Application progress were materially false and misleading because they conveyed that DECN planned to begin the testing required by the FDA for approval of its EUA Application while omitting to disclose that DECN did not yet have a physical testing kit that could be tested. Berman also omitted to disclose that DECN had no intention of completing the required testing. Instead, to DECN's FDA counsel, Berman claimed that he would pursue a testing method that had not been

-15-

accepted by the FDA, and apply political pressure in an effort to obtain an exception to the FDA's testing requirements. For example on April 15, 2020, Berman emailed DECN's FDA counsel:

> We are still, for the most part being held to test standards we will most likely not be able to live up to especially the expected demand for live patients to test. That is the killer. So, because we cannot negotiate with them, we do the next best thing, we flood the airwaves with interviews and we use lobbyist type political attacks at the upper levels in the FDA.

48.     On April 20, 2020, Berman again emailed DECN's FDA counsel about the Company's inability to meet the FDA's testing requirements:

> Have we heard back from the FDA concerning the overall testing requirements/needs of our product (after our written summaries)? I want to make sure that we are able to use virus spike venous blood for our testing...If not we will use it anyway because it is impossible for a small company to have HazMat suit people to traipse around the USA seeing live (surviving) donors. If the FDA remains silent or if they tell us no, I will then turn to my political plan.

### D.     Materially Misleading Omissions Through Testing Kit Images

49.     Berman and DECN also created a materially false and misleading impression about the existence of a Covid-19 testing kit through the use of pictures and other images. In a March 11, 2020 DECN press release drafted and disseminated by Berman, the following image appeared with a box containing "GenViro!™ COVID-19 Screen" with the tagline "With the GenExpidient Universal Biosensor and 2 sensors to screen for the Coronavirus":



-16-

Case 2:21-cv-00418-WS-JPR  Document 55-1  Filed 06/21/22  Page 25 of 79  Page
Case 1:20-cv-10658  Document 1  Filed 12/17/20  Page 17 of 21
ID #:686

This image, which also appeared on DECN's website, was another example of the Defendants conveying that DECN had made a working Covid-19 testing kit when, in truth, it had not. The only disclaimer appearing with the image was fine print stating that the testing kit was "[n]ot yet available for sale in U.S.A. or Puerto Rico," but no disclosure that no testing kit had been made at all. The Defendants also knew and failed to disclose materials facts in connection with their use of these images, including the fact that (1) the pictured "Avantage!" meter was an existing DECN glucose-testing product, and not a Covid-19 testing device, and (2) the GenViro! box was the anticipated packaging and the Company had not completed its design of the "Biosensor" or the "test strips" depicted on the packaging.

50.     Similarly, during Berman's mid-April 2020 interview that aired on a New York affiliate of CBS, the station displayed images, obtained from DECN, that showed a meter with a test strip inserted and packaging, along with packaging similar to the one displayed in the March 11 DECN press release. As with the above statements, Berman knew that the Company had no prototype and had not conducted any testing to prove its methodology was successful in identifying the presence of Covid-19 in blood, and that image the Company provided to the television station was not a Covid-19 testing kit. Without any disclaimer, the image of the test strip inserted into a meter device DECN created and provided to the television station gave the false impression of a fully completed product. This was not true.

51.     The Defendants knew, or were reckless in not knowing, that their statements regarding DECN's Covid-19 testing kit were false and misleading.

## IV.     DECN's False and Misleading Press Releases and Statements Affected DECN's Stock Price and Volume

52.     DECN and Berman's false and misleading statements affected the price and trading volume of DECN's stock.

53.     During the three months prior to March 3, 2020, DECN's share price fluctuated between $0.0101 and $0.023 per share with an average daily trading volume of 237,701 shares.

54.     After DECN's March 3 Press Release its stock price and trading volume shot up, with the price rising by nearly 1,200% before the Commission's April 23, 2020 trading suspension. Since the suspension, the stock has remained well above its pre-announcement price on higher than usual trading volume. More specifically, from December 31, 2019 through March 2, 2020, DECN stock never traded over $0.023 a share. On March 2, 2020, the stock closed at $0.02. On March 3, 2020, the stock closed at $0.03. The stock reached a high of $0.50 on April 23, 2020, at which point the Defendants had disseminated fourteen press releases related to a DECN Covid-19 testing kit.

55.     Moreover, after DECN's press releases on April 6 and 7, publicizing DECN's EUA Application, investor interest in DECN's stock spiked. On April 6, following DECN's press release announcing its EUA Application, DECN's stock price doubled from its prior trading day closing price of $0.06 per share to a closing price of $0.12 per share, with trading volume increasing by 860% from its April 3 volume. Following DECN's April 7 press release about its EUA Application, DECN's stock price jumped to a closing price of approximately $0.20 cents per share, with trading volume up 1,700% from its April 3 volume.

## COUNT I

### Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Thereunder

### (as to Berman)

56.     Paragraph numbers 1 through 55 are re-alleged and incorporated herein by reference.

57.     By engaging in the conduct described above, Berman directly or indirectly, by use of means or instrumentalities of interstate commerce, or of the mails, or of a facility of a national

security exchange, with scienter: (a) employed devices, schemes, or artifices to defraud; (b) made untrue statements of material fact or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (c) engaged in acts, practices, or courses of business which operated or would operate as a fraud or deceit upon other persons, in connection with the purchase or sale of securities, in violation of Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5], and unless restrained and enjoined will continue to violate these provisions.

## COUNT II

### Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Thereunder

### (As to Decision Diagnostics Corp.)

58. Paragraph numbers 1 through 55 are re-alleged and incorporated herein by reference.

59. By engaging in the conduct described above, Decision Diagnostics Corp. directly or indirectly, by use of means or instrumentalities of interstate commerce, or of the mails, or of a facility of a national security exchange, with scienter: (a) employed devices, schemes, or artifices to defraud; (b) made untrue statements of material fact or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (c) engaged in acts, practices, or courses of business which operated or would operate as a fraud or deceit upon other persons, in connection with the purchase or sale of securities, in violation of Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5], and unless restrained and enjoined will continue to violate these provisions.

Case 1:20-cv-10658   Document 1   Filed 12/17/20   Page 20 of 21

# PRAYER FOR RELIEF

WHEREFORE, the Commission respectfully requests that the Court:

## I.

Permanently enjoin defendants Decision Diagnostics Corp. and Keith Berman from directly or indirectly violating the applicable provisions and rules of the federal securities laws as alleged and asserted above.

## II.

Enter an Order requiring defendants Decision Diagnostics Corp. and Keith Berman to pay civil money penalties pursuant to Section 21(d) of the Exchange Act [15 U.S.C. § 78u(d)].

## III.

Pursuant to Section 21(d)(2) of the Exchange Act [15 U.S.C. § 78u(d)(2)], prohibit defendant Keith Berman from acting as an officer or director of any issuer that has a class of securities registered pursuant to Section 12 of the Exchange Act [15 U.S.C. § 78*l*] or that is required to file reports pursuant to Section 15(d) of the Exchange Act [15 U.S.C. § 78o(d)].

## IV.

Enter an Order barring Berman from participating in an offering of penny stock, including engaging in activities with a broker, dealer, or issuer for purposes of issuing, trading, or inducing or attempting to induce the purchase or sale of any penny stock, pursuant to Section 21(d)(6) of the Exchange Act [15 U.S.C. § 78u(d)(6)].

## V.

Retain jurisdiction of this action in accordance with the principles of equity and the Federal Rules of Civil Procedure in order to implement and carry out the terms of all orders and decrees that may be entered, or to entertain any suitable application or motion for additional relief within the jurisdiction of this Court.

## VI.

Grant such other and further relief as this Court may determine to be just, equitable, and necessary.

-20-

Case 1:20-cv-10658   Document 1   Filed 12/17/20   Page 21 of 21

## JURY TRIAL DEMANDED

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, the Commission hereby demands trial by jury.

Dated: December 17, 2020                    Respectfully submitted,

                                            _____S/David Misler_____
                                            JAMES CARLSON
                                            DAVID MISLER*
                                            Attorneys for Plaintiff
                                            SECURITIES AND EXCHANGE
                                            COMMISSION
                                            100 F Street NE
                                            Washington, DC 20549
                                            Tel: (202) 551-3711 (Carlson)
                                            Tel: (202) 551-2210 (Misler)
                                            Email: mislerd@sec.gov
                                            Email: carlsonj@sec.gov

*Pending admission pro hac vice
Of counsel:
Ernesto Amparo
Jeff Leasure
Carlisle Perkins
100 F Street NE
Washington, DC 20549

# EXHIBIT B

Case 2:21-cv-00418-FWS-JPR   Document 55-1   Filed 06/21/22   Page 31 of 79   Page
ID #:692
Case 1:20-cr-00278-TNM   Document 29   Filed 05/11/21   Page 1 of 25

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL NO. 1:20-CR-00278-TNM |
| | ) | |
| KEITH BERMAN, | ) | |
| a/k/a "Matthew Steinmann," | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | 15 U.S.C. §§ 78j & 78ff; 17 C.F.R. |
| | ) | § 240.10b5; 18 U.S.C. §§ 1001, 1343, 1505, |
| | ) | & 2; 18 U.S.C. § 981(a)(1)(C); 28 |
| | ) | U.S.C. § 2461(c); 21 U.S.C. § 853(p). |
| | ) | |

### SUPERSEDING INDICTMENT

The Grand Jury charges that:

### General Allegations

At all times material to this Superseding Indictment, unless otherwise specified:

1.     Decision Diagnostics Corp. ("DECN") was a medical device company based in California. DECN was in the business of developing, manufacturing, and distributing glucose test strips and meters. DECN retained Vendor 1, a company based in the Republic of Korea, and Person 1, as technical advisors to assist with developing and manufacturing glucose test strips that used a process known as "impedance technology."

2.     DECN common stock traded over the counter ("OTC"), and shares were available for purchase and sale by the public. DECN securities were regulated by the U.S. Securities and Exchange Commission ("SEC"), which was an agency within the executive branch of the federal government based in Washington, D.C. DECN's shareholders lived throughout the United States and around the world, including in the District of Columbia.

3.    Defendant KEITH BERMAN served as DECN's Chief Executive Officer, Chief Financial Officer, Secretary, and Treasurer. BERMAN was also DECN's sole director. In these roles, BERMAN oversaw all aspects of DECN's business operations, and owed a fiduciary duty to DECN's shareholders.

4.    BERMAN frequently used press releases as a means of communicating with the public, including actual and potential investors in DECN. BERMAN participated in drafting and approved press releases issued on behalf of DECN. BERMAN transmitted DECN press releases to the public via the Internet, including to actual and potential investors in the District of Columbia, using means and instrumentalities of interstate commerce, including wires in interstate commerce.

5.    In or around late 2019, COVID-19 was first detected in Wuhan, China, and since that time has spread systematically across the world. As a result of the spread of COVID-19 to and within the United States, on or about January 31, 2020, the Secretary of Health and Human Services declared a national public health emergency, and, on or about March 13, 2020, the President of the United States issued Proclamation 9994 declaring a national emergency beginning on or about March 1, 2020. *See* 85 Fed. Reg. 15,337. During the first months of the pandemic, there was a shortage of adequate testing capability, spurring significant demand for quick and affordable testing solutions. In response, governments, companies, and other entities began searching for workable COVID-19 tests that could be deployed to test individuals and prevent the spread of the virus, making the manufacture and sales of a workable testing product a highly lucrative business opportunity. The U.S. Food and Drug Administration ("FDA"), which was the United States' primary regulator of medical devices, began considering applications for "emergency use authorization" ("EUA") to allow rapid expansion of testing.

2

## DECN's Precarious Financial Condition

6.      While serving as DECN's CEO and director, BERMAN repeatedly represented that he "has not received any form of cash compensation as a result of our limited cash flow." BERMAN made these representations to investors in periodic filings and disclosures made public on the OTC Markets Group Inc. ("OTC Markets") website and elsewhere.

7.      BERMAN's representations to the public about his own compensation were materially false and misleading. In recent years, BERMAN misappropriated hundreds of thousands of dollars in DECN funds for his own personal use and benefit.

8.      For example, in 2019 and 2020 alone, BERMAN used over $360,000 in DECN company funds to pay to chat live on webcams with individuals living in foreign countries. These funds were spent for personal entertainment and were not business-related expenses. BERMAN did not disclose these uses of company funds to investors.

9.      In or around early 2020, BERMAN and DECN were experiencing financial difficulties. On or about March 3, 2020, BERMAN stated in an email that "my personal situation is perilous." BERMAN further elaborated on DECN's poor financial condition, stating that "I am letting three more people go Friday."

10.     In or around March 2020, BERMAN discussed his plan to use the COVID-19 crisis as an opportunity to increase DECN's value and address DECN's financial issues. On or about March 3, 2020, BERMAN stated in an email that "This will work out. I did something yesterday that worked. I am doubling down today. If this continues to work money will not be a problem for a long time."

11.     On or about March 5, 2020, BERMAN wrote an email in which he stated, "We have a lot at stake here. I am not just trying to raise money to pay [Vendor 1], but we need a new story and this coronavirus through impedance is the story that will allow me to raise millions."

12.     On or about March 1, 2020, BERMAN described his plan to use press releases to "pump" DECN's stock price in communications on investorshangout.com ("Investors Hangout"), an online platform for discussing securities investing.   BERMAN adopted a fake persona, "Matthew Steinmann," which BERMAN used to pose as a close friend of BERMAN and to communicate with DECN shareholders.   Specifically, on or about March 1, 2020, using the "Matthew Steinmann" alias, BERMAN wrote a series of private messages to Person 2, a long-time DECN shareholder, on Investors Hangout:

> BERMAN:     KB is writing the press release for GenViro [DECN's purported COVID-19 testing mechanism] or whatever they plan to call it.
> He said it will be the hardest news release he ever wrote …
>
> Person 2:     Why the hardest PR ever?
>
> BERMAN:     KB … would have problems connecting random dots that a sizzle PR would need to do.
>
> Person 2:     Who will help him?
>
> BERMAN:     he will probably write it and then get a pro to recast it into penny pump
>
> Person 2:     And I thought KB doesn't like to pump?
>
> BERMAN:     Desperate times sometimes call for desperate measures.
>
> Person 2:     Yes they do.
>
> Person 2:     Timeline?
>
> BERMAN:     All in short order.  As short as possible.

4

## The Scheme to Defraud DECN Investors

### Purpose of the Scheme

13.    It was the purpose of the scheme for BERMAN to artificially increase and maintain the share price of DECN securities to enrich himself through access to additional corporate funds and compensation by: (a) making materially false, fraudulent, and misleading public statements related to DECN's purported COVID-19 test; (b) concealing the true facts about DECN's purported COVID-19 test; (c) diverting the proceeds of the scheme for his personal use and benefit; and (d) concealing the scheme from regulators, law enforcement, shareholders, and the investing public.

### Manner and Means of the Scheme to Defraud

14.    In furtherance of the scheme, BERMAN used the following manner and means, among others:

   a.    BERMAN made, and caused to be made, materially false, fraudulent, and misleading public statements about, among other subjects: (i) DECN's development of a test capable of detecting COVID-19 in a sample of blood; (ii) DECN's application to the FDA for EUA of a test capable of detecting COVID-19 in a sample of blood; (iii) DECN's business and operations; and (iv) BERMAN's use of DECN's corporate funds.

   b.    BERMAN authored, reviewed, approved, issued, and distributed to the public, via the Internet, press releases and periodic filings and disclosures containing materially false, fraudulent, and misleading statements about DECN, in order to artificially increase and maintain the share price of DECN securities;

c. BERMAN used aliases to post false, fraudulent, and misleading messages about DECN's business and operations on investor message boards, in order to artificially increase and maintain the share price of DECN securities;

d. BERMAN used aliases, including "plutonium" and "plutoniumimplosion," to post messages on investor message boards refuting allegations that BERMAN had made false, fraudulent, and misleading public statements about DECN's business and operations and BERMAN's use of corporate funds, and otherwise making lulling statements to actual and potential investors in DECN securities;

e. BERMAN made false statements to the SEC and federal law enforcement concealing his use of aliases to post messages on investor message boards;

f. BERMAN concealed and disguised his involvement in drafting a series of purportedly independent shareholder letters calling for the SEC to terminate its trading suspension of DECN common stock and end its investigation of BERMAN and DECN; and

g. BERMAN made false statements to federal law enforcement concealing his involvement in drafting the purportedly independent shareholder letters.

<u>Acts in Furtherance of the Scheme to Defraud</u>

*BERMAN's Materially False and Misleading Public Statements About the Viability of the COVID-19 Blood Test*

15. As the effects of the COVID-19 pandemic began to be felt in the United States and many patients faced difficulty obtaining access to COVID-19 testing, BERMAN used the COVID-19 pandemic as an opportunity to capitalize on the public health crisis to personally benefit himself and DECN.

16. On or about February 29, 2020, BERMAN emailed Vendor 1 to ask whether it was "theoretically possible" to use the impedance technology that DECN used in glucose tests in order

to test for COVID-19 in blood or saliva. Vendor 1 responded that while it could be "theoretically possible" to use impedance technology to detect a virus, Vendor 1 did not know whether impedance technology could be used to detect COVID-19 in blood or saliva.

17. On or about March 2, 2020, BERMAN emailed Person 1 and falsely stated that Vendor 1 believed it could use an impedance test to detect COVID-19 in blood. Person 1 expressed skepticism and asked BERMAN how Vendor 1 planned to develop such a test. BERMAN responded that it "[b]eats me how the Koreans plan to do this."

18. On or about March 3 and 4, 2020, BERMAN issued two press releases introducing DECN's "new screening methodology" for COVID-19, which BERMAN characterized as a "break-through." BERMAN, through the press releases, falsely stated that DECN had "developed a Coronavirus screening method," and that DECN had "the technology perfected which will take months off of the development schedule." BERMAN further falsely represented that the test provided a positive or negative result in 15 seconds based on a small finger prick blood sample, and that, in addition, the test provided a probability statistic that allows the user to determine the likelihood that the result is a false positive or a false negative. BERMAN also falsely claimed "government fast track and waivers [sic] begun" and that the test kits would be "commercial ready in summer 2020."

19. The statements in these press releases were materially false, fraudulent, and misleading, as BERMAN well knew. DECN did not at that time have a COVID-19 test, did not know whether BERMAN's purported impedance method would actually be able to detect COVID-19, had not validated the accuracy of the impedance method for detecting COVID-19, and did not have a product that could test for COVID-19 using a blood sample, much less one that would accurately test for COVID-19 in less than 15 seconds; indeed, BERMAN's technical advisors had expressed

7

doubt as to the viability of such a product. Further, DECN had taken no steps towards obtaining any government approvals or waivers for a COVID-19 test that would be required for a COVID-19 test kit to be "commercial ready in summer 2020."

20.     Throughout March 2020, BERMAN and DECN continued to issue materially false, fraudulent, and misleading press releases regarding the purported DECN COVID-19 blood test, and made false and fraudulent representations including that DECN was making significant progress toward bringing the product to market and would be ready to manufacture and sell hundreds of millions of units in the first year. BERMAN issued and caused to be issued nine press releases in or around March 2020, and filed the company's annual report and accompanying disclosures on or about March 30, 2020. During this period, Vendor 1 repeatedly informed BERMAN that his proposed impedance method for detecting COVID-19 was unlikely to be scientifically workable.

21.     On or about March 18, 2020, BERMAN issued a press release in which he falsely represented that Vendor 1 had successfully validated a test that used impedance technology to detect coronavirus in a blood sample. This press release was materially false, fraudulent, and misleading because Vendor 1 had not validated such a test.

22.     On or about March 22, 2020, Vendor 1 informed BERMAN that it had concluded it could not use impedance technology to test blood for COVID-19. Vendor 1 informed BERMAN that his proposed methodology was flawed because it could not actually detect COVID-19 in a blood sample, let alone distinguish COVID-19 from other viruses. BERMAN did not disclose these material facts to the market and DECN shareholders, or correct DECN's prior materially false, fraudulent, and misleading statements.

23.     On or about March 23, 2020, BERMAN issued a press release in which he falsely claimed that "DECN [] through its advanced development team in Korea, have finalized the configuration of the [] test strip that will go into production just as soon as the FDA grants emergency status to the DECN product."

24.     On or about April 2, 2020, Vendor 1 again emailed BERMAN to repeat its conclusion that it could not use impedance technology to test for COVID-19 from a blood sample because it could not actually detect COVID-19 in a blood sample, let alone distinguish COVID-19 from other viruses.  BERMAN responded that "We will respond to this next week AFTER FDA approval. That is all we are concerned about now. FDA approval so we can raise money."

*BERMAN's Materially False and Misleading Public Statements About DECN's EUA Application*

25.     Throughout 2020, BERMAN and DECN issued press releases and periodic disclosures that contained materially false, fraudulent, and misleading statements touting the progress of DECN's emergency use application to the FDA for use of DECN's purported COVID-19 test. BERMAN failed to disclose that DECN was unable and unwilling to conduct the type of clinical testing that the FDA required in order for companies to demonstrate that their COVID-19 test was sufficiently accurate in detecting COVID-19.

26.     The FDA informed DECN that it would not be able to complete the EUA application process without such clinical testing.  BERMAN concealed and disguised from the market and shareholders that DECN had not actually built a prototype for use in testing and lacked the necessary insurance to conduct scientifically reliable validation testing on human beings, as required by the FDA.  Without such insurance and such testing, DECN's purported COVID-19 blood test lacked the indicia of reliability that the FDA required before approving a medical device for emergency use by human beings.

27.     One example of BERMAN's materially false, fraudulent, and misleading statements about the EUA application occurred on or about March 16, 2020, when BERMAN issued a press release titled: "Emergency Waiver in Progress With U.S. FDA," in which BERMAN represented that DECN was "awaiting release of blood samples from previously infected people in Daegu, Korea, so that [DECN] can complete testing and make a final report to the U.S. FDA so that [DECN] may secure our Emergency Waiver. In the meantime, all other requests made by the FDA will be met this week and next." This statement was materially false, fraudulent, and misleading because DECN was not yet prepared to make a "final report" to the FDA, and had not yet submitted its initial EUA application.

28.     On or about April 3, 2020, DECN submitted its EUA application to the FDA. On or about April 4, 2020, the FDA sent a "Pre-EUA Acknowledgment," which was a standard form letter acknowledging that it had received the application, but that did not express a view as to whether the EUA was likely to be approved.

29.     On or about April 7, 2020, BERMAN issued a press release characterizing DECN's receipt of the FDA acknowledgement letter as a "grant by the FDA" and a "major milestone." BERMAN further stated that, in response to DECN's submission of its EUA application, "the FDA review staff [made clear it] was aware that [DECN's] methodology was different than those slower and older methods that had received FDA EUAs, or were in review," and provided DECN a copy of its guidance so that the company could complete its "final product testing."

30.     These statements were misleading. BERMAN knew, but failed to disclose, that DECN had not yet conducted any testing showing that the company's purported test was actually capable of detecting COVID-19 in a sample of blood, let alone capable of distinguishing COVID-19 from other viruses. Moreover, contrary to the representations BERMAN made in the April 7, 2020,

Case 2:21-cv-00418-FWS-JPR   Document 55-1   Filed 06/21/22   Page 41 of 79   Page
ID #:702
Case 1:20-cr-00278-TNM   Document 49   Filed 05/11/21   Page 11 of 25

press release, BERMAN knew that DECN was not prepared to conduct "final" product testing and that the FDA was not on the verge of approving the company's application for emergency use of its purported COVID-19 blood test.

31.   In the following weeks, the FDA told BERMAN that it would not approve the EUA unless DECN conducted clinical testing, which BERMAN knew DECN was unable to do because of a lack of financial resources and insurance coverage necessary for clinical testing.

32.   Since BERMAN knew that DECN could not meet the FDA's testing requirements, BERMAN hired consultants to assist him with pressuring the FDA to approve DECN's EUA application.  BERMAN, through his consultants, also began pressuring Members of Congress to engage the FDA on DECN's behalf, in the hope of influencing the FDA's EUA process.

33.   On or about April 21, 2020, the consultants circulated "talking points" which had been "approved for use by" BERMAN.  The talking points for Members of Congress stated BERMAN's view that that DECN's EUA application was originally "moth-balled" and then "stuck in limbo" due to FDA inaction.  BERMAN was therefore aware that FDA approval was not imminent, although BERMAN concealed this material fact from the market and shareholders.

34.   On or about April 23, 2020, BERMAN authorized a press release stating that DECN had "completed discussions and have come to an understanding with the FDA on all of the testing required to receive the EUA.  We plan to engage a specialty reference laboratory to complete this testing in the next 10 days. Testing should take about a week."

35.   These statements were materially false, fraudulent, and misleading because, as BERMAN well knew, DECN had not come to an understanding with the FDA on all of the testing required to receive the EUA; in truth, DECN was neither willing nor able to comply with the FDA's testing

Case 2:21-cv-00418-FWS-JPR   Document 55-1   Filed 06/21/22   Page 42 of 79   Page
ID #:703
Case 1:20-cr-00278-TNM   Document 19   Filed 05/11/21   Page 12 of 25

requirements; at that point, it had conducted no testing whatsoever to demonstrate that the impedance technology could accurately detect COVID-19 in blood.

*The SEC Investigation and BERMAN's Continued Misleading Conduct*

36.     Beginning in or around March 2020, the SEC initiated an investigation into DECN and BERMAN. This investigation constituted a pending proceeding through the remainder of 2020.

37.     On or about April 23, 2020, the SEC suspended trading in DECN stock due to questions regarding the accuracy of information in DECN's press releases regarding COVID-19. The SEC had an open investigation into DECN at this time. Between in or around early March 2020 and the trading suspension, DECN's stock price had risen by over 1500%, as a result of purchases and sales of DECN securities.

38.     In the following months, DECN still did not take any steps to develop a COVID-19 test, validate the accuracy of the impedance method for detecting COVID-19, conduct the clinical studies required by the FDA, or receive FDA authorization related to the DECN COVID-19 blood test. Nevertheless, BERMAN continued to issue materially false, fraudulent, and misleading statements to investors. For example, on or about July 10, 2020, BERMAN issued a press release representing that DECN's COVID-19 blood test was functional, "producing results at :10.5 seconds," and that DECN continued working toward completing the EUA application process by completing the FDA's testing requirements. BERMAN well knew that these statements were materially false, fraudulent, and misleading, since Person 1 had repeatedly expressed concerns to BERMAN that COVID-19 may not be present in blood at all or in detectable amounts, DECN's purported COVID-19 blood test had never been developed nor reliably tested, and BERMAN was unwilling and unable to take the steps necessary to conduct the type of clinical testing required by the FDA.

12

Case 2:21-cv-00418-FWS-JPR    Document 55-1    Filed 06/21/22    Page 43 of 79    Page
Case 1:20-cr-00278-TNM    Document 49    Filed 05/11/21    Page 13 of 25
ID #:704

*BERMAN's Use of a Fake Identity to "Pump" DECN Stock on Investor Message Boards*

39.    BERMAN frequently posted about DECN on publicly-available Internet websites and message board services used by investors and potential investors, and employed both public posting and private messaging to promote the stock.  He concealed his true identity as a DECN officer and director by using aliases and fake identities.

40.    For example, Investors Hub ("iHUB") and Investors Hangout were sites and message board services used by investors and potential investors in securities.  iHUB and Investors Hangout both offered a variety of online tools for investors to use when researching securities, including message boards, and often influenced investors' decisions to purchase or sell securities.   iHUB and Investors Hangout were widely used by OTC investors in DECN and other similar stocks.

41.    BERMAN created an alias, "plutoniumimplosion," for use on the iHUB message board for DECN.   BERMAN, posting under plutoniumimplosion, did not disclose his true identity or involvement with DECN; indeed, through the plutoniumimplosion alias, BERMAN denied that he was BERMAN in a public post on at least one occasion.  While using the alias plutoniumimplosion, BERMAN falsely claimed to be an independent shareholder who had owned DECN stock for nearly twenty years.   BERMAN also falsely claimed that he was an industry insider with years of experience working for medical device manufacturers.

42.    Similarly, BERMAN created an alias, "plutonium," for use on the Investors Hangout message board for DECN.  BERMAN, posting under plutonium, did not disclose his true identity or involvement with DECN; rather, BERMAN falsely represented that his name was "Matthew Steinmann" and that he was BERMAN's friend and an independent shareholder of DECN stock.

43.    Between on or about March 1, 2020, and on or about August 15, 2020, BERMAN posted over a thousand messages to the iHUB DECN message board, in order to promote DECN and pump the stock price higher.

44.    In a private message sent on or about March 10, 2020 via Investors Hangout using the alias "plutonium," BERMAN told Person 2 that BERMAN was working with a "legit IR pump icon."

45.    BERMAN's investor board messages also responded to investor concerns and doubts regarding the accuracy of DECN's public statements about its COVID-19 blood test.  For example, on or about March 12, 2020, an investor questioned whether anybody actually believed that DECN would be ready to bring to market and sell hundreds of millions of units in the first year.  BERMAN wrote (using his alias, plutoniumimplosion):

> I do. And my company has looked at this situation/opportunity and we believe that the first year worldwide demand for a screening product will be close to 3 billion kits. Eventually large pharma and copy cats will get into the market, or perhaps there are companies a little ahead of DECN. But by and large DECN is, by hook, crook or luck, is in the forefront no matter how loud the naysayers are.  But then again the 5-6 message board posters may be right and Mr. Berman will find himself in jail or prison.

46.    On or about March 25, 2020, after an investor questioned whether DECN could bring its product to market, BERMAN posted (using his alias, plutoniumimplosion):

> Not if my company manufactures them. We have excess factory capacity in Korea and Japan. And by the way, DECN CEO Berman knows us well and we do not at all think of him like posters … are trying to make us all believe. We know CEO Berman well and we have reviewed the product specifications and find them to be game changing.

47.    BERMAN continued to conceal and disguise his use of the iHUB message board to communicate with and influence investors.  On or about October 9, 2020, Berman provided sworn testimony to the SEC in Washington, D.C.  When asked under oath about his use of message boards, BERMAN falsely stated: "Yeah.  I've not been a part of …. Investors Hub Daily."  This false and

Case 2:21-cv-00418-FWS-JPR   Document 55-1   Filed 06/21/22   Page 45 of 79   Page
ID #:706
Case 1:20-cr-00278-TNM   Document 19   Filed 05/11/21   Page 15 of 25

misleading statement was part of an effort to corruptly influence, obstruct, and impede the SEC's investigation.

48.     On or about October 27, 2020, BERMAN falsely told federal law enforcement agents that BERMAN was not involved with the message boards, in order to conceal the fact of his false and misleading communications with actual and prospective DECN investors.

*BERMAN's Role in Creation of a Purported Shareholder Letter to Corruptly Influence, Obstruct and Impede the SEC's Investigation*

49.     On or about April 23, 2020, when the SEC announced it was suspending trading in DECN securities, among other things, the SEC cited questions about the accuracy of DECN's public statements about its COVID-19 blood test. Thereafter, BERMAN attempted to corruptly influence, obstruct, and impede the SEC's investigation into DECN, by engineering a false shareholder letter.

50.     BERMAN used his alias, plutoniumimplosion, to attempt to threaten and intimidate individuals who approached the SEC and other regulators regarding DECN. Using his alias, plutoniumimplosion, BERMAN stated that he "hope[d] [the list of people that complained to the SEC] have indemnification agreements with the SEC, and they better have been accurate when they listed their allegations." Using his alias, plutoniumimplosion, BERMAN also repeatedly warned about what he called "knock knock day," implying that the authorities would show up at the homes of the individuals who had complained about DECN and arrest them.

51.     On or about June 2, 2020, BERMAN emailed Vendor 1, stating: "my company cannot raise money based on GenViro news as long as the SEC is investigating us."

52.     In an attempt to impede and end the SEC's investigation and resume raising money, BERMAN enlisted Person 2 under false pretenses to write a "shareholder letter" to the SEC. Using the alias "plutonium," BERMAN falsely represented himself to Person 2 as "Matthew Steinmann," one of BERMAN's friends and an independent shareholder of DECN.

15

53.     On or about May 25, 2020, "Matthew Steinmann" sent a private message via Investors Hangout to Person 2, directing Person 2 to "Draft a letter to the SEC, the chairman and the lawyer on the suspension notice." Person 2 responded: "The mechanics of that are simple. What goes into the letter is more complicated. ... Point us in the right direction and we can do it no problem."

54.     Around this time, BERMAN, using his alias, plutonium, suggested to Person 2 to involve BERMAN in the drafting process and Person 2 agreed. From that point forward, Person 2 was misled to believe that Person 2 was working with both "Matthew Steinmann" and BERMAN to prepare the purported "shareholder letter" when, in reality, BERMAN was Matthew Steinmann.

55.     During this time, BERMAN played a significant role in developing, reviewing, and editing the purported shareholder letter – both as himself and using his false persona, "Matthew Steinmann." BERMAN provided information to Person 2 to include in the shareholder letter, outlined themes, reviewed drafts, and made extensive comments and line edits. BERMAN also instructed Person 2 about how, when, and to whom to send the shareholder letter. For example, "Matthew Steinmann" wrote to Person 2: "I will talk to KB about that ... not whether it is posted, but when[.] the shareholder letter should post just after the company posts its eat shit and die letter directly to Fredo."

56.     "Fredo" was a name BERMAN repeatedly used to refer to an SEC attorney who was involved in the DECN trading suspension, and refers to a character in the motion picture *The Godfather*.

57.     BERMAN also encouraged Person 2 to gather signatures from a certain number of shareholders before sending the letter to the SEC. BERMAN then used his alias "plutoniumimplosion" on iHUB to recruit shareholders to join the group and sign the purported "shareholder letter," writing: "There is a group of DECN shareholders assembling to put a

16

Case 2:21-cv-00418-FWS-JPR   Document 55-1   Filed 06/21/22   Page 47 of 79   Page
ID #:708
Case 1:20-cr-00278-TNM   Document 19   Filed 05/11/21   Page 17 of 25

shareholder spin on the goings on with the SEC. If you are interested in joining the group, write to: [Person 2's email]."

58.     The 19-page shareholder letter accused the SEC of unethical and inappropriate conduct against DECN. For example, the letter levied allegations of "bias and possibly collusion between the SEC investigators and rogue message board posters many of whom are also perhaps cyber criminals, who aim to destroy Decision Diagnostics Corp., and with that the chance to possibly curtail the spread of COVID-19 and return normalcy to all Americans." The shareholder letter further asserted that the SEC's actions between April and June 2020 "are damaging to humanity with respect to the creation, development and, we hope (as should you and every American), emergency use authorization of the GenViro! products to assist in the detection of the deadly Coronavirus." The shareholder letter also accused the SEC of using an "official [] purpose" as pretext to make submissions that were really intended "to pile on and to demean [] Mr. Berman." BERMAN signed the purported "shareholder letter" using the fake name "Matthew Steinmann."

59.     After the shareholder letter had been sent to the SEC, BERMAN proceeded to post on iHUB about this and other purported shareholder letters to the SEC. For example, on or about June 8, 2020, BERMAN posted, using his alias, plutoniumimplosion, that: "The rumor du jour is that DECN is going to post [on the OTC Markets website] the DECN Shareholder letter to the SEC. I understand names are named. The letter is long, complete and terrifying if you're certain people. It should make for good reading. I will comment on this letter after I have a chance to review it in detail." BERMAN further posted that "Berman had nothing to do with the letter. But I did, and so did almost 60 other shareholders. Knock knock day gets closer."

60.     BERMAN's goal was to impede the SEC proceeding and investigation. For example, on or about May 31, 2020, BERMAN, again using his alias, plutonium, wrote to Person 2, to outline

17

the strategy: "they are going to get [t]his 3 times. [Y]our letter, KB's letter when he turns over the FDA file later this coming week, and finally the DECN briefing in the Form 550 matter. All three will discuss the same topics, but as each is filed the rhetoric will grow. … They may initiate another suspension. That's why you have to reserve the right to file a whistle blower complaint because that will freeze everything."

61.    BERMAN discussed ways to intimidate the SEC and its staff. For example, on or about May 31, 2020, BERMAN, using his alias plutonium, sent a message to Person 2 in which he wrote: "KB told me today that he is going to hire a private investigator … to investigate Fredo."

62.    On or about June 13, 2020, BERMAN further posted on iHUB, using his alias, plutoniumimplosion: "You would be surprised how much weight that Shareholder Letter has carried. And I believe there will be another one that takes the May 20, 2020 Fredo [Last Name of SEC Staff Attorney] fantasy/hit job piece and brings Shareholder concerns up to the moment. I will consider it an honor to work on this 2nd Shareholder letter."

63.    These letters were intended to bring about the end of the SEC investigation and allow BERMAN to continue raising money using his false, fraudulent, and misleading statements about DECN's purported COVID-19 testing capability.

64.    On or about October 27, 2020, BERMAN falsely told federal law enforcement agents that neither BERMAN nor DECN had been involved with the shareholder letters, stating that "we had nothing to do with the shareholder letter."

65.    As a result of the fraudulent scheme detailed above, DECN investors lost millions of dollars by, among other things, purchasing DECN common stock at artificially inflated prices and selling their shares at a loss.

Case 2:21-cv-00418-FWS-JPR    Document 55-1    Filed 06/21/22    Page 50 of 79    Page
ID #:711
Case 1:20-cr-00278-TNM    Document 19    Filed 05/11/21    Page 20 of 25

## COUNT ONE

### (15 U.S.C. §§ 78j & 78ff, 17 C.F.R. § 240.10b5 – Securities Fraud)

66.    Paragraphs 1 through 65 of this Superseding Indictment are realleged and incorporated by reference as though fully set forth herein.

67.    From at least in or around February 2020 through in or around December 2020, in the District of Columbia and elsewhere, the defendant,

### KEITH BERMAN

willfully and knowingly, directly and indirectly, by the use of the means and instrumentalities of interstate commerce, the mails, and the facilities of national securities exchanges, in connection with the purchase and sale of securities, did use and employ manipulative and deceptive devices and contrivances, and aided and abetted others known and unknown to the grand jury, in violation of Title 15, United States Code, Sections 78j and 78ff, Title 17, Code of Federal Regulations, Sections 240.10b5, and Title 18, United States Code, Section 2, by: (a) employing devices, schemes and artifices to defraud; (b) making, and causing others to make, untrue statements of material facts and omitting to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and (c) engaging in acts, practices, and courses of business which operated and would operate as a fraud and deceit upon purchasers and sellers of DECN securities; to wit, BERMAN issued materially false and misleading public statements regarding DECN's COVID-19 testing capabilities.

All in violation of Title 15, United States Code, Sections 78j and 78ff, Title 17, Code of Federal Regulations, Section 240.10b-5, and Title 18, United States Code, Section 2.

Case 2:21-cv-00418-FWS-JPR   Document 55-1   Filed 06/21/22   Page 51 of 79   Page
ID #:712
Case 1:20-cr-00278-TNM   Document 19   Filed 05/11/21   Page 21 of 25

## COUNT TWO

## (18 U.S.C. §§ 1343 & 2 – Wire Fraud)

68.     Paragraphs 1 through 65 of this Superseding Indictment are realleged and incorporated by reference as though fully set forth herein.

69.     From at least in or around February 2020 through in or around December 2020, in the District of Columbia and elsewhere, the defendant,

### KEITH BERMAN

knowingly, and with the intent to defraud, having devised and intended to devise a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, did transmit and cause to be transmitted, by means of wire communication in interstate commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice.

### Purpose of the Scheme

70.     Paragraph 13 of this Superseding Indictment is realleged and incorporated by reference herein.

### Manner and Means of the Scheme to Defraud

71.     Paragraph 14 of this Superseding Indictment is realleged and incorporated by reference herein.

All in violation of Title 18, United States Code, Sections 1343 and 2.

## COUNT THREE

### (18 U.S.C. §§ 1505 & 2 – Obstruction of Proceedings)

72.    Paragraphs 1 through 65 of this Superseding Indictment are realleged and incorporated by reference as though fully set forth herein.

73.    From at least in or around March 2020 through in or around December 2020, in the District of Columbia and elsewhere, the defendant,

## KEITH BERMAN

did knowingly and corruptly influence, obstruct, impede, and endeavor to influence, obstruct, and impede the due and proper administration of the law under which any pending proceeding was being had before any department and agency of the United States, that is, a proceeding conducted by the Securities and Exchange Commission in relation to DECN.

All in violation of Title 18, United States Code, Sections 1505 and 2.

## COUNT FOUR
### (18 U.S.C. § 1001 – False Statements)

74.     Paragraphs 1 through 65 of the Indictment are re-alleged and incorporated by reference as though fully set forth herein.

75.     On or about October 9, 2020, in the District of Columbia and elsewhere, in a matter within the jurisdiction of the executive branch of the Government of the United States, the defendant,

## KEITH BERMAN

did knowingly and willfully make materially false, fictitious, and fraudulent statements and representations, to wit, in sworn testimony before the U.S. Securities and Exchange Commission, BERMAN falsely stated that he was not involved with posting on Investors Hub message boards.

All in violation of Title 18, United States Code, Sections 1001(a)(2) and 2.

Case 2:21-cv-00418-FWS-JPR   Document 55-1   Filed 06/21/22   Page 54 of 79   Page
ID #:715
Case 1:20-cr-00278-TNM   Document 19   Filed 05/11/21   Page 24 of 25

## FORFEITURE ALLEGATION

The Grand Jury further charges that:

76.    The allegations contained in paragraphs 1 through 75 of this Superseding Indictment are hereby realleged and incorporated by reference for the purpose of alleging forfeiture pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c).

77.    Pursuant to 18 U.S.C. § 981(a)(1)(C), and 28 U.S.C. § 2461(c), upon conviction of an offense in violation of Counts One, Two, or Three, as alleged in this Superseding Indictment, defendant,

### KEITH BERMAN,

shall forfeit to the United States of America any property, real or personal, which constitutes or is derived from proceeds traceable to the scheme to defraud. The property to be forfeited includes, but is not limited to, a money judgment in the amount of the total loss caused by the defendants' criminal conduct, as determined by the Court at sentencing.

78.    If any of the property described above, as a result of any act or omission of the defendants:

    a.   cannot be located upon the exercise of due diligence;

    b.   has been transferred or sold to, or deposited with, a third party;

    c.   has been placed beyond the jurisdiction of the court;

    d.   has been substantially diminished in value; or

    e.   has been commingled with other property which cannot be divided without difficulty,

24

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title

21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section

2461(c).

THIS IS A TRUE BILL.

_____

FOREPERSON

DANIEL S. KAHN
Acting Chief
Criminal Division, Fraud Section
United States Department of Justice

By: _____
CHRISTOPHER FENTON
Trial Attorney

JUSTIN WEITZ
Principal Assistant Chief
Criminal Division, Fraud Section
United States Department of Justice

Dated:        May 11, 2021

# EXHIBIT C

STEPHEN C. MAZZARA (SBN 251849)
    smazzara@goldbergsegalla.com
Goldberg Segalla LLP
777 S. Figueroa Street, Suite 2000
Los Angeles, CA 90017-5818
**Mailing Address:**
P.O. Box 17220
Los Angeles, CA 90017
Telephone:   213-415-7200
Facsimile:   213-415-7299

Attorneys for Defendants
DECISION DIAGNOSTICS CORP. and
KEITH M. BERMAN

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION – LOS ANGELES

| ANTHONY SANCHEZ, individually and on behalf of all others similarly situated, | Case No. 2:21-cv-00418-FWS-JPR |
|---|---|
| Plaintiffs, | Judge:    Hon. Fred W. Slaughter |
| | **[proposed]**<br>**ANSWER TO FIRST AMENDED COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** |
| v. | |
| DECISION DIAGNOSTICS CORP.; and KEITH M. BERMAN; | |
| Defendants. | |

Defendants Decision Diagnostics Corp. ("DECN") and Keith M. Berman (collectively "Defendants"), as and for their Answer to Plaintiffs' First Amended Complaint for Violations of the Federal Securities Laws (the "Complaint"), allege as follows:

## ANSWERING NATURE OF THE ACTION

1.   Denied.

2.   Admitted.

3.   Denied.

4.   Denied.

33723319.v1

GOLDBERG SEGALLA LLP
P.O. Box 17220
Los Angeles, CA  90017
213-415-7200

5.      Neither admit nor deny the allegations in paragraph 5 and respectfully refers the Court to the unspecified "public communications" for the context.

6.      Denied.

7.      Denied.

8.      Admit that on December 17, 2020 the SEC filed a complaint against the Defendants and respectfully refers the Court to the unsworn allegations in that complaint.

9.      Admit that on or about December 18, 2020 the DOJ unsealed an indictment against Berman and respectfully refers the Court to the unsworn allegations in that indictment.

10.      Denied.

11.      Denied.

12.      Denied, except admits that Plaintiffs purport to assert claims under the statutes and Rule referred to therein.

13.      Denied, except admits that Plaintiffs purport to confer subject matter jurisdiction pursuant to the statutes referred to therein.

14.      Denied, except admit that Decision Diagnostics is headquartered and Berman resides in this district and that Plaintiffs purport to venue this matter in this district under the statutes referred to therein.

15.      Denied.

16.      Denied.

17.      Deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 17, except admit Decision Diagnostics is a Nevada corporation with its principal executive office at 2660 Townsgate Road, Westlake Village, California.

18.      Admitted.

19.      Denied, except admit that Berman was the sole C-level executive and director of Decision Diagnostics and was provided copies of all Decision

ANSWER TO FIRST AMENDED COMPLAINT

33723319.v1

GOLDBERG SEGALLA LLP
P.O. Box 17220
Los Angeles, CA  90017
213-415-7200

Diagnostics' press releases prior to or shortly after their issuance.

20. No response is required to this paragraph.

21. Denied, except admits that Decision Diagnostics offers various products and services.

22. Denied.

23. Denied, except admits that portions of the Superseding Indictment are correctly quoted.

24. Denied, except admit that Berman emailed Decision Diagnostic's long-time vendor to ask whether it was "theoretically possible" to use impedance technology to test for COVID-19 in blood or saliva.

25. Denied, except admits that portions of the Superseding Indictment are correctly quoted.

26. Denied.

27. Denied.

28. Admitted.

29. Admitted.

30. Denied.

31. Admitted.

32. Denied.

33. Admitted.

34. Denied.

35. Denied.

36. Denied.

37. Denied.

38. Admitted.

39. Denied.

40. Denied.

41. Admitted.

GOLDBERG SEGALLA LLP
P.O. Box 17220
Los Angeles, CA 90017
213-415-7200

3
ANSWER TO FIRST AMENDED COMPLAINT
33723319.v1



42.    Denied.

43.    Admitted.

44.    Denied.

45.    Admitted.

46.    Denied.

47.    Admitted.

48.    Denied.

49.    Admitted.

50.    Denied.

51.    Admitted.

52.    Denied.

53.    Admitted.

54.    Denied.

55.    Admitted.

56.    Denied.

57.    Denied, except admit that Berman was interviewed by a New York affiliate of CBS in or about April, 2020.

58.    Denied.

59.    Denied, except admit that a portion of the SEC Complaint is accurately quoted.

60.    Denied, except admit that a portion of the SEC Complaint is accurately quoted. select portions of Decision Diagnostics April 23, 2020 press release are accurately quoted.

61.    Denied

62.    Denied, except admit that select portions of Decision Diagnostics' April 23, 2020 press release are accurately quoted.

63.    Denied.

64.    Admitted.

4

ANSWER TO FIRST AMENDED COMPLAINT

33723319.v1

GOLDBERG SEGALLA LLP
P.O. Box 17220
Los Angeles, CA  90017
213-415-7200

65.       Denied, except admit that a portion of the Superseding Indictment is accurately quoted.

66.       Denied, except admit that a portion of Decision Diagnostics' May 12, 2020 press release is accurately quoted.

67.       Denied.

68.       Admitted.

69.       Denied.

70.       Denied, except admit that a portion of the Superseding Indictment is accurately quoted.

71.       Denied, except admit that a portion of the Superseding Indictment is accurately quoted.

72.       Denied, except admit that a portion of the Superseding Indictment is accurately quoted.

73.       Denied, except admit that sections of the June 2, 2020 letter to the SEC are accurately quoted.

74.       Denied, except admit that a portion of the iHUB Message Board posting of June 5, 2020 is accurately quoted.

75.       Denied.

76.       Denied.

77.       Denied, except admit that a portion of the SEC Complaint is accurately quoted.

78.       Denied.

79.       Denied.

80.       Denied, except admit that a portion of the Superseding Indictment is accurately quoted.

81.       Denied, except admit that a portion of Decision Diagnostics' June 4, 2020 press release is accurately quoted.

82.       Denied.

GOLDBERG SEGALLA LLP
P.O. Box 17220
Los Angeles, CA  90017
213-415-7200

5

ANSWER TO FIRST AMENDED COMPLAINT

33723319.v1

83.    Denied, except admit that the titles to Decision Diagnostic's June 12, 2020 and June 17, 2020 press releases are correctly set forth.

84.    Admitted.

85.    Denied.

86.    Denied, except admit that a portion of Decision Diagnostics' July 20, 2020 press release is accurately quoted.

87.    Denied.

88.    Denied.

## THE TRUTH EMERGES

89.    Denied, except admit that a portion of the SEC Complaint is accurately quoted.

90.    Neither admit nor deny the allegation in paragraph 90, and respectfully refer the Court to the December, 2020 indictment (which has been superseded) for its charges.)

91.    Neither admit nor deny the allegations in paragraph 91, and respectfully refer the Court to the December, 2020 Complaint filed by the SEC (which action was immediately stayed) for its allegations.

92.    Denied.

93.    Admit that on May 11, 2021 the DOJ issued a Superseding Indictment and respectfully refer the Court to said indictment for its charges.

94.    Denied.

## PLAINTIFFS' CLASS ACTION ALLEGATIONS

95.    Denied.

96.    Denied.

97.    Denied.

98.    Denied.

99.    Denied.

100.    Denied.

GOLDBERG SEGALLA LLP
P.O. Box 17220
Los Angeles, CA  90017
213-415-7200

6
ANSWER TO FIRST AMENDED COMPLAINT
33723319.v1

GOLDBERG SEGALLA LLP
P.O. Box 17220
Los Angeles, CA 90017
213-415-7200

101. Denied.

102. Denied.

103. Denied.

## COUNT ONE

### (Violations of Section 10(b) of the Exchange Act and Rule10b-5 Promulgated Thereunder Against Both Defendants)

104. Defendants repeat and reallege every response as if fully set forth herein.

105. Denied, except admit the Plaintiffs purport to assert a claim pursuant to the statute and rule referred to therein.

106. Denied.

107. Denied.

108. Denied, except admit that Berman was the sole senior executive and director at Decision Diagnostics at all times herein relevant.

109. Denied, except admit that as the senior manager and/or director of Decision Diagnostics, Berman had knowledge of the details of Decision Diagnostics' internal affairs.

110. Denied, except submit no response to the assertion of purported legal conclusions, rather than averment of purported facts.

111. Denied.

112. Denied.

113. Denied.

## COUNT ONE

### (Violations of Section 20(a) of the Exchange Act Against Defendant Berman)

114. Defendants repeat and reallege every response as if fully set forth therein.

115. Denied, except admit that during the relevant period Berman was the sole executive officer and director of Decision Diagnostics.

116. Submit no response to the purported legal conclusions of Berman's duty

7

ANSWER TO FIRST AMENDED COMPLAINT

33723319.v1

as an officer and/or director of a public company.  To the extent this paragraph is intended to allege any breach by Berman of a cognizable legal duty, it is denied.

117.     Submit no response to Berman's purported legal status under the Securities Exchange Act of 1934. To the extent this paragraph is intended to allege facts which would make Berman personally liable to plaintiffs, it is denied.

118.     Submit no response to Berman's purported legal status under the Securities Exchange Act of 1934. To the extent this paragraph is intended to allege facts which would make Berman personally liable to plaintiffs, it is denied.

119.     Denied.

## FIRST AFFIRMATIVE DEFENSE

120.     Plaintiffs did not sustain any proximately caused injuries or damages in reliance on any statement by or omission of the Defendants.

## SECOND AFFIRMATIVE DEFENSE

121.     Plaintiffs cannot recover for any losses allegedly incurred as a result of any purchases made after the SEC issued its April 23, 2020 order temporarily suspending trading in Decision Diagnostics' stock and the accompanying press release warning against any reliance on any information imparted by or to be imparted in the future by Decision Diagnostics.

## THIRD AFFIRMATIVE DEFENSE

122.     Plaintiffs assumed the risks associated with speculating in a penny stock such as Decision Diagnostics.

## FOURTH AFFIRMATIVE DEFENSE

123.     The April 23, 2020 press release pursuant to which the SEC temporarily suspended trading in Decision Diagnostic's stock stated that such suspension was due to questions regarding the accuracy and adequacy of information in the marketplace since at least March 3, 2020.  The press releases further stated that prospective purchasers of Decision Diagnostics' stock should carefully consider the information announced by the SEC and any information subsequently issued by

GOLDBERG SEGALLA LLP
P.O. Box 17220
Los Angeles, CA  90017
213-415-7200

8
ANSWER TO FIRST AMENDED COMPLAINT
33723319.v1

Decision Diagnostics. In view of the foregoing, plaintiffs could not reasonably rely on any subsequent press releases issued by Decision Diagnostics, and may not recover any damages based on any purchases made after April 23, 2020.

## FIFTH AFFIRMATIVE DEFENSE

124.     In view of the decision in *Jarkesey v. Securities and Exchange Commission* CV. 20-61007 (5th Cir. May 18, 2022) any reliance on the SEC Complaint in *SEC v. Keith Berman, et ano,* 20-CV-10658 (LAP) (S.D.N.Y.) is barred.

## SIXTH AFFIRMATIVE DEFENSE

125.     Plaintiffs cannot recover any damages for any "holder claims --- i.e., claims based on damages allegedly incurred as a result of their failure to sell any portion of their Decision Diagnostics stock.

## SEVENTH AFFIRMATIVE DEFENSE

126.     Plaintiffs failed to mitigate their alleged damage.

## EIGHTH AFFIRMATIVE DEFENSE

127.     Plaintiffs cannot establish loss causation.

Dated:  June 21, 2022                                    GOLDBERG SEGALLA LLP

                                                 By:     */S/ Stephen C. Mazzara*
                                                         STEPHEN C. MAZZARA

                                                         Attorneys for Defendants
                                                         DECISION DIAGNOSTICS
                                                         CORP. and KEITH M. BERMAN

GOLDBERG SEGALLA LLP
P.O. Box 17220
Los Angeles, CA  90017
213-415-7200

ANSWER TO FIRST AMENDED COMPLAINT
33723319.v1

# EXHIBIT D

**UNITED STATES OF AMERICA**
**Before the**
**SECURITIES AND EXCHANGE COMMISSION**

**April 23, 2020**

| | |
|---|---|
| **In the Matter of** | |
| **Decision Diagnostics Corp.** | **ORDER OF SUSPENSION OF TRADING** |
| **File No. 500-1** | |

It appears to the Securities and Exchange Commission that the public interest and the protection of investors require a suspension in the trading of the securities of Decision Diagnostics Corp. ("DECN" or "the Company") (CIK No. 0001144225) because of questions regarding the accuracy and adequacy of information in the marketplace since at least March 3, 2020. Those questions relate to DECN's press releases, among other things, (i) claiming to have "technology perfected" to allow it to manufacture and sell a COVID-19 test kit that would provide results "in 15 seconds, based on a small finger prick blood sample," and (ii) issuing sales forecasts that up to 525 million COVID 19 test kits would be sold in the first year of production. The Company's common stock is quoted on OTC Link (previously Pink Sheets), operated by OTC Markets Group Inc., under the symbol DECN. As of April 21, 2020, DECN's common stock has 13 market makers, and the issuer's common stock is eligible for the "piggyback" exception of Rule 15c2-11(f)(3) under the Securities Exchange Act of 1934.

The Commission is of the opinion that the public interest and the protection of investors require a suspension of trading in the securities of the above-listed company.

THEREFORE, IT IS ORDERED, pursuant to Section 12(k) of the Securities Exchange Act of 1934, that trading in the securities of the above-listed company is suspended for the period from 9:30 a.m. EDT on April 24, 2020, through 11:59 p.m. EDT on May 7, 2020.

By the Commission.

Vanessa A. Countryman
Secretary

# EXHIBIT E

# UNITED STATES OF AMERICA
## Before the
## SECURITIES AND EXCHANGE COMMISSION

**SECURITIES EXCHANGE ACT OF 1934**
**Release No. 88735 / April 23, 2020**

The U.S. Securities and Exchange Commission announced the temporary suspension, pursuant to Section 12(k) of the Securities Exchange Act of 1934, of trading of the securities of Decision Diagnostics Corp. (DECN) (CIK No. 0001144225), of Westlake Village, California at 9:30 a.m. EDT on April 24, 2020, and terminating at 11:59 p.m. EDT on May 7, 2020.

The Commission temporarily suspended trading in the securities of DECN because of questions regarding the accuracy and adequacy of information in the marketplace since at least March 3, 2020. Those questions relate to, among other things, (i) DECN's statements claiming to have "technology perfected" to allow it to manufacture and sell a COVID-19 test kit that would provide results "in 15 seconds, based on a small finger prick blood sample," and (ii) DECN's sales forecasts for the COVID-19 test kit that up to 525 million test kits would be sold in the first year of production.

The Commission cautions brokers, dealers, shareholders, and prospective purchasers that they should carefully consider the foregoing information along with all other currently available information and any information subsequently issued by the company.

Further, brokers and dealers should be alert to the fact that, pursuant to Rule 15c2-11 under the Exchange Act, at the termination of the trading suspension, no quotation may be entered unless and until they have strictly complied with all of the provisions of the rule. If any broker or dealer has any questions as to whether or not he has complied with the rule, he should not enter any quotation but immediately contact the staff in the Division of Trading and Markets, Office of Interpretation and Guidance, at (202) 551-5777. If any broker or dealer is uncertain as to what is required by Rule 15c2-11, he should refrain from entering quotations relating to DECN's securities until such time as he has familiarized himself with the rule and is certain that all of its provisions have been met. If any broker or dealer enters any quotation that is in violation of the rule, the Commission will consider the need for prompt enforcement action.

If any broker, dealer or other person has any information that may relate to this matter, they should immediately contact Anita B. Bandy, Associate Director, at (202) 551-4746. The Commission appreciates the assistance of the Financial Industry Regulatory Authority.

# EXHIBIT F

| Date | Open | High | Low | Close | Adj Close | Volume |
|---|---|---|---|---|---|---|
| 1/2/2020 | 0.0145 | 0.0145 | 0.0145 | 0.0145 | 0.0145 | 17045 |
| 1/3/2020 | 0.0146 | 0.0146 | 0.0146 | 0.0146 | 0.0146 | 25008 |
| 1/6/2020 | 0.016 | 0.016 | 0.01455 | 0.0146 | 0.0146 | 43663 |
| 1/7/2020 | 0.016 | 0.016 | 0.016 | 0.016 | 0.016 | 5830 |
| 1/8/2020 | 0.015 | 0.0198 | 0.015 | 0.0198 | 0.0198 | 228802 |
| 1/9/2020 | 0.0198 | 0.0198 | 0.01836 | 0.01836 | 0.01836 | 54900 |
| 1/10/2020 | 0.0181 | 0.01955 | 0.0181 | 0.01955 | 0.01955 | 15000 |
| 1/13/2020 | 0.0198 | 0.0198 | 0.016 | 0.016 | 0.016 | 157992 |
| 1/14/2020 | 0.017 | 0.0198 | 0.017 | 0.0187 | 0.0187 | 69360 |
| 1/15/2020 | 0.0186 | 0.0187 | 0.0186 | 0.0187 | 0.0187 | 20160 |
| 1/16/2020 | 0.0187 | 0.01915 | 0.0156 | 0.0156 | 0.0156 | 50145 |
| 1/17/2020 | 0.016 | 0.02 | 0.016 | 0.018 | 0.018 | 148124 |
| 1/21/2020 | 0.02 | 0.02 | 0.018 | 0.019 | 0.019 | 159501 |
| 1/22/2020 | 0.019 | 0.02 | 0.019 | 0.019 | 0.019 | 17790 |
| 1/23/2020 | 0.02 | 0.02 | 0.019 | 0.019 | 0.019 | 16682 |
| 1/24/2020 | 0.019 | 0.02 | 0.018 | 0.0199 | 0.0199 | 135960 |
| 1/27/2020 | 0.02 | 0.02 | 0.019 | 0.02 | 0.02 | 454111 |
| 1/28/2020 | 0.02 | 0.021 | 0.02 | 0.02 | 0.02 | 150756 |
| 1/29/2020 | 0.02 | 0.02 | 0.02 | 0.02 | 0.02 | 2835 |
| 1/30/2020 | 0.021 | 0.023 | 0.0195 | 0.021 | 0.021 | 337193 |
| 1/31/2020 | 0.021 | 0.021 | 0.02 | 0.02 | 0.02 | 26300 |
| 2/3/2020 | 0.018 | 0.023 | 0.0155 | 0.02 | 0.02 | 224896 |
| 2/4/2020 | 0.023 | 0.023 | 0.02 | 0.021 | 0.021 | 233410 |
| 2/5/2020 | 0.021 | 0.021 | 0.021 | 0.021 | 0.021 | 252000 |
| 2/6/2020 | 0.022 | 0.022 | 0.0161 | 0.01845 | 0.01845 | 608178 |
| 2/7/2020 | 0.0197 | 0.0204 | 0.01865 | 0.02 | 0.02 | 105500 |
| 2/10/2020 | 0.01845 | 0.023 | 0.018 | 0.021 | 0.021 | 460768 |
| 2/11/2020 | 0.021 | 0.022 | 0.01905 | 0.0219 | 0.0219 | 200500 |
| 2/12/2020 | 0.02 | 0.021 | 0.019 | 0.021 | 0.021 | 16052 |
| 2/13/2020 | 0.0195 | 0.021 | 0.0195 | 0.02025 | 0.02025 | 15000 |
| 2/14/2020 | 0.01975 | 0.02 | 0.01975 | 0.02 | 0.02 | 54300 |
| 2/18/2020 | 0.0199 | 0.0215 | 0.0199 | 0.0215 | 0.0215 | 292125 |
| 2/19/2020 | 0.02 | 0.02 | 0.0182 | 0.02 | 0.02 | 348206 |
| 2/20/2020 | 0.02 | 0.02 | 0.01855 | 0.01986 | 0.01986 | 150485 |
| 2/21/2020 | 0.01986 | 0.01986 | 0.01986 | 0.01986 | 0.01986 | 0 |
| 2/24/2020 | 0.02 | 0.02 | 0.01715 | 0.0172 | 0.0172 | 61504 |
| 2/25/2020 | 0.01735 | 0.01875 | 0.0172 | 0.0172 | 0.0172 | 82413 |
| 2/26/2020 | 0.0172 | 0.0172 | 0.01675 | 0.017 | 0.017 | 149787 |
| 2/27/2020 | 0.01685 | 0.0175 | 0.0167 | 0.0175 | 0.0175 | 79000 |
| 2/28/2020 | 0.0168 | 0.019 | 0.0168 | 0.019 | 0.019 | 54850 |
| 3/2/2020 | 0.019 | 0.019 | 0.019 | 0.019 | 0.019 | 8000 |
| 3/3/2020 | 0.01995 | 0.0449 | 0.017 | 0.03125 | 0.03125 | 7299706 |
| 3/4/2020 | 0.0321 | 0.0439 | 0.0304 | 0.033 | 0.033 | 7136171 |

| | | | | | |
|---|---|---|---|---|---|
| 3/5/2020 | 0.035 | 0.036 | 0.023 | 0.029 | 0.029 | 3316676 |
| 3/6/2020 | 0.032 | 0.032 | 0.024 | 0.029 | 0.029 | 2142014 |
| 3/9/2020 | 0.0295 | 0.0295 | 0.0205 | 0.024 | 0.024 | 701162 |
| 3/10/2020 | 0.021 | 0.0249 | 0.021 | 0.0249 | 0.0249 | 603936 |
| 3/11/2020 | 0.02645 | 0.0745 | 0.0242 | 0.0704 | 0.0704 | 43644592 |
| 3/12/2020 | 0.0834 | 0.1299 | 0.076 | 0.09745 | 0.09745 | 40055383 |
| 3/13/2020 | 0.0945 | 0.102 | 0.0605 | 0.0605 | 0.0605 | 18332849 |
| 3/16/2020 | 0.07 | 0.097 | 0.067 | 0.076 | 0.076 | 15468494 |
| 3/17/2020 | 0.0805 | 0.1379 | 0.0805 | 0.1115 | 0.1115 | 32950777 |
| 3/18/2020 | 0.123 | 0.198 | 0.118 | 0.187 | 0.187 | 49761996 |
| 3/19/2020 | 0.2169 | 0.259 | 0.097 | 0.125 | 0.125 | 40441143 |
| 3/20/2020 | 0.159 | 0.188 | 0.102 | 0.1339 | 0.1339 | 28027921 |
| 3/23/2020 | 0.149 | 0.17 | 0.131 | 0.1475 | 0.1475 | 20247216 |
| 3/24/2020 | 0.151 | 0.1549 | 0.1054 | 0.12445 | 0.12445 | 13206184 |
| 3/25/2020 | 0.125 | 0.129 | 0.072 | 0.0854 | 0.0854 | 21198466 |
| 3/26/2020 | 0.09 | 0.099 | 0.0741 | 0.087 | 0.087 | 11644953 |
| 3/27/2020 | 0.0888 | 0.1089 | 0.088 | 0.10392 | 0.10392 | 9269165 |
| 3/30/2020 | 0.109 | 0.14 | 0.0913 | 0.109 | 0.109 | 11953740 |
| 3/31/2020 | 0.11525 | 0.1185 | 0.0755 | 0.0821 | 0.0821 | 10587316 |
| 4/1/2020 | 0.0811 | 0.0867 | 0.0706 | 0.07235 | 0.07235 | 9217269 |
| 4/2/2020 | 0.076 | 0.076 | 0.06 | 0.0698 | 0.0698 | 6668887 |
| 4/3/2020 | 0.069 | 0.073 | 0.056 | 0.0601 | 0.0601 | 6864097 |
| 4/6/2020 | 0.0689 | 0.1297 | 0.0651 | 0.1224 | 0.1224 | 59259643 |
| 4/7/2020 | 0.136 | 0.3095 | 0.125 | 0.2001 | 0.2001 | 119041469 |
| 4/8/2020 | 0.211 | 0.24 | 0.14 | 0.1512 | 0.1512 | 63094856 |
| 4/9/2020 | 0.169 | 0.178 | 0.1213 | 0.1729 | 0.1729 | 25606354 |
| 4/13/2020 | 0.189 | 0.201 | 0.164 | 0.184 | 0.184 | 19063714 |
| 4/14/2020 | 0.198 | 0.221 | 0.1811 | 0.22 | 0.22 | 19612390 |
| 4/15/2020 | 0.2299 | 0.23 | 0.195 | 0.2183 | 0.2183 | 15090446 |
| 4/16/2020 | 0.2298 | 0.289 | 0.21 | 0.27995 | 0.27995 | 28774294 |
| 4/17/2020 | 0.27985 | 0.2799 | 0.2101 | 0.2139 | 0.2139 | 33941985 |
| 4/20/2020 | 0.221 | 0.2249 | 0.16 | 0.18 | 0.18 | 26561243 |
| 4/21/2020 | 0.1901 | 0.2485 | 0.1901 | 0.2425 | 0.2425 | 41266143 |
| 4/22/2020 | 0.24895 | 0.4005 | 0.2445 | 0.36 | 0.36 | 83460097 |
| 4/23/2020 | 0.405 | 0.497 | 0.21 | 0.275 | 0.275 | 113007607 |
| 4/24/2020 | 0.215 | 0.215 | 0.215 | 0.215 | 0.215 | 35900 |
| 4/27/2020 | 0.215 | 0.215 | 0.215 | 0.215 | 0.215 | 0 |
| 4/28/2020 | 0.215 | 0.215 | 0.215 | 0.215 | 0.215 | 0 |
| 4/29/2020 | 0.215 | 0.215 | 0.215 | 0.215 | 0.215 | 0 |
| 4/30/2020 | 0.215 | 0.215 | 0.215 | 0.215 | 0.215 | 0 |
| 5/1/2020 | 0.215 | 0.215 | 0.215 | 0.215 | 0.215 | 0 |
| 5/4/2020 | 0.215 | 0.215 | 0.215 | 0.215 | 0.215 | 0 |
| 5/5/2020 | 0.215 | 0.215 | 0.215 | 0.215 | 0.215 | 0 |
| 5/6/2020 | 0.215 | 0.215 | 0.215 | 0.215 | 0.215 | 0 |

| 5/7/2020 | 0.215 | 0.215 | 0.215 | 0.215 | 0.215 | 0 |
| 5/8/2020 | 0.1 | 0.21 | 0.05 | 0.172 | 0.172 | 12211788 |
| 5/11/2020 | 0.18 | 0.18 | 0.1101 | 0.12 | 0.12 | 12829357 |
| 5/12/2020 | 0.135 | 0.18 | 0.1 | 0.17 | 0.17 | 10407776 |
| 5/13/2020 | 0.19 | 0.23 | 0.175 | 0.205 | 0.205 | 8181279 |
| 5/14/2020 | 0.1725 | 0.2 | 0.15 | 0.165 | 0.165 | 6356569 |
| 5/15/2020 | 0.15 | 0.19 | 0.13 | 0.16 | 0.16 | 5562080 |
| 5/18/2020 | 0.16 | 0.18 | 0.132 | 0.1361 | 0.1361 | 4599171 |
| 5/19/2020 | 0.14 | 0.15 | 0.13 | 0.1445 | 0.1445 | 3546911 |
| 5/20/2020 | 0.14 | 0.1497 | 0.13 | 0.14 | 0.14 | 2091905 |
| 5/21/2020 | 0.13 | 0.2 | 0.13 | 0.19 | 0.19 | 8245752 |
| 5/22/2020 | 0.16 | 0.22 | 0.16 | 0.21 | 0.21 | 4570283 |
| 5/26/2020 | 0.25 | 0.27 | 0.1411 | 0.19 | 0.19 | 12577288 |
| 5/27/2020 | 0.18 | 0.18 | 0.15 | 0.17 | 0.17 | 5305778 |
| 5/28/2020 | 0.15 | 0.17 | 0.15 | 0.155 | 0.155 | 3046249 |
| 5/29/2020 | 0.145 | 0.17 | 0.135 | 0.17 | 0.17 | 3697878 |
| 6/1/2020 | 0.17 | 0.189 | 0.155 | 0.164 | 0.164 | 1870143 |
| 6/2/2020 | 0.155 | 0.18 | 0.155 | 0.16 | 0.16 | 1183005 |
| 6/3/2020 | 0.17 | 0.17 | 0.15 | 0.16 | 0.16 | 1694246 |
| 6/4/2020 | 0.14 | 0.17 | 0.14 | 0.15 | 0.15 | 2424807 |
| 6/5/2020 | 0.175 | 0.175 | 0.142 | 0.156 | 0.156 | 2002378 |
| 6/8/2020 | 0.15 | 0.16 | 0.138 | 0.145 | 0.145 | 2821683 |
| 6/9/2020 | 0.14 | 0.15 | 0.132 | 0.14 | 0.14 | 2523333 |
| 6/10/2020 | 0.1255 | 0.14 | 0.1255 | 0.132 | 0.132 | 1105993 |
| 6/11/2020 | 0.13 | 0.132 | 0.111 | 0.12 | 0.12 | 2615944 |
| 6/12/2020 | 0.125 | 0.162 | 0.115 | 0.16 | 0.16 | 3395527 |
| 6/15/2020 | 0.135 | 0.18 | 0.135 | 0.17 | 0.17 | 2415892 |
| 6/16/2020 | 0.18 | 0.188 | 0.17 | 0.1775 | 0.1775 | 1532560 |
| 6/17/2020 | 0.185 | 0.185 | 0.16 | 0.18 | 0.18 | 2345755 |
| 6/18/2020 | 0.18 | 0.24 | 0.18 | 0.2175 | 0.2175 | 5593327 |
| 6/19/2020 | 0.2 | 0.238 | 0.2 | 0.22 | 0.22 | 2339253 |
| 6/22/2020 | 0.235 | 0.28 | 0.2209 | 0.273 | 0.273 | 5531715 |
| 6/23/2020 | 0.285 | 0.3483 | 0.28 | 0.33 | 0.33 | 6296703 |
| 6/24/2020 | 0.38 | 0.43 | 0.35 | 0.39 | 0.39 | 8168064 |
| 6/25/2020 | 0.41 | 0.43 | 0.15 | 0.26 | 0.26 | 7483896 |
| 6/26/2020 | 0.26 | 0.33 | 0.25 | 0.32 | 0.32 | 4694697 |
| 6/29/2020 | 0.33 | 0.375 | 0.3 | 0.33 | 0.33 | 2871340 |
| 6/30/2020 | 0.28 | 0.345 | 0.28 | 0.3 | 0.3 | 2252149 |
| 7/1/2020 | 0.28 | 0.33 | 0.2501 | 0.27 | 0.27 | 2747022 |
| 7/2/2020 | 0.24 | 0.29 | 0.2 | 0.24 | 0.24 | 7713820 |
| 7/6/2020 | 0.24 | 0.28 | 0.215 | 0.2343 | 0.2343 | 2121054 |
| 7/7/2020 | 0.2 | 0.248 | 0.2 | 0.2396 | 0.2396 | 1393251 |
| 7/8/2020 | 0.248 | 0.3 | 0.248 | 0.29 | 0.29 | 5704402 |
| 7/9/2020 | 0.29 | 0.34 | 0.27 | 0.29 | 0.29 | 2160055 |

| 7/10/2020 | 0.27 | 0.3 | 0.245 | 0.28 | 0.28 | 2667458 |
| 7/13/2020 | 0.28 | 0.285 | 0.24 | 0.26 | 0.26 | 2160245 |
| 7/14/2020 | 0.3 | 0.3 | 0.25 | 0.27 | 0.27 | 1210434 |
| 7/15/2020 | 0.25 | 0.285 | 0.244 | 0.26 | 0.26 | 1304723 |
| 7/16/2020 | 0.23 | 0.27 | 0.23 | 0.24 | 0.24 | 2174365 |
| 7/17/2020 | 0.28 | 0.28 | 0.23 | 0.243 | 0.243 | 2043207 |
| 7/20/2020 | 0.28 | 0.28 | 0.22 | 0.23 | 0.23 | 2620028 |
| 7/21/2020 | 0.2 | 0.279 | 0.2 | 0.27 | 0.27 | 2129891 |
| 7/22/2020 | 0.28 | 0.3 | 0.272 | 0.2848 | 0.2848 | 1235769 |
| 7/23/2020 | 0.27025 | 0.295 | 0.25 | 0.26 | 0.26 | 2871701 |
| 7/24/2020 | 0.24 | 0.279 | 0.24 | 0.27 | 0.27 | 1384264 |
| 7/27/2020 | 0.3 | 0.3 | 0.26 | 0.2852 | 0.2852 | 1839535 |
| 7/28/2020 | 0.26 | 0.29 | 0.26 | 0.285 | 0.285 | 937639 |
| 7/29/2020 | 0.305 | 0.305 | 0.27 | 0.275 | 0.275 | 1211945 |
| 7/30/2020 | 0.294 | 0.294 | 0.27 | 0.294 | 0.294 | 1589571 |
| 7/31/2020 | 0.25 | 0.3 | 0.25 | 0.3 | 0.3 | 1593090 |
| 8/3/2020 | 0.34 | 0.34 | 0.3 | 0.328 | 0.328 | 2709932 |
| 8/4/2020 | 0.35 | 0.385 | 0.332 | 0.38 | 0.38 | 3596454 |
| 8/5/2020 | 0.39 | 0.45 | 0.38 | 0.435 | 0.435 | 4215274 |
| 8/6/2020 | 0.45 | 0.465 | 0.3776 | 0.4 | 0.4 | 4371152 |
| 8/7/2020 | 0.43 | 0.43 | 0.35 | 0.4 | 0.4 | 2752508 |
| 8/10/2020 | 0.38 | 0.4 | 0.31 | 0.3299 | 0.3299 | 4831775 |
| 8/11/2020 | 0.28 | 0.33 | 0.215 | 0.285 | 0.285 | 5063432 |
| 8/12/2020 | 0.28 | 0.28 | 0.251 | 0.26 | 0.26 | 3225724 |
| 8/13/2020 | 0.23 | 0.29 | 0.23 | 0.29 | 0.29 | 1770952 |
| 8/14/2020 | 0.28 | 0.29 | 0.25 | 0.275 | 0.275 | 1197511 |
| 8/17/2020 | 0.275 | 0.28 | 0.24 | 0.2775 | 0.2775 | 1703961 |
| 8/18/2020 | 0.29 | 0.29 | 0.252 | 0.274 | 0.274 | 1605251 |
| 8/19/2020 | 0.28 | 0.289 | 0.27 | 0.28 | 0.28 | 679036 |
| 8/20/2020 | 0.27 | 0.29 | 0.257 | 0.274 | 0.274 | 1012682 |
| 8/21/2020 | 0.262 | 0.28 | 0.251 | 0.26 | 0.26 | 1109678 |
| 8/24/2020 | 0.42 | 0.42 | 0.255 | 0.267 | 0.267 | 610333 |
| 8/25/2020 | 0.27 | 0.28 | 0.24 | 0.255 | 0.255 | 1279758 |
| 8/26/2020 | 0.28 | 0.28 | 0.23 | 0.24 | 0.24 | 2260151 |
| 8/27/2020 | 0.2375 | 0.2375 | 0.15 | 0.175 | 0.175 | 6917964 |
| 8/28/2020 | 0.17 | 0.18 | 0.15 | 0.175 | 0.175 | 5186746 |
| 8/31/2020 | 0.28 | 0.2811 | 0.181 | 0.215 | 0.215 | 2659680 |
| 9/1/2020 | 0.28 | 0.28 | 0.24 | 0.2795 | 0.2795 | 4331070 |
| 9/2/2020 | 0.28 | 0.293 | 0.27 | 0.28 | 0.28 | 2176106 |
| 9/3/2020 | 0.3 | 0.3 | 0.2651 | 0.28 | 0.28 | 1088483 |
| 9/4/2020 | 0.28 | 0.285 | 0.24 | 0.268 | 0.268 | 1196809 |
| 9/8/2020 | 0.28 | 0.28 | 0.22 | 0.23 | 0.23 | 2986369 |
| 9/9/2020 | 0.16 | 0.2325 | 0.16 | 0.2 | 0.2 | 3962326 |
| 9/10/2020 | 0.17 | 0.22 | 0.17 | 0.1997 | 0.1997 | 1632397 |

| | | | | | | |
|---|---|---|---|---|---|---|
| 9/11/2020 | 0.2 | 0.21 | 0.181 | 0.2049 | 0.2049 | 1187698 |
| 9/14/2020 | 0.28 | 0.28 | 0.205 | 0.23 | 0.23 | 710207 |
| 9/15/2020 | 0.25 | 0.255 | 0.19 | 0.2 | 0.2 | 1809575 |
| 9/16/2020 | 0.215 | 0.215 | 0.188 | 0.195 | 0.195 | 1615211 |
| 9/17/2020 | 0.21 | 0.21 | 0.188 | 0.204 | 0.204 | 1514097 |
| 9/18/2020 | 0.21 | 0.21 | 0.1885 | 0.205 | 0.205 | 1580331 |
| 9/21/2020 | 0.22 | 0.22 | 0.189 | 0.205 | 0.205 | 1408005 |
| 9/22/2020 | 0.21 | 0.24 | 0.2 | 0.225 | 0.225 | 1711471 |
| 9/23/2020 | 0.27 | 0.27 | 0.24 | 0.266 | 0.266 | 1798278 |
| 9/24/2020 | 0.27 | 0.36 | 0.27 | 0.315 | 0.315 | 3522778 |
| 9/25/2020 | 0.34 | 0.34 | 0.28 | 0.29 | 0.29 | 2236544 |
| 9/28/2020 | 0.34 | 0.34 | 0.2 | 0.2 | 0.2 | 2635564 |
| 9/29/2020 | 0.27 | 0.27 | 0.206 | 0.22 | 0.22 | 1524021 |
| 9/30/2020 | 0.23 | 0.25 | 0.2002 | 0.21 | 0.21 | 2468013 |
| 10/1/2020 | 0.23 | 0.23 | 0.2 | 0.205 | 0.205 | 2230409 |
| 10/2/2020 | 0.205 | 0.25 | 0.1925 | 0.25 | 0.25 | 4164310 |
| 10/5/2020 | 0.29 | 0.29 | 0.22 | 0.236 | 0.236 | 2724431 |
| 10/6/2020 | 0.23 | 0.255 | 0.206 | 0.22 | 0.22 | 1866898 |
| 10/7/2020 | 0.2 | 0.23 | 0.2 | 0.223 | 0.223 | 919930 |
| 10/8/2020 | 0.25 | 0.25 | 0.21 | 0.225 | 0.225 | 873790 |
| 10/9/2020 | 0.2 | 0.23 | 0.2 | 0.224 | 0.224 | 597501 |
| ######### | 0.2 | 0.235 | 0.2 | 0.215 | 0.215 | 759342 |
| ######### | 0.2 | 0.22 | 0.191 | 0.215 | 0.215 | 2067852 |
| ######### | 0.216 | 0.216 | 0.186 | 0.2 | 0.2 | 2418342 |
| ######### | 0.22 | 0.22 | 0.185 | 0.199 | 0.199 | 1541020 |
| ######### | 0.25 | 0.25 | 0.17 | 0.19 | 0.19 | 1797829 |
| ######### | 0.2175 | 0.2175 | 0.1818 | 0.19 | 0.19 | 1616645 |
| ######### | 0.16 | 0.3924 | 0.16 | 0.1825 | 0.1825 | 1484254 |
| ######### | 0.2 | 0.2 | 0.165 | 0.18 | 0.18 | 1829997 |
| ######### | 0.18 | 0.18 | 0.1619 | 0.17 | 0.17 | 1230586 |
| ######### | 0.16 | 0.1799 | 0.153 | 0.175 | 0.175 | 1204758 |
| ######### | 0.175 | 0.3924 | 0.162 | 0.2 | 0.2 | 1449485 |
| ######### | 0.24 | 0.24 | 0.19 | 0.2099 | 0.2099 | 1125037 |
| ######### | 0.20625 | 0.215 | 0.19 | 0.198 | 0.198 | 750659 |
| ######### | 0.21 | 0.21 | 0.18 | 0.19 | 0.19 | 1267324 |
| ######### | 0.21 | 0.21 | 0.155 | 0.18 | 0.18 | 732248 |
| 11/2/2020 | 0.19 | 0.19 | 0.155 | 0.17 | 0.17 | 1598116 |
| 11/3/2020 | 0.18 | 0.18 | 0.152 | 0.175 | 0.175 | 1228686 |
| 11/4/2020 | 0.15 | 0.179 | 0.15 | 0.16 | 0.16 | 625697 |
| 11/5/2020 | 0.15 | 0.17 | 0.15 | 0.165 | 0.165 | 848457 |
| 11/6/2020 | 0.16 | 0.185 | 0.1499 | 0.16 | 0.16 | 1575666 |
| 11/9/2020 | 0.1 | 0.1601 | 0.1 | 0.133 | 0.133 | 3793952 |
| ######### | 0.12 | 0.13 | 0.11 | 0.12 | 0.12 | 2217826 |
| ######### | 0.1705 | 0.1705 | 0.105 | 0.125 | 0.125 | 1395698 |

| | | | | | | |
|---|---|---|---|---|---|---|
| ######### | 0.11 | 0.16 | 0.11 | 0.155 | 0.155 | 2435248 |
| ######### | 0.16875 | 0.18 | 0.145 | 0.15 | 0.15 | 2053882 |
| ######### | 0.2 | 0.2 | 0.122 | 0.13 | 0.13 | 1207252 |
| ######### | 0.125 | 0.142 | 0.12 | 0.135 | 0.135 | 1091743 |
| ######### | 0.135 | 0.145 | 0.125 | 0.1398 | 0.1398 | 1452422 |
| ######### | 0.145 | 0.145 | 0.1249 | 0.13 | 0.13 | 1496220 |
| ######### | 0.1305 | 0.139 | 0.115 | 0.12 | 0.12 | 1587818 |
| ######### | 0.1319 | 0.145 | 0.12 | 0.139 | 0.139 | 1525300 |
| ######### | 0.13 | 0.145 | 0.1293 | 0.1348 | 0.1348 | 1724023 |
| ######### | 0.135 | 0.135 | 0.12 | 0.127 | 0.127 | 1404086 |
| ######### | 0.1 | 0.14 | 0.1 | 0.12 | 0.12 | 805054 |
| ######### | 0.125 | 0.13 | 0.1 | 0.12 | 0.12 | 2109999 |
| 12/1/2020 | 0.12 | 0.125 | 0.11 | 0.125 | 0.125 | 997155 |
| 12/2/2020 | 0.125 | 0.125 | 0.11 | 0.12 | 0.12 | 733879 |
| 12/3/2020 | 0.1195 | 0.12 | 0.11 | 0.119 | 0.119 | 678240 |
| 12/4/2020 | 0.1225 | 0.125 | 0.11 | 0.12 | 0.12 | 1008965 |
| 12/7/2020 | 0.12 | 0.13 | 0.105 | 0.11 | 0.11 | 1526780 |
| 12/8/2020 | 0.11 | 0.115 | 0.1 | 0.11 | 0.11 | 1724382 |
| 12/9/2020 | 0.11 | 0.11 | 0.1 | 0.1 | 0.1 | 1132121 |
| ######### | 0.11445 | 0.11445 | 0.09 | 0.107 | 0.107 | 1493993 |
| ######### | 0.1 | 0.11 | 0.1 | 0.102 | 0.102 | 820038 |
| ######### | 0.1 | 0.1095 | 0.09 | 0.104 | 0.104 | 1303303 |
| ######### | 0.105 | 0.11 | 0.092 | 0.1 | 0.1 | 823940 |
| ######### | 0.1 | 0.1 | 0.082 | 0.095 | 0.095 | 1320732 |
| ######### | 0.11245 | 0.11245 | 0.09 | 0.095 | 0.095 | 719529 |
| ######### | 0.08 | 0.095 | 0.0349 | 0.039 | 0.039 | 13188439 |
| ######### | 0.005 | 0.05 | 0.005 | 0.03 | 0.03 | 15675024 |
| ######### | 0.038 | 0.038 | 0.022 | 0.027 | 0.027 | 3531235 |
| ######### | 0.03 | 0.03 | 0.025 | 0.029 | 0.029 | 2544812 |
| ######### | 0.01 | 0.028 | 0.01 | 0.0253 | 0.0253 | 1646061 |
| ######### | 0.0003 | 0.0297 | 0.0003 | 0.02 | 0.02 | 5930688 |
| ######### | 0.015 | 0.0255 | 0.015 | 0.021 | 0.021 | 4455112 |
| ######### | 0.0003 | 0.022 | 0.0003 | 0.0003 | 0.0003 | 3023753 |

Case No. 2:21-cv-00418-FWS-JPR

ANTHONY SANCHEZ; et al. v. DECISION DIAGNOSTICS CORP.; et al.

### CERTIFICATE OF SERVICE

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am employed in the County of Los Angeles, State of California. I am over the age of eighteen years and not a party to the within action; my business address is 777 S. Figueroa Street, Suite 2000, Los Angeles, CA 90017.

On June 21, 2022, I served the following document(s) described as **AFFIRMATION IN SUPPORT OF MOTION TO VACATE DEFAULT JUDGMENT OR, IN THE ALTERNATIVE, TO DENY PLAINTIFFS' LEGALLY DEFICIENT DAMAGE CLAIMS** on the interested parties in this action by placing true copies thereof enclosed in sealed envelopes addressed as follows:

### SEE ATTACHED SERVICE LIST

**[ X ]   BY COURT'S CM/ECF SYSTEM:**  Pursuant to Local Rule, I electronically filed the document with the Clerk of the Court using the CM/ECF system, which sent notification of that filing to the persons listed above.

I declare under penalty of perjury under the United States of America and the State of California that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court whose direction the service was made.

Executed on June 21, 2022, at Los Angeles, California.

*/S/  Tom Cochran*

Tom Cochran

GOLDBERG SEGALLA LLP
P.O. Box 17220
Los Angeles, CA  90017
213-415-7200

8

AFFIRMATION IN SUPPORT OF MOTION TO VACATE DEFAULT JUDGMENT OR, IN THE ALTERNATIVE, TO DENY PLAINTIFFS' LEGALLY DEFICIENT DAMAGE CLAIMS

33721143.v1

Brian O'Connell
POMERANTZ LLP
10 South LaSalle Street, Suite 3505
Chicago, IL  60603
Tel: 312-881-4859 / Fax: 312-229-8811
boconnell@pomlaw.com

*Attorneys for Plaintiff*
*ANTHONY SANCHEZ and*
*Movant THOMAS*
*TOSSAVAINEN*

Jennifer Pafiti
POMERANTZ LLP
1100 Glendon Avenue, 15th Floor
Los Angeles, CA 90024
Tel: 310-405-7190 / Fax: 917-463-1044
jpafiti@pomlaw.com

*Attorneys for Plaintiff*
*ANTHONY SANCHEZ and*
*Movant THOMAS*
*TOSSAVAINEN*

Joshua B. Silverman
POMERANTZ LLP
10 South LaSalle Street Suite 3505
Chicago, IL 60603
Tel: 312-377-1181 / Fax: 312-377-1184
jbsilverman@pomlaw.com

*Attorneys for Plaintiff*
*ANTHONY SANCHEZ and*
*Movant THOMAS*
*TOSSAVAINEN*

Laurence M Rosen
ROSEN LAW FIRM PA
355 South Grand Avenue Suite 2450
Los Angeles, CA 90071
Tel: 213-785-2610 / Fax: 213-226-4684
lrosen@rosenlegal.com

*Attorneys for Movant*
*EPHRAIM MASHKABOV*

GOLDBERG SEGALLA LLP
P.O. Box 17220
Los Angeles, CA  90017
213-415-7200

9

AFFIRMATION IN SUPPORT OF MOTION TO VACATE DEFAULT JUDGMENT OR, IN THE ALTERNATIVE, TO DENY PLAINTIFFS' LEGALLY DEFICIENT DAMAGE CLAIMS

33721143.v1