UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

# JS-6

## CIVIL MINUTES – GENERAL

Case No.: 2:21-cv-00418-FWS-JPR                          Date: December 5, 2022
Title: Anthony Sanchez *et al.* v. Decision Diagnostics Corp. *et al.*

Present: **HONORABLE FRED W. SLAUGHTER, UNITED STATES DISTRICT JUDGE**

|  Melissa H. Kunig  | N/A |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendant: |
|---|---|
| Not Present | Not Present |

**PROCEEDINGS: (IN CHAMBERS) ORDER GRANTING DEFENDANT'S MOTION FOR DEFAULT JUDGMENT [48][50]**

Before the court is a Motion for Default Judgment ("Motion" or "Mot.") filed by Plaintiffs Anthony Sanchez and Thomas Tossavainen (collectively, "Plaintiffs"). (Dkts. 48, 50). The Motion is supported by the declaration of Plaintiffs' counsel Brian P. O'Connell ("O'Connell Decl.") and the exhibits attached thereto. (Dkt. 49). Defendants Decision Diagnostics Corp. and Keith Berman (collectively, "Defendants") oppose the Motion ("Opposition" or "Opp."). (Dkt. 55.) Plaintiffs also filed a Reply ("Reply"). (Dkt. 56). The court held a hearing on this matter on August 25, 2022. Based on the state of the record, as applied to the applicable law, the Motion is **GRANTED**.

## I.    Background

### A.    Factual Background

In the First Amended Complaint ("FAC"), Plaintiffs allege the following. Defendant Decision Diagnostics offers "prescription and non-prescription diagnostics and home testing products." (FAC ¶ 21.) Defendant Keith Berman served as the Chief Executive Officer, Chief Financial Officer, Secretary, and sole Director of Defendant Decision Diagnostics during the relevant period. (*Id.* ¶ 18.) In 2019 and 2020, Defendant Berman misappropriated hundreds of thousands of company funds for his personal use. (*Id.* ¶ 22.) As a result, both Defendant

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:21-cv-00418-FWS-JPR                    Date: December 5, 2022
Title: Anthony Sanchez *et al.* v. Decision Diagnostics Corp. *et al.*

Berman and Defendant Decision Diagnostics "were experiencing serious financial difficulty." (*Id.* ¶ 23.)

In February 2020, at the outset of the COVID-19 pandemic, Defendant Berman emailed a South Korean-based vendor to ask, "whether it was 'theoretically possible' to use the impedance technology that Decision Diagnostics used in glucose tests to test for COVID-19 in blood or saliva." (*Id.* ¶ 24.)  The vendor allegedly responded it did not know whether it was possible.  (*Id.*)  On March 2, 2022, Defendant Berman emailed a technical advisor and stated that the South Korean vendor determined Defendant Decision Diagnostics' "impedance technology" could be used to detect COVID-19 in blood.  (*Id.* ¶ 25.)  The technical advisor allegedly "expressed skepticism," to which Defendant Berman responded "[b]eats me how the Koreans plan to do this."  (*Id.*)

During the period from March 2020 to July 2020, Defendants allegedly "issued over one dozen materially false/and or misleading statements . . . regarding the Company's purported COVID-19 testing kit."  (*Id.* ¶ 26.)  Defendants issued these statements as press releases, interviews, and online message board posts.  (*Id.*)  The press releases are briefly summarized as follows:

- The March 3, 2020, Press Release stated "in a break-through discussed for the first time, Decision Diagnostics announces . . . the introduction of [its] new screening methodology for the Coronavirus (Covid19)."  (*Id.* ¶ 28 (alterations in original).)  The press release further stated the technology "is timely, simple to use, cost effective, and will be commercial ready in the summer of 2020" and that "government fast tracks and waivers begun [sic]."  (*Id.* (alterations in original).)  The press release also quoted Defendant Berman as stating this technology "should allow for 80% of the suspected carriers of Coronavirus to exit the quarantine systems in the places where Coronavirus is rampant" and Defendants "have the technology perfected which will take months off of the development schedule."  (*Id.* ¶ 29.)

- The March 4, 2020, Press Release stated "[t]his innovative, precise and cost effective [sic] product is timely, simple to use and most importantly will be

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:21-cv-00418-FWS-JPR                                           Date: December 5, 2022
Title: Anthony Sanchez *et al.* v. Decision Diagnostics Corp. *et al.*

commercial ready in the late summer of 2020."  (*Id.* ¶ 31.)  It also stated that "not only will the screening device provide the expected NEGATIVE or POSITIVE result (answer), but with each result provided, the answer will be accompanied by a probability statistic that will allow the user to determine the probability that the POSITIVE or NEGATIVE reported by the system may be a false rendering -- a false POSITIVE or a false NEGATIVE."  (*Id.*)

- The March 11, 2020, Press Release stated the "[f]irst uses of our kits will be in pharmacies, doctor's officers, clinics and urgent care centers, and long term [sic] care facilities.  We anticipate the sale of 420,000,000 kits in the first full year of commercial sale" with "Sales Beginning in Late 3Q 2020."  (*Id.* ¶ 33.)  It also contained a picture of the alleged testing device and testing kit box labeled "GenViro!™ COVID-19 Screen" with additional text indicating it included "the GenExpedient Universal Biosensor and 2 sensors to screen for the Coronavirus."  (*Id.*)

- The March 16, 2020, Press Release stated "[o]ur product, introduced to the world only 14 days ago has entered its crucial development stage.  We are awaiting release of blood samples from previously infected people in Daegu, Korea, so that we can complete testing and make a final report to the U.S. FDA so that we may secure our Emergency Waiver.  In the meantime, all other requests made by the FDA will be met this week and next."  (*Id.* ¶ 41.)  It also indicated "[o]nce we complete the Emergency Waiver portion of our launch and move into ramping up of commercial production, we plan to offer testing kits and meters to patients for testing at-home.  We expect the vast majority of the 420 million test kits we plan to manufacture in the first year of production will be sold to individuals for self-testing."  (*Id.*)

- The March 17, 2020, Press Release stated "[w]e are happy to inform all interested parties that we have raised our 12-month forecast to 525 million kits" and "[t]o date we have discussed our GenViro™ product with a big box pharmacy chain, a master medical products distribution company, a large commercial lab, and a home health

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:21-cv-00418-FWS-JPR                    Date: December 5, 2022
Title: Anthony Sanchez *et al.* v. Decision Diagnostics Corp. *et al.*

organization." (*Id.* ¶ 43.)  This press release also included the same image of the testing kit previously shown in the March 11, 2020, Press Release.  (*Id.* ¶ 43.)

- The March 18, 2020, Press Release stated "GenViro!™ has been validated at the company's R&D center in Daegu, Korea for the H5N1 virus and most recently the methodologically similar corona virus [sic]. . . .  While the company will still need to provide ample data and a full discussion of its unique technology in the coming days, the new FDA policy will provide a channel that will allow the company to manufacture test kits and put these kits into distribution almost immediately." (*Id.* ¶ 45.)

- The March 20, 2020, Press Release stated "[o]ur GenViro!TM Rapid Kit will offer Covid-19 test results for $6.95, test a patient in under a minute, require less than 2 microliters of whole blood derived from a finger prick." (*Id.* ¶ 47.)

- The March 23, 2020, Press Release stated the "company's methodology employs a simple, easy to use, swift (15 seconds and faster than Rapid) method for determining the presence of a virus in blood lyced into blood plasma." (*Id.* ¶ 49.)  It also claimed "[t]he method is safe, effective, and its biggest benefit to the healthcare system is that the device can be used to screen out the 97% or 98% of those tested that are negative for COVID-19. Our method is quicker, provides the desired result, is much cheaper, and effective." (*Id.*)

- The March 25, 2020, Press Release claimed Defendant Decision Diagnostics developed a second COVID-19 testing kit "[u]sing Antibody/Antigen Methodology as a Determination Test for Patients Who Previously Tested Positive for Covid-19." (*Id.* ¶ 51.)  The press release stated, "GenViro! Confirm will produce confirmatory results in less than a minute, also based on a small finger prick blood sample.  The method is safe, effective, and its biggest benefit to the healthcare system is that the device will confirm or not confirm a positive result, saving the patient the trouble of going to a hospital or reference laboratory for confirmation testing.  This is no small thing." (*Id.*)

**CIVIL MINUTES – GENERAL**                                                    **4**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:21-cv-00418-FWS-JPR                    Date: December 5, 2022
Title: Anthony Sanchez *et al.* v. Decision Diagnostics Corp. *et al.*

- The April 3, 2020, Press Release stated Defendant Decision Diagnostics filed an Emergency Use Authorization ("EUA") application with the FDA for its COVID-19 testing kit.  (*Id.* ¶ 53.)

- The April 6, 2020, Press Release referenced the EUA application and stated "[o]ur Swift kit will take a small amount of time to administer to a patient by a professional, such as poking a patient's finger-tip to achieve a drop of blood. Results will be available in about 15 seconds."  (*Id.*)

- The April 7, 2020, Press Release again referred to the EUA application, stating:

  We filed our final application with the FDA for EUA approval on April 3, 2020, taking out all reference to our at-home use Covid-19 kit.  We submitted the application late in the afternoon EDT, and incredibly we received our Pre-EUA Acknowledgement the morning of April 4, 2020, less than 24 hours later, and on the weekend.  We were so stunned by the rapid acknowledgment that we waited almost two days to inquire whether the acknowledgment was what we have come to know as the "Pre-EUA."  We were assured that this letter from the FDA and the device serial number assigned are exactly what we had been hoping for.

  As early as Saturday April 4, it was clear that the FDA review staff was aware that our methodology was different than those slower and older methods that had received FDA EUAs, or were in review.  Although the testing requested will be rigorous, it appears that testing will require 30 known Covid-19 positive samples and 30 known Covid-19 negative samples, all samples based on venous blood.  The company is now looking to contract with a hospital or commercial laboratory to complete this testing.

(*Id.* ¶ 55.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:21-cv-00418-FWS-JPR                         Date: December 5, 2022
Title: Anthony Sanchez *et al.* v. Decision Diagnostics Corp. *et al.*

- The April 23, 2020, Press Release stated that Defendant Decision Diagnostics had "two long conversations" with FDA officials and, as a result, the company "believe[d] we have completed discussions and come to an understanding with the FDA on all of the testing required to receive the EUA.  We plan to engage a specialty reference laboratory to complete this testing in the next 10 days.  Testing should take about a week."  (*Id.* ¶ 62.)

- The May 12, 2020, Press Release stated "[t]he Company's 'PharmaTech Solutions Swift Kit' testing kit is designed to provide the answers individuals and employers need" and was "engineered to provide accurate results on the spot with no delay." (*Id.* ¶ 66.)

- The May 21, 2020, Press Release stated "the company will update Decision Diagnostics and Pharma Tech Solutions websites with some of the most recent testing data related to GenViro Covid-19 :15 Swiftkit Test Kits" and quoted Defendant Berman saying Defendant Decision Diagnostics "plan[ned] to post . . . testing data for GenViro! Covid-19 :15 Swift kit test kits in the next few days" but "interested parties will be required to call the company . . . to receive a password(s) to review the files" and "answer a short list of questions" because Defendants' websites "were recently hacked by Cybercriminal in an attempt to discredit the company."  (*Id.* ¶ 68.)

- The June 4, 2020, Press Release indicated that Defendant Berman appeared on one of Vancouver's top-rated news and talk radio stations and on a live television talk show to discuss the testing kit.  It also quoted Defendant Berman as saying "[w]e will continue working toward an FDA authorized EUA for our GenViro! Covid-19 :15 second testing kits for both professional use and application, and also for at-home use.  Media interest such as this demonstrated by a well-respected news/talk station such as CKNW as well as WCBS-TV helps support [Defendants'] contention that [they] have developed a unique testing kit."  (*Id.* ¶ 81.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:21-cv-00418-FWS-JPR                    Date: December 5, 2022
Title: Anthony Sanchez *et al.* v. Decision Diagnostics Corp. *et al.*

- The June 12, 2020, Press Release was titled: "DECN Readies Its 2nd EUA Amendment With the FDA For Its GenViro! Swift Professional COVID-19 :15 Test Kit, and Also Announces Its Further Support For More and continued Worldwide COVID-19 Testing." (*Id.* ¶ 83.)

- The June 17, 2020, Press Release was titled: "DECN Files Provisional Patent For GenViro! Professional COVID-19 :15 Swift Kit, Adds Enhanced technology To Allow For Even Swifter Results" and also alleged "an expected 30% improvement in result reporting time from the current testing time of :15 second." (*Id.* ¶ 83.)

- The July 10, 2020, Press Release stated: "Test reporting for the GenViro! Finger stick kits are currently producing results at :10.5 seconds." (*Id.* ¶ 86.)

Plaintiffs allege that, at the time of publication, these press releases contained material misrepresentations because: Defendants had not developed any viable COVID-19 test or screening method and were not on track to develop this technology, (*id.* ¶¶ 30, 32, 34, 89); the press releases failed to indicate that this design was purely theoretical and that an internal technical advisor had expressed skepticism about its viability, (*id.* ¶¶ 25, 42); the purported testing device pictured was for testing glucose levels rather than COVID-19, (*id.* ¶¶ 25, 44); and Defendants never received EUA from the FDA, (*id.* ¶ 34).

In addition to the press releases, Defendant Berman allegedly used multiple aliases to post over 1,000 messages to the Investors Hub and Investors Hangout message boards in order to promote Defendant Decision Diagnostics and inflate the company's stock price. (*Id.* ¶¶ 35, 38, 74, 75, 78, 79.) Defendant Berman allegedly used these aliases "to respond publicly to investor doubts regarding the accuracy of the Company's public statements about its COVID-19 blood test." (*Id.* ¶ 38.)

On April 23, 2020, the SEC "issued an order suspending trading in DECN stock from April 24, 2020 to May 7, 2020, because of questions regarding the accuracy and adequacy of information in the marketplace about DECN." (*Id.* ¶ 64.) In response to the SEC investigation,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:21-cv-00418-FWS-JPR                    Date: December 5, 2022
Title: Anthony Sanchez *et al.* v. Decision Diagnostics Corp. *et al.*

Defendant Berman used his online aliases to coordinate the drafting of a "shareholder letter" to the SEC in order to pressure the SEC to end the investigation.  (*Id.* ¶¶ 65, 70-73.)

On December 15, 2020, the Department of Justice issued an indictment charging Defendant Berman with making false statements to the Department of Justice; violating Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5; and making false statements to the Securities and Exchange Commission ("SEC") in violation of 18 U.S.C. § 1001.  (*Id.* ¶ 90.)  The indictment was unsealed on December 18, 2020.  (*Id.*)  On December 17, 2020, the SEC initiated an action against Defendants seeking to enjoin Defendants based on their violations of Section 10(b) and Rule 10b-5.  (*Id.* ¶ 91.)  As a result of the DOJ indictment and SEC complaint, Defendant Decision Diagnostics' common share price fell $0.0735 per share, approximately 65.3%, from $0.1125 per share on December 17, 2022, to $0.039 at the close of business on December 18, 2022.  (*Id.* ¶ 92.)

Plaintiffs purchased or otherwise acquired Defendant Decision Diagnostics stock between the date on which Defendants began issuing material misstatements, approximately March 3, 2020, and the date it was revealed that "the Company had been disseminating misrepresented statements about its purported COVID-19 testing kit," approximately December 17, 2020.  (*Id.* ¶¶ 95, 101, 113.)  As a result, Plaintiffs suffered damages in connection with the stock purchases and acquisitions.  (*Id.* ¶ 113.)

**B.     Procedural Background**

Plaintiffs filed suit on January 15, 2021.  (*See* Dkt. 1.)  Plaintiffs allege two causes of action: (1) violations of Section 10(b) of the Exchange Act, 15 U.S.C. § 78(j) and Rule 10b-5, 17 C.F.R. § 240.10b-5, against both Defendants, (FAC ¶¶ 104-13); and (2) violations of Section 20(a) of the Exchange Act, 15 U.S.C. § 78t, against Defendant Berman, (*id.* ¶¶ 114-25).

Plaintiffs requested that the Clerk of Court enter default on February 11, 2022, as to both Defendants.  (Dkt. 41.)  The clerk entered default as to both Defendants the same day.  (Dkt. 42.)  On April 27, 2022, Plaintiffs filed a notice of dismissal of their class action claims without

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:21-cv-00418-FWS-JPR                    Date: December 5, 2022
Title: Anthony Sanchez *et al.* v. Decision Diagnostics Corp. *et al.*

prejudice.  (Dkt. 46.)  Plaintiffs then filed the Motion against Defendants on May 9, 2022.  (Mot. at 2.)  Defendants untimely filed the Opposition on June 21, 2022.  (*See* Dkt. 55.)  Plaintiffs then filed a Reply.  (Dkt. 56.)  The court held a hearing on this matter on August 18, 2022, and counsel for both Plaintiffs and Defendants appeared.  (*See* Dkt. 59.)

## II.   Defendants' Motion to Set Aside Entry of Default

Before analyzing Plaintiffs' Motion, the court addresses the relief requested in Defendants' Opposition.  Although Defendants do not explicitly discuss the legal standard or basis to set aside an entry of default in the Opposition, the court notes that the declaration of Defendant's counsel states "Defendants respectfully request that their default be vacated pursuant to Rule 55 of the Federal Rules of Civil Procedure, and that they be allowed to interpose an answer in the form attached hereto as Exhibit C."  (Herzog Decl. ¶ 6.)  Additionally, Defendants reiterated at the hearing that they were requesting this relief.  (*See* Dkt. 59.)  Thus, the court construes the Opposition to include a motion to set aside the entry of default.  *See Brown Jordan Int'l Inc. v. Boles*, 375 F. App'x 700, 701 (9th Cir. 2001) ("[T]he label on a motion has little or no significance.").

Federal Rule of Civil Procedure Rule 55(c) provides that a "court may set aside an entry of default for good cause."  Fed. R. Civ. P. 55(c).  "The 'good cause' standard that governs vacating an entry of default under Rule 55(c) is the same standard that governs vacating a default judgment under Rule 60(b)."  *Franchise Holding II, LLC. v. Huntington Rests. Grp., Inc.*, 375 F.3d 922, 925 (9th Cir. 2004).  In analyzing whether a defendant has shown good cause to set an aside an entry of default, the court must consider three factors set forth by the Ninth Circuit in *Falk v. Allen*, 739 F.2d 461 (9th Cir. 1984): "(1) whether the party seeking to set aside the default engaged in culpable conduct that led to the default; (2) whether it had no meritorious defense; or (3) whether reopening the default would prejudice the other party."  *United States v. Signed Personal Check No. 730 of Yubran S. Mesle*, 615 F.3d 1085, 1091 (9th Cir. 2010) (quoting *Franchise Holding II*, 375 F.3d at 925-26) (alterations and internal quotation marks omitted).  "Because this three-factor test is disjunctive, 'a finding that any one of the three factors is true is sufficient reason for the district court to refuse to set aside the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:21-cv-00418-FWS-JPR                          Date: December 5, 2022
Title: Anthony Sanchez *et al.* v. Decision Diagnostics Corp. *et al.*

default.'" *ABC Arbitrage S.A. v. Caen*, 2018 WL 5816114, at * 2 (C.D. Cal. June 25, 2018) (quoting *Mesle*, 615 F.3d at 1091) (alteration and citation omitted); *see also Brandt v. Am. Bankers Ins. Co. of Flor.*, 653 F.3d 1108, 1112 (9th Cir. 2011) ("[A]lthough a district court should consider the *Falk* factors in ruling on a motion to set aside default judgment, 'the district court is free to deny relief if any of the three factors is true.'") (quoting *Franchise Holding II*, 375 F.3d at 926) (alternation and internal quotation marks omitted).  The party seeking to set aside default bears the burden of showing that the *Falk* factors favor setting aside the default. *See Franchise Holding II*, 375 F.3d at 926.

However, "judgment by default is a drastic step appropriate only in extreme circumstances" and "a case should, whenever possible, be decided on the merits." *Mesle*, 615 F.3d at 1091 (quoting *Falk*, 739 F.2d at 463.  Crucially, "[w]here timely relief is sought from a default and the movant has a meritorious defense," any doubts "should be resolved in favor of the motion to set aside default so that cases may be decided on their merits." *Mendoza v. Wight Vineyard Mgmt.*, 783 F.2d 941, 945 (9th Cir. 1986) (quoting *Schwab v. Bullock's Inc.*, 508 F.2d 353, 355 (9th Cir. 1974)).

The court discusses each of the *Falk* factors in turn.

**a.    First *Falk* Factor: Culpability**

In the declaration of Defendants' counsel, Mr. Herzog states:

> Shortly after this action was commenced I communicated with plaintiffs' counsel to advise them of, among other things the Defendants' lack of meaningful financial resources and the absence of any Directors & Officers' liability insurance to respond to these allegations.  After a significant delay, plaintiffs' counsel nevertheless decided to proceed with this action.  At that time of my initial discussion, the trial of the DOJ criminal action was approaching (the SEC civil action having been stayed in favor of the DOJ case).  In view of the significant Fifth Amendment issues if Mr. Berman was required to proceed with this matter, or the legal consequences of invoking his Fifth Amendment rights, as well as the potential collateral estoppel effect of

**CIVIL MINUTES – GENERAL**                                              **10**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:21-cv-00418-FWS-JPR                    Date: December 5, 2022
Title: Anthony Sanchez *et al.* v. Decision Diagnostics Corp. *et al.*

the DOJ action, which given speedy Trial Act requirements was expected to
be resolved well before this matter, the decision was made not to prioritize the
defense of this action.

(Herzog Decl. ¶ 4.)  Additionally, at the hearing on the Motion, Defendants argued that the
decision to oppose the Motion was a "strategic decision" based on the limited resources at the
Defendants' disposal.  (*See* Dkt. 59.)  In response, Plaintiffs argue that Defendants' conduct was
culpable because Defendants chose not to respond to the Complaint or otherwise participate in
the suit in good faith.  (Reply at 6.)

"A defendant's conduct is culpable if the defendant 'has received actual or constructive
notice of the filing of the action and intentionally failed to answer.'"  *Francois & Co., LLC v.
Nadeau*, 334 F.R.D. 588, 596 (C.D. Cal. 2020) (quoting *TCI Grp. Life Ins. Plan v. Knoebber*,
244 F.3d 691, 697 (9th Cir. 2001), *overruled on other grounds by Egelhoff v. Egelhoff ex rel.
Breiner*, 532 U.S. 141 (2001)).  In this context, an intentional failure to answer means "there is
no explanation of the default inconsistent with a devious, deliberate, willful, or bad faith failure
to respond."  *TCI Grp. Life Ins. Plan*, 244 F.3d at 698.

By contrast, if the defendant offers a "credible, good faith explanation negating any
intention to take advantage of the opposing party, interfere with judicial decision-making, or
otherwise manipulate the legal process," the conduct is not intentional, "and is therefore not
necessarily culpable or inexcusable."  *Id.* at 697-98.  "In evaluating a defendant's alleged
culpability, courts are to accept the defendant's uncontested factual allegations accompanying
the motion to set aside default as true."  *Nadeau*, 334 F.R.D. at 596 (citing *Falk*, 739 F.2d at
464).

In this case, the court finds that Defendants' failure to respond to the Complaint was
culpable.  Defendants' counsel acknowledges that Defendants were aware of this suit, as
evidenced by Defendants' stipulation to extend the time to respond to the Complaint, (*see* Dkt.
21), and counsel's previous communications with Plaintiffs' counsel.  (*See* Herzog Decl. ¶¶ 4,
6.)  Defendants are also represented by counsel and thus may be considered to have awareness
of the consequences of failing to respond to the Complaint.  *See TCI Grp.*, 244 F.3d at 699, n.6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:21-cv-00418-FWS-JPR                           Date: December 5, 2022
Title: Anthony Sanchez *et al.* v. Decision Diagnostics Corp. *et al.*

("[I]t is fair to expect that individuals who have previously been involved in litigation or have consulted with a lawyer appreciate the consequences of failing to answer and do so only if they see some advantage to themselves."); *Benny v. Pipes*, 799 F.2d 489, (finding defendants' failure to answer the complaint culpable where defendants filed several motions to extend the time to respond and "prove[d] conclusively that they had actual notice of the complaint and were aware of its contents"). Defendants concede "the decision was made not to prioritize the defense of this action." (Herzog Decl. ¶ 4.)

Defendants also failed to provide a sufficient "credible, good faith explanation negating any intention to take advantage of the opposing party, interfere with judicial decision-making, or otherwise manipulate the legal process." *TCI Grp.*, 244 F.3d at 697-98. Instead, Defendants conceded at the hearing that their failure to respond to the Complaint was a "strategic decision" and that there were alternative avenues available to avoid default. For example, although Defendants' counsel cites "significant Fifth Amendment issues" if Defendant Berman was required to proceed with this matter, Defendants conceded they could have addressed these issues by moving to stay this action pending resolution of the criminal proceedings, as they did in the concurrent SEC civil proceedings. (*See* Dkt. 59; Herzog Decl. ¶ 4.) Defendants did not do so. (*See generally* Dkt.) In sum, the court finds "there is no explanation of the default inconsistent with a devious, deliberate, willful, or bad faith failure to respond." *TCI Grp.*, 244 F.3d at 698. Accordingly, the court concludes Defendants' failure to answer was culpable.

Although this finding is sufficient to deny the request to set aside the default, the court proceeds to address the other two factors. *See Brandt*, 653 F.3d at 1112 ("A district court may exercise its discretion to deny relief to a defaulting defendant based solely upon a finding of defendant's culpability, but need not.").

**b.     Second *Falk* Factor: Meritorious Defenses**

Defendants' counsel also asserts that Defendants possess "viable defenses to the individual damage claims now being asserted." (Herzog Decl. ¶ 7.) In particular, Defendants argue that Plaintiffs may not recover damages from stock purchases made after the SEC announced an interim suspension of Defendant Decision Diagnostics' stock on April 23, 2020,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:21-cv-00418-FWS-JPR                                    Date: December 5, 2022
Title: Anthony Sanchez *et al.* v. Decision Diagnostics Corp. *et al.*

and Plaintiffs seek impermissible "holder" damages barred by *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723 (1975).  (*Id.*; Opp. at 5-6.)

In the Reply, Plaintiffs argue that they may recover damages from stock purchased after the SEC's trading suspension because Defendants continued to make misleading statements, and "'it is reasonable for plaintiffs' to rely upon defendants' statements following the release' of adverse news."  (Reply at 4 (citing *Alaska Elec. Pension Fund v. Pharmacia Corp.*, 554 F.3d 342, 351 (3d Cir. 2009) (alterations omitted).)  Plaintiffs also argue that *Blue Chip Stamps* is inapposite because Plaintiffs purchased stock during the relevant class period.  (*Id.* at 3.)

To justify vacating a default, a defendant must "present the district court with specific facts that would constitute a defense," instead of a "mere general denial without facts to support it."  *See Franchise Holding II*, 375 F.3d at 926.  The defendant's burden as to this factor "is not extraordinarily heavy," *TCI Grp.*, 244 F.3d at 700, and requires only that the defendant "allege sufficient facts that, if true, would constitute a defense."  *Mesle*, 615 F.3d at 1094.

In this case, Defendants assert two possible legal defenses.  First, Defendants argue that Plaintiffs cannot utilize the presumption of reliance outlined in *Basic v. Levinson*, 485 U.S. 224 (1988), to plead their Section 10(b) and Rule 10b-5 claim because the SEC's April 23, 2020, Order of Suspension of Trading and accompanying press release rebutted this presumption.[1] (Herzog Decl. ¶¶ 9-10, Exh. E.)  Defendants specifically argue that "[t]he SEC trading suspension and warning against any reliance on statements that had been issued by or which would in the future be issued by Decision Diagnostics rebutted any perspective [sic] fraud on the market presumption as a matter of law."  (Opp. at 3.)  Additionally, Defendants note "the market reacted dramatically and immediately to the SEC's trading suspension," falling 37.5% from the start of the trading suspension on April 23, 2020, to the time trading resumed on May 8, 2023.  (*Id.* at 4.)

---

[1] To the extent Defendants challenge Plaintiffs' leakage theory of loss causation, the court finds this theory cognizable and addresses it in section III.B.2.a, *infra*.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:21-cv-00418-FWS-JPR                                 Date: December 5, 2022
Title: Anthony Sanchez *et al.* v. Decision Diagnostics Corp. *et al.*

The court finds that Defendants have not presented sufficient law or facts to rebut the presumption of reliance.  To rely the fraud-on-the-market theory, Plaintiffs must demonstrate: "(1) that the alleged misrepresentations were publicly known, (2) that they were material, (3) that the stock traded in an efficient market, and (4) that the plaintiff traded the stock between the time the misrepresentations were made and when the truth was revealed." *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 269 (2014).  Defendants set forth insufficient facts rebutting these elements.  Defendants also cite no binding authority indicating that Plaintiffs could not rely on Defendants' misrepresentations after the SEC Order.  (*See generally* Opp.)  Instead, Defendants cite only non-binding authority where courts concluded reliance was not reasonable after the company *itself* issued a corrective disclosure explicitly warning investors not to rely on its previous statements.  *See, e.g.*, *Semerenko v. Cedant Corp.*, 223 F.3d 165, 181 (3d Cir. 2000) (finding class did not demonstrate reasonable reliance where the company itself issued a corrective disclosure warning investors not to rely on its previous financial statements); *Hayes v. MagnaChip Semiconductor Corp.*, 2016 WL 7406418, at *7 (N.D. Cal. Dec. 22, 2016) (same).

In this case, neither the SEC nor Defendants issued a corrective disclosure and the SEC's Order did not contain any comparable language explicitly warning investors not to rely on Defendants' past statements.  The Order stated only that "[t]he Commission temporarily suspended trading in the securities of DECN because of questions regarding the accuracy and adequacy of information in the marketplace since at least March 3, 2020" and "caution[ed] brokers, dealers, shareholders, and prospective purchasers that they should carefully consider the foregoing information along with all other currently available information and any information subsequently issued by the company." (Herzog Decl., Exh. E.)  Absent explicit language in the SEC Order advising investors of fraud or a corrective disclosure from the company, the court finds Defendants have not presented sufficient facts for the purposes of setting aside the default to demonstrate that this investigation "sever[ed] the link between the alleged misrepresentation and either the price received (or paid) by the plaintiff, or his decision to trade at a fair market price . . . ." *Halliburton*, 573 U.S. at 269 (quoting *Basic*, 485 U.S. at 248); *cf. Loos v. Immersion Corp.*, 762 F.3d 880, 890 (9th Cir. 2014) (stating in context of loss

**CIVIL MINUTES – GENERAL**                                                    **14**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:21-cv-00418-FWS-JPR                    Date: December 5, 2022
Title: Anthony Sanchez *et al.* v. Decision Diagnostics Corp. *et al.*

causation that "[t]he announcement of an investigation does not 'reveal' fraudulent practices to the market" and the investigation "simply puts investors on notice of a potential future disclosure of fraudulent conduct").

Moreover, Plaintiffs allege the Defendants contested the relevance of the SEC investigation and continued to make reassuring material misrepresentations in press releases issued in May, June, and July—after the suspension of trading was lifted.  (*See, e.g.*, FAC ¶¶ 66, 68, 83. 86.)  *Cf. In re Merck & Co., Inc. Sec. Derivative & ERISA Litig.*, 543 F.3d 150, 166 (3d Cir. 2008) (stating in inquiry notice context that "[r]eassurances can dissipate apparent storm warnings if an investor of ordinary intelligence would reasonably rely on them to allay the investor's concerns").  Accordingly, the court finds Defendants presented insufficient law or facts indicating Plaintiffs' reliance on these subsequent misrepresentations was unreasonable and concludes Defendants have not alleged sufficient facts to constitute a meritorious defense as to reliance.

Second, Defendants argue Plaintiffs seek impermissible "holder" damages barred by *Blue Chip Stamps*.  (Opp. at 4-5.)  The court finds this case inapplicable.  In *Blue Chip Stamps*, the Supreme Court confined private actions under Rule 10b-5 to actual purchasers or sellers of securities during the relevant period and barred actions by shareholders who held or failed to sell shares in reliance on misrepresentations or omissions.  *See* 421 U.S. at 747 ("The purchaser-seller rule has maintained the balances built into the congressional scheme by permitting damage actions to be brought only by those persons whose active participation in the marketing transaction promises enforcement of the statute without undue risk of abuse of the litigation process and without distorting the securities market.") (quoting *Blue Chip Stamps v. Manor Drug Stores*, 492 F.2d 136, 141 (9th Cir. 1973) (Hufstedler, J., dissenting)).  Here, as Plaintiffs note in Reply, Plaintiffs did purchase stock during the relevant period allegedly in reliance on Defendants' misrepresentations.  (*See* O'Connell Decl., Exh. 1 & 2.)  Thus, Plaintiffs are also not barred by the *Birnbaum* rule outlined in *Blue Chip Stamps*.  Accordingly, because Defendants have not set forth facts or law sufficient to constitute a meritorious defense, the court concludes this factor also weighs against setting aside the entry of default.

**CIVIL MINUTES – GENERAL**                                    **15**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:21-cv-00418-FWS-JPR                    Date: December 5, 2022
Title: Anthony Sanchez *et al.* v. Decision Diagnostics Corp. *et al.*

### c.      Third *Falk* Factor: Prejudice to Plaintiffs

Defendant argues that Plaintiffs cannot claim prejudice based on any delay resulting from Defendant Berman's pending criminal charges because Plaintiffs knew of the criminal charges before the suit began.  (Opp. at 7.)  Plaintiffs argue that setting aside the default would prejudice Plaintiffs because Defendants seek to postpone the case until after Defendant Berman's criminal trial and Plaintiffs will not otherwise be able to recover monetary damages.  (Reply at 5.)

An order setting aside a default judgment prejudices the plaintiff where the order hinders the plaintiff's ability to pursue their claim.  *See TCI Grp.*, 244 F.3d at 701.  A plaintiff will not be prejudiced "where setting aside default merely delays resolution of the case" or compels the plaintiff "to litigate their claims on the merits."  *Id.*; *see also Bateman v. U.S. Postal Serv.*, 231 F.3d 1220, 1225 (9th Cir. 2000) (finding that plaintiff would not be prejudiced by order setting aside judgment because order would only deprive him of "a quick victory").  However, a delay may be prejudicial if its results in "tangible harm such as loss of evidence, increased difficulties of discovery, or greater opportunity for fraud or collusion."  *TCI Grp.*, 244 F.3d at 701 (quoting *Thompson v. Am. Home Assurance Co.*, 95 F.3d 429, 433-34 (6th Cir. 1996)).

Here, the court finds Plaintiffs would not be prejudiced because setting aside the default would not result in "greater harm than simply delaying resolution of the case."  *TCI Grp.*, 244 F.3d at 701.  Although Plaintiffs argue that delaying may impact their ability to recover, Plaintiffs present insufficient evidence or legal authority for this proposition and do not otherwise cite any possible loss of evidence, increased discovery difficulties, or possible fraud. (*See generally* Mot.; Reply.)  Accordingly, the court concludes this factor weighs in favor of setting aside the entry of default.

### d.      Conclusion Regarding *Falk* Factors

In sum, although setting aside the default would not prejudice Plaintiffs, the court finds Defendants' conduct was culpable and Defendants presented insufficient meritorious defenses. While judgment by default is a drastic step appropriate only in extreme circumstances," the court finds such circumstances present here based on Defendants' deliberate decision to avoid

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:21-cv-00418-FWS-JPR                                Date: December 5, 2022
Title: Anthony Sanchez *et al.* v. Decision Diagnostics Corp. *et al.*

participating in this litigation. *See Mesle*, 615 F.3d at 1091. Accordingly, the court **DENIES** Defendants' construed motion to vacate the entry of default.

**III.   Plaintiffs' Motion for Default Judgment**

  **A.   Legal Standard**

  **1.   Procedural Requirements for Default Judgment**

    A party seeking a default judgment must satisfy the procedural requirements of the Federal Rules of Civil Procedure and Local Rules. Under Federal Rule of Civil Procedure 55(b), a party may only seek a default judgment from the court following an entry of default by the Clerk of Court. Fed. R. Civ. P. 55(b). Additionally, the "default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c). Finally, the party also must comply with Local Rule 55-1 by submitting a declaration alongside the application for default judgment that includes the following information:

> (1) when and against what party the default was entered; (2) the identification of the pleading to which default was entered; (3) whether the defaulting party is an infant or incompetent person, and if so, whether that person is represented by a guardian, committee, conservator, or other representative; (4) that the Servicemembers Civil Relief Act (50 U.S.C. App. § 521) does not apply; and (5) that notice has been served on the defaulting party, if required by F.R.Civ.P. 55(b)(2).

L.R. 55-1.

  **2.   Substantive Requirements to Grant Default Judgment**

    Where a party seeking default judgment meets the procedural requirements discussed above, the court then considers the factors set forth by the Ninth Circuit in *Eitel v. McCool*, 782

**CIVIL MINUTES – GENERAL**                                                          **17**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:21-cv-00418-FWS-JPR                    Date: December 5, 2022
Title: Anthony Sanchez *et al.* v. Decision Diagnostics Corp. *et al.*

F.2d 1470 (9th Cir. 1986), to determine whether to grant the requested default judgment.  In *Eitel*, the Ninth Circuit stated:

> Factors which may be considered by courts in exercising discretion as to the entry of a default judgment include: (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Id.* at 1471-72.

"The district court's decision whether to enter a default judgment is a discretionary one." *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980).  "The general rule of law is that upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *TeleVideo Sys. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987) (quoting *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977) (internal quotation marks and citations omitted)); *see also Fair Hous. of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002) ("With respect to the determination of liability and the default judgment itself, the general rule is that well-pled allegations in the complaint regarding liability are deemed true.").

**B.    Discussion**

**1.    Jurisdiction and Venue**

Before entering default judgment against a non-appearing party, district courts have an affirmative duty to consider subject matter jurisdiction, personal jurisdiction, and service.  *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999) ("To avoid entering a default judgment that can later be successfully attacked as void, a court should determine whether it has the power, i.e., the jurisdiction, to enter the judgment in the first place.").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:21-cv-00418-FWS-JPR                    Date: December 5, 2022
Title: Anthony Sanchez *et al.* v. Decision Diagnostics Corp. *et al.*

As a threshold matter, the court finds it has subject matter jurisdiction over Plaintiffs' securities claims pursuant to 15 U.S.C. § 78aa and 28 U.S.C. § 1131. *See* 15 U.S.C. § 78aa ("The district courts of the United States . . . shall have exclusive jurisdiction of violations of this chapter or the rules and regulations thereunder, and of all suits in equity and actions at law brought to enforce any liability or duty created by this chapter or the rules and regulations thereunder."). The court also finds venue is proper in this case pursuant to 15 U.S.C. § 78aa because Defendants conduct business in this district. *See id.* ("Any suit or action to enforce any liability or duty created by this chapter or rules and regulations thereunder, or to enjoin any violation of such chapter or rules and regulations, may be brought in any such district or in the district wherein the defendant is found or is an inhabitant or transacts business, and process in such cases may be served in any other district of which the defendant is an inhabitant or wherever the defendant may be found."). (*See also* FAC ¶14.)

### 2.     Service of Process

The court also finds Plaintiffs properly served Defendants in accordance with Federal Rules of Civil Procedure 4 and 5. Plaintiffs originally effectuated service on March 18, 2021, by serving Defendant Berman in his capacity as an individual and an officer of Defendant Decision Diagnostics Corporation authorized to accept service pursuant to California Code of Civil Procedure § 416.10(b). (Dkt. 22-2.) *See also* Fed. R. Civ. P. 4(e)(2); Fed. R. Civ. P. 4(h)(1)(A). After filing the FAC, Plaintiffs filed additional proof of service on February 9, 2022, indicating they served Defendants by mailing a copy of the summons and the First Amended Complaint to the addresses of Defendants' counsel pursuant to Federal Rule of Civil Procedure 5(b) and Local Rule 5-3. (*See* Dkt. 39, Exh. B.) *See also* Fed. R. Civ. P. 5(b) ("If a party is represented by an attorney, service under this rule must be made on the attorney unless the court orders service on the party."). Accordingly, the court concludes Defendants have been properly served.

### 3.     Procedural Requirements

Finally, the court finds Plaintiffs have met the procedural requirements for default judgment under Local Rule 55-1. The declaration of Plaintiffs' counsel demonstrates that the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:21-cv-00418-FWS-JPR                    Date: December 5, 2022
Title: Anthony Sanchez *et al.* v. Decision Diagnostics Corp. *et al.*

Clerk entered default against Defendant Decision Diagnostics Corp. and Defendant Berman on February 11, 2022, as to the FAC. (O'Connell Decl. ¶ 6; *see also* Dkt. 42.) The declaration also indicates that Defendants are neither minors, incompetent persons, nor persons subject to the Servicemembers Civil Relief Act, 50 U.S.C. App. § 521. (O'Connell Decl. ¶ 7.) Additionally, Plaintiffs' requested relief—damages sustained by Plaintiffs "by reasons of the acts and transactions alleged herein" and prejudgment and postjudgment interest—does not differ in kind or exceed in amount the relief requested in the Complaint. *See* Fed. R. Civ. P. 54(c). (*See also* FAC, Prayer for Relief.) Accordingly, the court concludes Plaintiffs have satisfied the procedural requirements for default judgment. Because Plaintiffs have met the procedural requirements for default judgment, the court next addresses the *Eitel* factors. *See Eitel*, 782 F.2d at 1471-72.

### 4. Substantive Requirements

Under *Eitel*, the factors that a court may consider in granting entry of a default judgment include: "(1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits." 782 F.2d at 1471-72.

### i. Possibility of Prejudice to Plaintiffs

The first *Eitel* factor "considers whether the plaintiff will suffer prejudice if default judgment is not entered." *PepsiCo, Inc. v. California Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002). In this case, Plaintiffs seek damages stemming from Defendants' alleged violations of federal securities law. (*See* Mot. at 1-2.) Plaintiffs argue they will be prejudiced if default judgment is not entered because they will not otherwise be able to recover these damages given Defendant Berman's pending criminal charges and SEC civil action. (*Id.* at 10.)

The court observes that Defendants have twice participated in this action: first, by signing a stipulation to extend the time to answer the FAC, (*see* Dkt. 21); and second, by filing an

**CIVIL MINUTES – GENERAL**                                        **20**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:21-cv-00418-FWS-JPR                          Date: December 5, 2022
Title: Anthony Sanchez *et al.* v. Decision Diagnostics Corp. *et al.*

untimely Opposition to the Motion, (*see generally* Opp.). However, as discussed above, Defendants have otherwise failed to meaningfully participate in this action. (*See generally* Dkt.) In particular, the court notes that Defendants stated this non-participation was the result of a "strategic decision" to prioritize other pending actions. (*See* Dkt. 59; Herzog Decl. ¶ 4.) Because Defendants elected not to participate in this action, the court finds Plaintiffs would "likely be without other recourse for recovery" absent a default judgment, and thus may be prejudiced. *See PepsiCo*, 238 F. Supp. 2d at 1177. Accordingly, the court concludes the first *Eitel* factor weighs in favor of granting default judgment.

> **ii.    Merits of Plaintiffs' Substantive Claim and Sufficiency of the Complaint**

The second and third *Eitel* factors consider the substantive merits of a claim and the sufficiency of the operative complaint. *Eitel*, 782 F.2d at 1471; *see also Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978) (stating on appeal of default judgment that "[t]he issue here is whether the allegations in the complaint are sufficient to state a claim"); *Dr. JKL Ltd. v. HPC IT Educ. Ctr.*, 749 F. Supp. 2d 1038, 1048 (N.D. Cal. 2010) ("Under an *Eitel* analysis, the merits of plaintiff's substantive claims and the sufficiency of the complaint are often analyzed together."). For the purposes of evaluating a motion for default judgment, "all well-pleaded facts in the complaint are taken as true, except those relating to damages." *PepsiCo*, 238 F. Supp. 2d at 1177 (quoting *TeleVideo*, 826 F.2d at 917-18).

Here, Plaintiffs allege two claims under Section 10(b) and Section 20(a) of the Securities and Exchange Act of 1934. The court assesses each claim in turn.

> a.    10b-5 Claim

Plaintiffs first allege that Defendants violated Section 10(b) of the Securities Exchange Act of 1934 and 17 C.F.R. § 240.10b-5, or Rule 10b-5. (*See* FAC ¶¶ 104-13.) To state a claim under Rule 10b-5, a plaintiff must allege: "(1) a material misrepresentation or omission; (2) made with scienter; (3) in connection with the purchase or sale of a security; (4) reliance on the misrepresentation or omission; (5) economic loss; and (6) loss causation." *In re BofI Holding, Inc. Sec. Litig.*, 977 F.3d 781, 786 (9th Cir. 2020) (citing *Halliburton Co.*, 573 U.S. at

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:21-cv-00418-FWS-JPR                          Date: December 5, 2022
Title: Anthony Sanchez *et al.* v. Decision Diagnostics Corp. *et al.*

267), *cert. denied sub nom. BofI Holding, Inc. v. Houston Mun. Emps. Pension Sys.*, 142 S. Ct. 71 (2021).  Claims brought under Rule 10b-5 and Section 10(b) must satisfy the heightened pleading requirements of Rule 9(b).  *Ore. Pub. Emps. Ret. Fund v. Apollo Grp. Inc.*, 774 F.3d 598, 605 (9th Cir. 2014) ("Rule 9(b) applies to all elements of a securities fraud action" brought under Section 10(b) and Rule 10b-5).

Under Federal Rule of Civil Procedure 9(b), allegations of "fraud or mistake must state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).  Accordingly, "the circumstances constituting the alleged fraud [must] be specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong."  *Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 558 (9th Cir. 2010) (alteration in original) (citation and internal quotation marks omitted).  As distinguished from allegations pertaining to state of mind, "[a]verments of fraud must be accompanied by the who, what, when, where, and how" of the alleged fraudulent activity.  *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (citation and internal quotation marks omitted).  Allegations subject to Rule 9(b)'s heightened pleading requirement must also "set forth what is false or misleading about a statement, and why it is false."  *Id.* (quoting *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994)).  However, "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  Fed. R. Civ. P. 9(b).

The Private Securities Litigation Reform Act ("PSLRA") also requires private securities complaints to "specify each statement alleged to have been misleading [and] the reason or reasons why the statement is misleading."  *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 321 (2007) (alteration in original) (quoting 15 U.S.C. § 78u–4(b)(1)).  "A statement can constitute a material misrepresentation giving rise to Section 10(b) or Rule 10b-5 liability if there is no reasonable basis for the speaker's belief in the statement's accuracy or if the speaker is aware of undisclosed facts tending seriously to undermine the statement's accuracy."  *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 390 (9th Cir. 2010).

**CIVIL MINUTES – GENERAL**                                                        **22**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:21-cv-00418-FWS-JPR                                Date: December 5, 2022
Title: Anthony Sanchez *et al.* v. Decision Diagnostics Corp. *et al.*

Accepting the FAC's factual allegations as true, the court finds Plaintiffs sufficiently pleaded violations of Section 10(b) and Rule 10b-5.  *See Geddes*, 559 F.2d at 560.  First, Plaintiffs identify with specificity numerous misleading statements by Defendants related to the purported at-home COVID-19 test in the form of press releases, interviews, and posts on various websites.  (*See, e.g.*, FAC ¶¶ 28, 29, 33, 49, 57, 81, 83, 86.)  Plaintiffs also sufficiently specify why each statement was misleading.  *See Tellabs*, 551 U.S. at 321.  In particular, Plaintiffs allege that Defendants' statements purported to have developed a working COVID-19 blood testing kit but "failed to disclose the truth that Decision Diagnostics had not developed" any such test.  *See Berson v. Applied Signal Tech., Inc.*, 527 F.3d 982, 985 (9th Cir. 2008) ("[A] statement is misleading if it would give a reasonable investor the impression of a state of affairs that differs in a material way from the one that actually exists.").

Plaintiffs also adequately pleaded materiality by alleging that: (1) a reasonable investor would consider information related to whether the company had actually developed a testing kit as important in deciding whether to purchase Defendant Decision Diagnostics' stock; and (2) Defendants were "aware of undisclosed facts tending seriously to undermine the statement's accuracy," namely that no such testing kit existed.  *In re Oracle Corp. Sec. Litig.*, 627 F.3d at 390; s*ee also Basic v. Levinson*, 485 U.S. 224, 232 (1988) ("[T]o fulfill the materiality requirement 'there must be a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available.'") (quoting *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 449 (1976)).

Second, Plaintiffs sufficiently allege Defendants acted with scienter and "made false or misleading statements either intentionally or with deliberate recklessness."  *See Zucco Partners, LLC v. Digimarc Corp.*, 552. F.3d 981, 990 (9th Cir. 2009).  In particular, Plaintiffs allege Defendant Berman, as the company's CEO, knew that the company could not develop the COVID-19 test in the timeframe alleged, had not developed a prototype COVID-19 test, had not received, and was unlikely to receive EUA approval from the FDA due to a lack of underlying clinical data.  (*See, e.g.*, FAC ¶¶ 24-27, 30, 32, 34, 42, 44, 81, 83, 86.)  Plaintiffs

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:21-cv-00418-FWS-JPR                    Date: December 5, 2022
Title: Anthony Sanchez *et al.* v. Decision Diagnostics Corp. *et al.*

also pleaded that Defendant Berman's public statements regarding the COVID-19 test were inconsistent with his private statements and internal communications.  (*Id.* ¶¶ 59, 61, 89, 108-09.)  These allegations are sufficient to raise "a strong inference that defendant acted with the required state of mind" as required under the PSLRA.  *See* 15 U.S.C. § 78u-4; *Nursing Home Pension Fund, Local 144 v. Oracle Corp.*, 380 F.3d 1226, 1230 (9th Cir. 2004) ("The most direct way to show both that a statement was false when made and that the party making the statement knew that it was false is via contemporaneous reports or data, available to the party, which contradict the statement.").

Third, Plaintiffs adequately allege the fraudulent conduct occurred in connection with the purchase or sale of a security.  "Where the fraud alleged involves public dissemination in a document such as a press release, annual report, investment prospectus or other such document on which an investor would presumably rely, the 'in connection with' requirement is generally met by proof of the means of dissemination and the materiality of the misrepresentation or omission."  *Sec. & Exch. Comm'n v. Rana Rsch., Inc.*, 8 F.3d 1358, 1362 (9th Cir. 1993).  As discussed above, the court finds Plaintiffs adequately allege the materiality of the misrepresentations at issue.  In addition, Plaintiffs allege Defendants publicly disseminated the material misstatements in press releases and interviews sufficient to establish the misstatements occurred in connection with the purchase or sale of a security.  (*See, e.g.*, FAC ¶¶ 28, 29, 33, 49, 57, 81, 83, 86.)

Fourth, Plaintiffs sufficiently allege they relied on Defendants' misrepresentations when purchasing the stock in that they would not have purchased the stock but for Defendants' misrepresentations regarding the development of the COVID-19 test.  (*Id.* ¶¶ 111-13.)  Plaintiffs invoke a "fraud-on-the-market" presumption, "which is premised on the theory that 'the price of a security traded in an efficient market will reflect all publicly available information about a company,' including materially false or misleading statements."  *In re Bofl*, 977 F.3d at 788 (quoting *Amgen Inc. v. Conn. Retirement Plans & Tr. Funds*, 568 U.S. 455, 461-62 (2013)).  Pursuant to this theory, Plaintiffs must demonstrate: "(1) that the alleged misrepresentations were publicly known, (2) that they were material, (3) that the stock traded in an efficient market, and (4) that the plaintiff traded the stock between the time the misrepresentations were

**CIVIL MINUTES – GENERAL**                                              **24**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:21-cv-00418-FWS-JPR                    Date: December 5, 2022
Title: Anthony Sanchez *et al.* v. Decision Diagnostics Corp. *et al.*

made and when the truth was revealed." *Halliburton*, 573 U.S. at 269.  Plaintiffs adequately allege that the misrepresentations were publicly known and disseminated, (*see* FAC ¶ 110), material, (*see id.* ¶¶ 111), and traded in an efficient market on the OTC Pink Market, (*see id.* ¶17).  Plaintiffs also allege they purchased the stock after Defendants made the alleged misrepresentations beginning in March 2020 and before the truth of the fraud was revealed by the SEC complaint filed on December 17, 2020.  (*See* FAC ¶¶ 90-92, 106, 111; O'Connell Decl., Exh. 1 & 2.)

Fifth, Plaintiffs adequately allege both economic loss and loss causation.  Plaintiffs sufficiently allege Defendants' misrepresentations were "a substantial factor in causing a decline in the security's price, thus creating an actual economic loss," as required to establish loss causation.  *Nuveen Mun. High Income Opportunity Fund v. City of Alameda*, 730 F.3d 1111, 1119 (9th Cir. 2013).  "At the pleading stage . . . the plaintiff need only allege that the decline in the defendant's stock price was proximately caused by a revelation of fraudulent activity rather than by changing market conditions, changing investor expectations, or other unrelated factors."  *Loos*, 762 F.3d at 887 (citing *Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1062 (9th Cir. 2008)); *see also Lloyd v. CVB Fin. Corp.*, 811 F.3d 1200, 1209 (9th Cir. 2016) ("[T]he plaintiff in a securities fraud action must demonstrate that an economic loss was caused by the defendant's misrepresentations, rather than some intervening event.").  "The burden of pleading loss causation is typically satisfied by allegations that the defendant revealed the truth through 'corrective disclosures' which 'caused the company's stock price to drop and investors to lose money.'"  *Lloyd*, 811 F.3d at 1209 (quoting *Halliburton*, 573 U.S. at 264).

In this case, Plaintiffs invoke a "leakage" model, rather than a "specific-disclosure" model, of loss causation, alleging that "adverse information began leaking [to] the market" when the SEC issued an order suspending trade on April 23, 2020, and the fraud "was fully disclosed with the release of the DOJ indictment and SEC complaint on December 17, 2020." (*See* Mot. at 15-16; FAC ¶¶ 90-91.)  Plaintiffs also allege that immediately following these final public disclosures Defendant Decision Diagnostics' stock price dropped by 65.3%.  (*Id.* ¶ 92.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:21-cv-00418-FWS-JPR                    Date: December 5, 2022
Title: Anthony Sanchez *et al.* v. Decision Diagnostics Corp. *et al.*

The court finds Plaintiffs' leakage theory cognizable.  First, the court notes that the Ninth Circuit has adopted a flexible approach to loss causation, stating it entails "a 'context-dependent' inquiry as there an 'infinite' variety of ways for a tort to cause a loss."  *Mineworkers Pension Scheme v. First Solar Inc.*, 881 F.3d 750, 753 (9th Cir. 2018) (quoting *Lloyd*, 811 F.3d at 1210-11); *see also In re Lendingclub Sec. Litig.*, 282 F. Supp. 3d 1171, 1181 (N.D. Cal. 2017) ("Finally, plaintiff correctly observes that our court of appeals has recognized a "leakage" damages model, under which a plaintiff may recover for interim manifestations of later-disclosed fraud that beg[an] to "leak out" prior to the corrective disclosure.") (citing *In re Daou Sys., Inc.*, 411 F.3d 1006, 1026 (9th Cir. 2005)).  Second, multiple district courts have found a plaintiff may plausibly allege loss causation using the leakage model so long as the plaintiff "shows the alleged misrepresentations, as opposed to something else, foreseeably caused [their] loss . . . ."  *See In re Tesla, Inc. Sec. Litig.*, 2022 WL 7374936, at *8 (N.D. Cal. Oct. 13, 2022) (holding "leakage models are a theoretically viable way to show loss causation in this Circuit"); *Kui Zhu v. Taronis Techs., Inc.*, 2020 WL 1703690, at *6 (D. Ariz. Apr. 8, 2020) (stating "Plaintiffs' theory of a 'slow leak' revelation is nuanced, but this Circuit has recognized that there are an infinite number of ways to allege loss causation" and finding "[t]he allegations in the FAC, viewed together, adequately allege a viable loss causation theory").  Given this authority, the court finds Plaintiffs' allegations plausibly demonstrate that Defendants' misstatements, "as opposed to some other fact, foreseeably caused [Plaintiffs'] loss."  *See Lloyd*, 811 F.3d at 1210.

In addition, Plaintiffs allege they "suffered damages in connection with their respective purchases, acquisitions, and/or sales of the Company's securities" and provide adequate proof of their damages, sufficient to plead economic loss.  (*See* FAC ¶ 113; O'Connell Decl., Exh. 1 & 2.)  Accordingly, the court concludes that Plaintiffs plausibly allege violations of Section 10(b) and Rule 10b-5.

b.    Section 20(a) Claim

Plaintiffs next allege that Defendant Berman violated Section 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78t(a).  (*See* FAC ¶¶ 114-19.)  Section 20(a) provides:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:21-cv-00418-FWS-JPR                    Date: December 5, 2022
Title: Anthony Sanchez *et al.* v. Decision Diagnostics Corp. *et al.*

> Every person who, directly or indirectly, controls any person liable
> under any provision of this chapter or of any rule or regulation
> thereunder shall also be liable jointly and severally with and to the same
> extent as such controlled person to any person to whom such controlled
> person is liable, unless the controlling person acted in good faith and
> did not directly or indirectly induce the act or acts constituting the
> violation or cause of action.

15 U.S.C. § 78t(a).

Thus, to prevail on claims for violations of Section 20(a), the plaintiff "must first sufficiently allege a violation of § 10(b) or Rule 10b-5." *In re VeriFone, Inc. Holdings Sec. Litig.*, 704 F.3d 694, 711 (9th Cir. 2012). Thus, the plaintiff must plead that "'a primary violation of federal securities law' and that 'the defendant exercised actual power or control over the primary violator.'" *Zucco Partners*, 552 F.3d at 990 (quoting *No. 84 Emp.-Teamster Joint Council Pension Tr. Fund v. Am. W. Holding Corp.*, 320 F.3d 920, 945 (9th Cir. 2003)).

In this case, Plaintiffs sufficiently allege both elements of a Section 20(a) violation. As discussed above, Plaintiffs sufficiently allege a predicate violation of Section 10(b) and Rule 10b-5. In addition, Plaintiffs allege that Defendant Berman "dominated the operation and management of Decision Diagnostics as its sole executive officer and sole director." (FAC ¶ 115.) In this role, he "controlled the day-to-day conduct of Decision Diagnostics' business affairs," including "the contents of the various reports, press releases, and public filings . . . disseminated in the marketplace . . . concerning Decision Diagnostics' purported COVID-19 testing kits." (*Id*. ¶¶ 115, 117.) Thus, the court finds Plaintiffs also plausibly allege a Section 20(a) violation. *See, e.g.*, *In re Countrywide Financial Corp. Sec. Litig.*, 588 F. Supp. 1132, 1201 (C.D Cal. 2008) (finding plaintiff plausibly pleaded Section 20(a) violation by alleging plausible primary violation and explaining defendants' positions and responsibility to demonstrate defendants exercised control).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:21-cv-00418-FWS-JPR                    Date: December 5, 2022
Title: Anthony Sanchez *et al.* v. Decision Diagnostics Corp. *et al.*

Accordingly, the court concludes the second and third *Eitel* factors—the substantive merits of the claim and the sufficiency of the operative complaint—weigh in favor of entering default judgment on behalf of Plaintiffs.

### iii.    Sum of Money at Stake

The fourth *Eitel* factor considers "the amount of money at stake in relation to the seriousness of Defendant's conduct." *PepsiCo*, 238 F. Supp. 2d at 1176. This *Eitel* factor "requires a comparison of the recovery sought and the nature of defendant's conduct to determine whether the remedy is appropriate." *United States v. Bronster Kitchen, Inc.*, 2015 WL 4545360, at *6 (C.D. Cal. May 27, 2015). Additionally, the court may consider "documents, declarations, and other damage calculations to assess whether the amount at stake is reasonable." *Garrison v. Ringgold*, 2020 WL 13189480, at *3 (S.D. Cal. Nov. 9, 2020) (collecting cases). "When the sum of money at stake in the litigation is substantial or unreasonable, default judgment is discouraged." *Yelp Inc. v. Catron*, 70 F. Supp. 3d 1082, 1100 (N.D. Cal. 2014) (quoting *Bd. of Trs. v. Core Concrete Constr., Inc.*, 2012 WL 380304, at *4 (N.D. Cal. Jan. 17, 2012)).

In this case, Plaintiff Sanchez requests a default judgment consisting of $181,907.00 plus prejudgment and post-judgment interest; Plaintiff Tossavainen seeks a comparable default judgment consisting of $156,138.00 plus prejudgment and post-judgment interest.[2] (O'Connell Decl. ¶ 13.) Here, the court finds Plaintiffs provide adequate proof of their damage calculations and methodology. (*See generally* O'Connell Decl., Exh. 1 & 2.) Specifically, Plaintiffs calculated their damages by: (1) multiplying the number of shares purchased by the price paid to derive the purchase price for each transaction; (2) subtracting the sales price from the purchase price using the first-in-first out accounting method; and (3) applying a damages cap, as required by 15 U.S.C. § 78u-4(e), by "looking back at the price reaction following the final disclosure to eliminate any windfall that might arise if the stock price bounced back." (*Id.* ¶ 10, Exh. 1 & 2.) As a result, the court concludes that Plaintiffs' damages are directly related to the

---

[2] The court incorporates by reference the damages analysis conducted in section III.C, *infra*.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:21-cv-00418-FWS-JPR                          Date: December 5, 2022
Title: Anthony Sanchez *et al.* v. Decision Diagnostics Corp. *et al.*

loss caused by Defendants' fraud under federal securities law and thus proportional to
Defendants' alleged misconduct.  *See, e.g.*, *Garrison*, 2020 WL 13189480, at *3-4 (finding
amount of money at stake weighed in favor of default judge because plaintiffs' damages were
"directly related to the loss caused by Defendants' fraud").  Accordingly, the court finds this
factor weighs in favor of default judgment.

### iv.    Possibility of a Dispute Concerning Material Facts

"The fifth *Eitel* factor considers the possibility of dispute as to any material facts in the
case."  *PepsiCo*, 238 F. Supp. 2d at 1177.  "The general rule is that a defaulting party admits the
facts alleged in the complaint as true."  *Constr. Laborers Tr. Funds for S. Cal. v. Anzalone
Masonry Inc.*, 316 F. Supp. 3d 1192, 1202 (C.D. Cal. 2018); *see also PepsiCo*, 238 F. Supp. 2d
at 1177 ("Upon entry of default, all well-pleaded facts in the complaint are taken as true, except
those relating to damages.") (quoting *TeleVideo*, 826 F.2d at 917-18).  Thus, "[w]here a
plaintiff has filed a well-pleaded complaint, the possibility of a dispute concerning material
facts is remote."  *Wecosign, Inc. v. IFG Holdings, Inc.*, 845 F. Supp. 2d 1072, 1082 (C.D. Cal.
2012) (citing *Landstar Ranger, Inc. v. Parth Enters., Inc.*, 725 F. Supp. 2d 916, 921-22 (C.D.
Cal. 2010)).

Because default has been entered, the court accepts the well-pleaded facts in the
Complaint as true.  *See TeleVideo*, 826 F.2d at 917-18.  As discussed in subsection ii.a, *supra*,
the court finds Plaintiffs "filed a well-pleaded complaint alleging the facts necessary to establish
its claims."  *Phillip Morris USA, Inc. v. Castworld Prod. Inc*, 219 F.R.D. 494, 500 (C.D. Cal.
2003).  Importantly, Defendants do not dispute Plaintiffs' factual allegations, only the damages
calculation and the import of those facts on the applicable legal standards as discussed above.
(*See generally* Opp.)  Thus, the court concludes there is little possibility of a dispute over
material facts and the fifth *Eitel* factor weighs in favor of granting default judgment.

### v.    Whether Default Was Due to Excusable Neglect

"The sixth *Eitel* factor considers the possibility that the default resulted from excusable
neglect."  *PepsiCo*, 238 F. Supp. 2d at 1177*; see also Bd. of Trs. for Laborers & Health &*

**CIVIL MINUTES – GENERAL**                                                              **29**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:21-cv-00418-FWS-JPR                   Date: December 5, 2022
Title: Anthony Sanchez *et al.* v. Decision Diagnostics Corp. *et al.*

*Welfare Tr. Fund for N. Cal. v. Centerline Striping Co., Inc.*, 2019 WL 12872915, at *5 (N.D. Cal. Sept. 3, 2019), *report and recommendation adopted*, 2019 WL 12872913 (N.D. Cal. Nov. 4, 2019) ("Under this analysis, the Court considers whether Defendant was put on adequate notice to apprise it of the pendency of the action brought against it.").  Where a defendant is "properly served with the Complaint, the notice of entry of default, as well as the papers in support of the instant motion," the default "cannot be attributed to excusable neglect." *Shanghai Automation Instrument Co. v. Kuei*, 194 F. Supp. 2d 995, 1005 (N.D. Cal. 2001).

Here, Defendants were properly served with the Complaint, FAC, and Notice of the Entry of Default.  (*See* Dkts. 22, 40, 44.)  Moreover, Defendants' counsel stated that Defendants were aware of the suit from its inception and communicated with Plaintiffs' counsel.  (Herzog Decl. ¶ 4.)  Given this record and the court's finding that Defendants' default was due to culpable conduct rather than excusable neglect, the court concludes this factor weighs in favor of granting default judgment.

### vi.   Policy Favoring Decisions on the Merits

"Under the seventh *Eitel* factor, the court takes into account the strong policy favoring decisions on the merits." *Globe Ent.*, 2022 WL 2703845, at *5; *see also Eitel*, 782 F.2d at 1472 ("Cases should be decided upon their merits whenever reasonably possible.").  However, "this preference, standing alone, is not dispositive." *PepsiCo*, 238 F. Supp. 2d at 1177 (quoting *Kloepping v. Fireman's Fund*, 1996 WL 75314, at *3 (N.D. Cal.1996)).  "[W]here a defendant's failure to appear and respond makes a decision on the merits impractical, if not impossible, default judgment is appropriate" notwithstanding "the strong policy presumption in favor of a decision on the merits." *Constr. Laborers Tr. Funds for S. Cal. Admin. Co. v. Black Diamond Contracting Grp., Inc.*, 2017 WL 6496434, at *5 (C.D. Cal. Dec. 18, 2017) (quoting *Eitel*, 782 F.2d at 1472) (internal quotation marks omitted).

In this instance, Defendants have appeared by untimely opposing the Motion.  (*See generally* Opp.)  However, as discussed above, Defendants' failure to otherwise defend was willful; given this culpable conduct, the court finds a decision on the merits may still be "impractical, if not impossible." *See Constr. Laborers Tr. Funds for S. Cal.*, 316 F. Supp. 3d at

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:21-cv-00418-FWS-JPR                                   Date: December 5, 2022
Title: Anthony Sanchez *et al.* v. Decision Diagnostics Corp. *et al.*

1202.  Accordingly, the court concludes that this factor weighs against but does not preclude an entry of default judgment.  *See, e.g.*, *Akkelian v. Nourian*, 2019 WL 1304094, at *5-6 (C.D. Cal. Feb. 4, 2019) (declining to vacate default given defendants' culpable conduct and granting motion for default judgment despite defendants' opposition).

In conclusion, the court finds *Eitel* factors one, two, three, four, five, and six weigh in favor of an entry of default judgment and factor seven weighs against an entry of default judgment.  Accordingly, because the *Eitel* factors largely favor an entry of default judgment, the court **GRANTS** the Motion.

**C.     Plaintiffs' Requested Relief**

After determining liability, the court must calculate the amount of damages to be awarded.  "The general rule of law is that upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true."  *TeleVideo Sys.*, 826 F.2d at 917-18.  The plaintiff bears "the burden of proving damages through testimony or written affidavit."  *Bd. of Trs. Boilermaker Vacation Tr. v. Skelly, Inc.*, 389 F. Supp. 2d 1222, 1226 (N.D. Cal. 2005).

The Ninth Circuit has recognized "two standard measures of damages in securities law."  *Strategic Diversity, Inc. v. Alchemix Corp.*, 666 F.3d 1197, 1208 (9th Cir. 2012).  Here, Plaintiffs seek damages pursuant to "[t]he generally employed 'out-of-pocket' or 'market' measure," calculated by determining "the difference between the fair value of what was received and the fair value of what one would have received had there been no fraudulent conduct."  *Id.*; *see also Chassin Holdings Corp. v. Formula VC Ltd.*, 2017 WL 66873, at *13 (N.D. Cal. Jan. 6, 2017) ("Under the out-of-pocket standard, a defrauded purchaser is entitled to recover the difference between the price he or she paid for a security and the actual value of that security at the time of purchase, plus interest on the difference.").  Out-of-pocket damages are "purely compensatory," and focused on "the plaintiff's actual loss, rather than on his potential gain."  *DCD Programs, Ltd. v. Leighton*, 90 F.3d 1442, 1447 (9th Cir. 1996) (citation omitted).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:21-cv-00418-FWS-JPR                    Date: December 5, 2022
Title: Anthony Sanchez *et al.* v. Decision Diagnostics Corp. *et al.*

As discussed above, Plaintiff Sanchez requests a default judgment consisting of $181,907 plus prejudgment and post-judgment interest.  (O'Connell Decl. ¶ 13.)  Similarly, Plaintiff Tossavainen seeks a default judgment consisting of $156,138 plus prejudgment and post-judgment interest.  (*Id.*)  The court assesses each in turn.

    **i.**    **Damages**

In support of Plaintiffs' damages, Plaintiffs' counsel provided a declaration and supporting documents demonstrating how Plaintiffs' damages were calculated.  (*See* O'Connell Decl., Exh. 1 & 2.)  The documentation demonstrates that Plaintiff Sanchez purchased 1,523,100 shares for $334,774.00 and incurred damages of $181,907.00.  (*Id.* ¶ 11, Exh. 1.)  Plaintiff Sanchez sold 723,100 shares for $152,867.00 before the date of the final disclosure.  (*Id.*, Exh. 2.)  He did not retain shares after the final disclosure.  (*Id.*)  Plaintiff Sanchez calculated his damages by subtracting the amount he received from selling shares, or $152,867.00, from the aggregate amount he spent in purchasing shares, or $334,774.00, for a total of $181,907.00.  (*Id.*)

Similarly, Plaintiff Tossavainen purchased 1,118,000 shares, paid $243,350, and incurred damages of $156,138.  (*Id.* ¶ 12, Exh. 2.)  Plaintiff Tossavainen sold 225,000 shares for $58,120.00 before the date of the final disclosure, December 17, 2020.  (*Id.*)  He retained 893,000 shares after the final disclosure.  (*Id.*)  Plaintiff Tossavainen calculated his damages by subtracting the amount he received from selling shares, or $58,120.00, and the 90-day lookback value of retained shares, or $20,093.00, from the aggregate amount he spent in purchasing shares, $234,350.00, for a total of $156,138.00.  (*Id.*)

Based on the record, the court finds Plaintiffs sufficiently proved their out-of-pocket damages.  *See, e.g.*, *Garrison*, 2020 WL 13189480, at *6 (finding declaration and supporting documents sufficient to prove damages as to Section 10(b) claim); *Chassin Holdings Corp.*, 2017 WL 66873, at *13 (awarding plaintiff $1,762,500 in damages on motion for default judgment pursuant to the out-of-pocket measure).  Thus, the court awards Plaintiff Sanchez $181,907.00 and Plaintiff Tossavainen $156,138.00.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:21-cv-00418-FWS-JPR                    Date: December 5, 2022
Title: Anthony Sanchez *et al.* v. Decision Diagnostics Corp. *et al.*

ii.     **Pre-judgment interest**

Plaintiffs also request pre-judgment interest at the postjudgment interest rate.  (*See* Mot. at 20.)  "[P]rejudgment interest serves a compensatory function, designed to make the injured party whole."  *Knapp v. Ernst & Whinney*, 90 F.3d 1431, 1441 (9th Cir. 1996).  "The decision whether to award prejudgment interest is left to the sound discretion of the trial court, guided by the factors from *Osterneck v. Ernst & Whinney*, 489 U.S. 169, 176 (9th Cir. 1989)." *HsingChing Hsu v. Puma Biotechnology, Inc.*, 2019 WL 4295285, at *1 (C.D. Cal. Sept. 9, 2019).  In a securities action, the factors the district court should consider include: "whether prejudgment interest is necessary to compensate the plaintiff fully for his injuries, the degree of personal wrongdoing on the part of the defendant, the availability of alternative investment opportunities to the plaintiff, whether the plaintiff delayed in bringing or prosecuting the action, and other fundamental considerations of fairness."  *Osterneck*, 489 U.S. at 176.  The court may also consider whether prejudgment interest would result in a windfall recovery for the plaintiff. *See Knapp*, 90 F.3d at 1442.  "These considerations are intertwined in a significant way with the merits of the plaintiff's primary case as well as the extent of his damages."  *Osterneck*, 489 U.S. at 176.

In this case, the court finds the factors weigh in favor of awarding prejudgment interest. Specifically, the court finds that prejudgment interest is necessary to compensate Plaintiffs fully for their injuries because "pre-judgment interest is intended to cover the lost investment potential of funds to which the plaintiff was entitled, from the time of entitlement to the date of judgment."  *Nelson v. EG & G Energy Measurements Grp., Inc.*, 37 F.3d 1384, 1391 (9th Cir. 1994).  The court also finds the degree of personal wrongdoing on the part of defendant weighs in favor of awarding prejudgment interest because Plaintiffs allege willful violations of federal securities law.  *See, e.g.*, *Garrison*, 2020 WL 13189480, at *7 (awarding heightened rate of prejudgment interest because the case involved "securities fraud and financial elder abuse where [d]efendants took advantage of [p]laintiffs through misrepresentations and fraud"); *HsingChing Hsu*, 2019 WL 4295285, at *2 (finding defendants "intentional violations of the federal securities law support an award of prejudgment interest").  Accordingly, the court

**CIVIL MINUTES – GENERAL**                                         33

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:21-cv-00418-FWS-JPR                    Date: December 5, 2022
Title: Anthony Sanchez *et al.* v. Decision Diagnostics Corp. *et al.*

awards Plaintiffs pre-judgment interest from the date of the filing of the Complaint, January 15, 2021, at the postjudgment interest rate set by 28 U.S.C. § 1961.

### iii.   Postjudgment interest

Finally, Plaintiffs seek post-judgment interest pursuant to the statutory rate. (*See* Mot. at 20.) "Under the provisions of 28 U.S.C. § 1961, postjudgment interest on a district court judgment is mandatory." *Air Separation, Inc. v. Underwriters at Lloyd's of London*, 45 F.3d 288, 290 (9th Cir. 1995) (citing *Perkins v. Standard Oil Co. of Cal.*, 487 F.2d 672, 674 (9th Cir. 1973). "Such interest shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment." 28 U.S.C. § 1961(a). Accordingly, the court awards postjudgment interest rate, calculated pursuant to 28 U.S.C. § 1961, beginning the date this order was entered.

### vii.   Disposition

For the reasons set forth above, the Motion is **GRANTED**. The court awards Plaintiffs' damages as follows:

- The court awards Plaintiff Sanchez $181,907.00 plus prejudgment interest and post-judgment interest at the rate prescribed by 28 U.S.C. § 1961.
- The court awards Plaintiff Tossavainen $$156,138.00 plus prejudgment and post-judgment interest at the rate prescribed by 28 U.S.C. § 1961.

Initials of Deputy Clerk:  mku